IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT THOMAS,  ) <br> ) <br>       Plaintiff,  ) <br> ) <br>   v.  ) <br> ) <br> PARTHA GHOSH, in his individual ) <br> capacity as Medical Director; ) <br> KEVIN C. HALLORAN, in his indi- ) <br> vidual capacity as CEO of Wex- ) <br> ford Health Source, Inc.; RODGER) <br> WALKER JR. in his individual ) <br> capacity as IDOC Director; and ) <br> MELONY J. FORD, in her indivi- ) <br> dual capacity as ARB Coordinator) <br> TERRY L. McCANN, in his indivi- ) <br> dual capacity as Warden of SCC; ) <br> LATANYA WILLIAMS, in her indivi-) <br> dual capacity as Physician's ) <br> Assistant; TAMMY GARCIA, in her ) <br> individual capacity as Grievance) <br> Officer at SCC.  ) | 08cv4644 <br> **JUDGE GOTTSCHALL** <br> **MAGISTRATE JUDGE SCHENKIER** <br><br> JURY TRIAL DEMANDED <br><br>  |

# Amended Complaint

This is a complaint for actual and punitive damages brought under 42 U.S.C. §1983, in connection with the deliberate indifference to plaintiff Robert Thomas' medical needs by the defendants. Plaintiff Thomas is a prisoner confined at Stateville Correctional Center, whom sustained a "non-de-minimis" finger injury. The unnecessary delay of 107 days to obtain an xray resulted in subtantial damage to plaintiff's finger, resulting in two corrective surgery attempts to correct the deformity. The defendant's deliberate indifference to plaintiff Thomas' medical needs violates his Eighth Amendment's prohibition against cruel and unusual punishment.

- 1 -

## I.

## JURISDICTION

1.    The jurisdiction of the Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq.

2.    The court also has jurisdiction over plaintiff Thomas' state-law claims, pursuant to 28 U.S.C. §1367.

## II.

## VENUE

3.    This is an appropriate venue because all of the acts alleged herein occurred within the County of Will, State of Illinois.

4.    All of these acts alleged herein were in the course and scope of their employment and under the color of law.  These defendants are sued in their individual capacities.

## III

## PARTIES

5.    Plaintiff Robert Thomas, was at all relevant times, incarcerated at Stateville Correctional Center in Joliet, IL.

6.    Defendant Partha Ghosh was at all relevant times, acting under the color of law, as a licensed medical doctor in the State of Illinois, and employed by the Illinois Department of Corrections, [hereinafter referred to as IDOC], is sued in his individual capacity.

7.    Defendant Kevin C. Halloran was at all relevant times, Chief Executive Officer of Wexford Health Sources, Inc. [hereinafter referred to as Wexford], which provides comprehensive health care

services (including medical, mental health, dental, pharmacy and utilization management services) to Stateville Correctional Center, while acting under the color of law. He is sued in his individual capacity.

8.   Defendant Rodger E. Walker Jr. was at all relevant times acting under color of law as the Director and employed by IDOC. He is responsible for conditions and operations at Stateville Correctional Center. See 730 ILCS 5/3-7-2(a). Defendant Walker is the final policy maker for IDOC. He is sued in his individual capacity.

9.   Defendant Melony J. Ford was at all relevant times acting under the color of law as Coordinator/Chairperson of the Administrative Review Board [hereinafter referred to as ARB], works in concert with defendant Walker regarding inmate issues. Defendant Ford is employed by IDOC snd she is a decision maker for defendant Walker. She is sued in her individual capacity.

10.   Defendant Terry L. McCann was at all relevant times acting under the color of law as Warden of Stateville Correctional Center, and employed by IDOC. He is responsible for the conditions and operations at the facility: See 730 ILCS 5/3-7-2a. Defendant McCann is sued in his individual capacity.

11.   Defendant Tanya Williams was at all relevant times acting unsed the color of law, as physician's assistance at Stateville Correctional Center, is employed by the IDOC and contracted through Defendant Halloran's business, Wexford Health Source, and is being sued in her individual capacity.

12.   Defendant Tammy Garcia was at all relevant times acting under color of law, as Grievance Officer at Stateville

Correctional Center, employed by IDOC.   Defendant Garcia is sued
in her individual capacity.

## IV.

### FACTUAL ALLEGATION

13.   On August 15, 2006, plaintiff Thomas sustained injuries
to his right-ring finger, when his finger was accidently caught
in his cell door as it was closing.   Plaintiff Thomas finger
became swollen and throbing with pain, achieving comfort and
relief by soaking finger in cold water.

14.   Plaintiff Thomas decided to endure the excruciating
pain and permit the swelling to go down and it would heal itself.
It was not until the swelling subsided when plaintiff Thomas
clearly noticed the deformity of his finger.   The tip of his
finger was bent upward and the fingernail engorged with bruised
blood, which gave the fingernail a blackened appearance.

15.   Plaintiff Thomas showed his deformed finger to Sgt. T.
Jones requesting to see a Medical Technician, plaintiff was
assured that a call would be made to the HCU, this was to no avail.

16.   On Friday, August 25, 2006, at approximately 6;45
p.m., my cell partner, Charles McLaurin's prescribed medication
was delivered to the cell by Mrs. Friar, Med Tech.   Plaintiff
Thomas showed her his injured finger and she stated 'your finger
is broken' and assured plaintiff that he will be escorted to the
HCU the following day, Saturday.

## V.

### COUNT ONE

- 4 -

## Defendant's Deliberate Indifference

17.  Plaintiff Thomas incorporates by reference paragraphs 1-17 as though fully set forth in Count I.

18.  On August 26, 2006, plaintiff was taken to the Health Care Unit Emergeny Room, plaintiff's finger was examined and evaluated by defendant Williams.  Upon observing plaintiff's injured finger she stated that 'it appears to be broken'.  Defendant Williams told plaintiff that she was ordering an xray, that on Monday, August 28, 2006, I would be transported to CRC to have my fingered xrayed.

19. Stateville Correctional Center does not have on-site radiologist or equipment.  If an xray is essential, the inmate is transported to the Classification-Reception Center located just beyond Stateville's perimeter.

20.  Suresh Gondalia, Medical Technician placed a splint on plaintiff's finger.  She was convinced after observing ʲit, the deformed the finger was broken.

21.  Plaintiff patiently awaited to be transported to CRC for an xray in a promptly manner to avoid any further damage to his finger.

22.  On September 4, 2006, plaintiff Thomas was being writted to the U of I Hospital in Chicago for a different matter. Prior to leaving the institution, plaintiff requested c/o Hughes, transportation officer, after showing him my finger and stating 'how could I possibly be taken to a hospital and not get my finger xrayed while there',  Plaintiff asked c/o Hughes to return to the HCU and ask Dr. Ghosh to order to enable my finger to be xrayed while being at the hospital.  He declined, stating that it

was not listed in the paperwork that he possessed.

23.  On September 25, 2006, plaintiff Thomas was once again
writted to the U of I Hospital in Chicago for further liver diagnosis.
Once again, an futile attempt was made to request a transportation
officer to either obtain paperwork from Dr. Ghosh, or take me to
the Emergency Room at U of I Hospital.  Everyone I showed my
injured finger to declared that it "was obviously broken" but if
they did not have the paperwork, they cannot assist me in this
matter.

24.  The following day, I prepared a Grievance (complaint)
and placed it into my counselor's hand.  [See  Attachments,
Thomas' Grievance].  I also prepared a letter to Defendant Ghosh
bringing this irregularity to his immediate attention. [See
Attachments].

25.  On October 9, 2006, Defendant Ghosh wrote a Memorandum
to my counselor, Chris Cannon stating that "a pass has been
issued to bring the offender to HCU for evaluation". [See Attachment].
The same evening, I received through institutional mail, a pass
for lab work regarding my upcoming Hypertension Clinic appointment.
The lab pass was for October 10, 2006. [See Attachments].

26.  On October 17, 2006, Defendant Tammy Garcia, Grievance
Officer, without any investigation into plaintiff Thomas' claim
of being deprived of an x-ray of his injured finger in a timely
fashion, conceded with Defendant Ghosh and replied "Per Dr. Ghosh,
Medical Director:  A pass has been issued to bring the offender
to the HCU for evaluation.  It appears that his grievance has
been resolved." [See Attachments]. In doing so, defendant Garcia
acted under the color of law depriving plaintiff Thomas of proper

- 6 -

medical care, and violating the Eighth and Fourteenth Amendment in the process.

27.  On October 17, 2006, Defendant Terry L. McCann, Warden signed-off on my grievance, stating that he received it on that date and concurred with the Defendant Garcia's decision regarding my blatant denial of prompt and proper medical care.  Defendant McCann acted under the color of law, in his official and individual capacity "duplicated" Defendant Garcia's erroneous response alleging that "the matter has been resolved - being that a pass was issued for plaintiff Thomas".  Neither defendants called, checked or investigated whether or not defendant Ghosh actually provided appropriate medical care to resolve plaintiff Thomas' medical matter.  Defendant McCann violated the Eighth and Fourteenth Amendment in the process.

28.  On October 19, 2006, Chris Cannon, Counselor, somehow responded to plaintiff Thomas' grievance [See Attachments] stating the identical response of Defendant Garcia and McCann. It is quite clear that Counselor Cannon made his response after Defendants Garcia and McCann response, in direct conflict with the sequence order and criteria.  The Chief Administrator Officer, in this matter, Defendant McCann renders the final decision at Stateville Correctional Center.

29.  On October 23, 2006, I appealed the Defendant's decision to the Administrative Review Board for relief.

30.  On October 26, 2006, plaintiff Thomas was escorted to the HCU for lab work (pre-surgery for scheduled transjugular liver biopsy), while at the HCU, he ran into Suresh Gondalia, Med Tech, whom expressed surprise when plaintiff Thomas told her that

his injured finger was not x-rayed yet.

31.   On November 27, 2006, plaintiff Thomas was escorted to the HCU for Defendant Ghosh's clinic appointment, regarding his liver ailment.  Plaintiff Thomas told Defendant Ghosh that he had written to him, filed a grievance because his finger is damaged, and fractured.  That defendant Williams seen his injured finger on August 26, 2006, and prescribed an x-ray to be taken at CRC. Defendant Ghosh stated that Defendant "Williams cannot order an x-ray for me".  Thomas further explained that due to his blatant error stating that he was issuing a pass for me and that the matter is resolved, I was deprived of prompt medical care and resulted in my finger being deformed.

32.   Plaintiff Thomas asserts that Defendant Ghosh, as each defendant in the aforegoing complaint, has showed deliberate indifference to his medical needs, and acted in the color of law, deprived plaintiff Thomas prompt and proper medical care, violating the Eighth and Fourteenth Amendment in the process.

33.   On Wednesday, November 29, 2006, plaintiff Thomas was finally transported to CRC to have an x-ray taken of his right ring finger.  It took approximately 104 days to obtain an x-ray to determine the damage of my injured finger.

34.   Each defendant that observed plaintiff Thomas' right-ring finger automatically felt that  his finger was severely damaged as required (non de minimis)   to comply with the criteria needed to establish "a serious injury" which defendants showed deliberate indifference to Thomas' medical needs.

- 8 -

35.   On December 5, 2006, plaintiff Thomas forwarded a letter to Defendant Ghosh regarding the november 29, 2006 x-rays taken of my injured finger. Whether a medical plan or procedure would be initiated in this matter. plaintiff received no response. (See Attachments).

36.   On April 27, 2007, plaintiff Thomas received through the institutional mail, the decision regarding the appeal of Grievance #1354. Defendant Melony J. Ford, concurred with Defendant Garcia and McCann's concurrance of Defendant Ghosh's 'erroneous statement' that the matter has been resolved, a pass was sent for plaintiff to be evaluated. In addition, Defendant Walker Jr. concurred with Defendant Ford's decision, each defendant's adverse decision blatantly deprived plaintiff Thomas of proper medical care. (See Attachments... letter dated 01-25-07 from Defendant Ford).

37.   At a minimum, if either defendant would have investiga-ted my claim, rather than take Defendant Ghosh's statement at face-value, they would have easily discovered that 'the matter was not  resolved, nor was a pass sent to plaintiff in this regard'. In fact, plaintiff finger was not x-rayed until November 29, 2006.

38.   On March 16, 2007, plaintiff Thomas forwarded a letter to Defendant Ghosh "once again" in an attempt to obtain information regarding the results of the xrays taken on 11-29-06, and whether a plan will be rendered to correct the deformity in plaintiff's finger. Received no response. [See Attachments].

39.   Plaintiff Thomas contends that Defendant Kevin C. Halloran, acted under the color of law, in his official and individual capacity, knew of plaintiff's injury and failed to

contact the other defendants involved, after being contacted by
plaintiff regarding his damaged finger, attempting to remedy this
situation and avoid any possible future damage to plaintiff's finger.

40.  As a result of the defendants' reckless, callous,
grossly negligent and exhibited deliberate indifference to plain-
tiff Thomas' medical needs, and the unnecessary delay in obtaining
an xray, from August 15th up until November 29th, gave cause for
plaintiff to undergo two unsuccessful surgical procedures to
reconstruct his right ring finger.  Plaintiff Thomas finger is
presently in a cast.  A third attempt to correct the deformity is
being considered by the orthopedic doctors. SEE ATTACHMENT,  The
surgeries took place on November 5, 2007 and February 25, 2008,
performed at the University of Illinois Hospital in Chicago.

## VI.

### Defendant's Knowledge

41.  Plaintiff Thomas incorporates by reference paragraphs
4-40 as though fully set forth in this Count I.

42.  Plaintiff Thomas contacted defendant Ghosh on numerous
occassions regarding his erroneous response to plaintiff's grievance
requesting an xray.  SEE ATTACHMENTS.  Records clearly show that
defendant Ghosh stated that the offender will be sent a pass for
evaluation, and the matter is resolved.  A pass was not sent,
causing me to endure pain and anquish until November 25, 2006,
when I was finally face-to-face with defendant Ghosh enabling me
to show him my deformed finger and explain that he did not follow-
up on ordering an xray to determine the damage of my finger.

43.  Plaintiff Thomas contacted defendant Walker Jr. in a

letter dated 10-18-06, bringing to defendant Walker's immediate attention the irregularities taken place here at Stateville Correctional Center regarding plaintiff's inability to obtain prompt medical care.  That defendant Walker acted under the color of authority of the law of the State of Illinois, or in active concert  with such defendants who are or were so acting when he concurred with their erroneous response to plaintiff's grievance.

44.  Defendant Walker failed to adhere to Section 504.850 of the Illinois Administrative Code, which states in pertinent part; Section 504.850 Appeals

> b.  The Director shall review the grievance and the responses of the Grievance Officer and Chief Administrative Officer and determine whether the grievance requires a hearing before the Administrative Review Board....

45.  Defendant Walker, Ford, McCann, Ghosh, Halloran and Garcia's inexcusable behavior constitutes deliberate indifference to plaintiff Thomas' medical needs and violating his Eighth Amendment right to cruel and unusual punishment.

46.  Defendant Kevin C. Halloran, Chief Executive Officer of Wexford Health Sources, Inc. was contacted by plaintiff Thomas in a letter dated 11-06-06 in a last ditch effort in obtaining an xray to determine the extent of damage involving his deformity whether surgery is needed, requested defendant Halloran's assistance in obtaining prompt medical care at a facility that is contracted through his business.  SEE ATTACHMENTS.  Defendant Halloran did not respond to plaintiff's communication.

47.  Defendant Melody J. Ford, Chairperson/Coordinator of the Administrative Review Board was contacted by plaintiff Thomas

- 11 -

Defendant Walker Jr. duties and responsibilities as the
Director of IDOC includes, but not limited to 730 ILCS 5/3-8-8 which
provides as follows.

> § 3-8-8. Grievances. (a) The Director shall
> establish procedures to review the grievances
> of committed persons. The Director may esta-
> blish one or more administrative review boards
> within the Department to review grievances. A
> committed person's right to file grievances
> shall not be restricted. Such procedure shall
> provide for the review of grievances by a per-
> son or persons other than the person or persons
> directly responsible for the condition or actions
> against which the grievance is made.
>
> (b) Such procedures shall provide that a record
> of such grievance and any decision made with res-
> pect to it shall be preserved for a period of one
> year.
>
> (c) Such procedure shall allow committed persons
> to communicate grievances directly to the Director
> or some person designated by the Director outside
> of the institution or facility where the person
> is confined.
>
> (d) All committed persons shall be informed of
> the grievance procedure established by the Depart-
> ment and they shall be available to all committed
> persons.
>
> (e) Discipline shall not be imposed because of
> the grievance procedure.

In accordance with 730 ILCS 5/3-8-8(a) and (c), defendant
Walker Jr., and his subordinate defendants, Ford and McCann, were
aware of plaintiff Thomas' injury and undue delay of proper
medical care, either through communications through the mail or
the grievance system in which defendant Walker Jr. has the final
judgement. Furthermore, defendant Walker Jr., and defendant
Halloran, CEO of Wexford [whom plaintiff Thomas contacted via
mail] were joined together through a binding two-year contract.
violating plaintiff Thomas' constitutional Eighth Amendment right.

in a letter dated 10-20-06, whereas plaintiff appealed the adverse
erroneous decisions of Defendants Ghosh, Garcia, Williams and
McCann in compliance with Section 504.850, which states in perti-
nent part.

Section 504.850   Appeals

> a.  If, after receiving the response of the Chief
>     Administrative Officer, the offender stills
>     feels that the problem, complaint or grie-
>     vance has not been resolved to his or her
>     satisfaction, he or she may appeal in writing
>     to the Director within 30 days after the
>     decision.   Copies of the grievance officer's
>     report and chief administrative officer's
>     decision should be attached.

48.   Thus, defendant Ford rendered a decision acting under
the color of the law deprived plaintiff of prompt medical care by
'rubber-stamping' defendants McCann, Garcia, Ghosh aand Williams
erroneous response to plaintiff's medical needs.   This inexcusable
behavior constitutes deliberate indifference to his medical needs
and in violation of the Eighth Amendment of the United States
Constitution.

49.   Defendants McCann and Garcia were aware of plaintiff's
grievance regarding this matter, and failed to properly review
his complaint prior to conceding someone other than themselve's
version of events and responses thereto.   Had either defendant
simply telephoned defendant Ghosh or the HCU and inquire whether
there was a follow-up to my medical needs as Dr. Ghosh proclaimed
in his response to my grievance, they would have discovered that
I was never seen, and my finger probably would not be as damaged
as it presently is.   their actions were deliberate difference to
plaintiff's medical need, while acting under color of law, violated
his Eighth Amendment right as guaranteed by the U.S. Constitution.

- 12 -

50.   At all times relevant herein, Defendants have acted under the color of authority of the law of the State of Illinois or in active  concert with such Defendants who are or were so acting.

## VII.
### Exhaustion

51.   Plaintiff Thomas filed his initial grievance on September 26, 2006, siad grievance was numbered as 1354.  Defendant Ghosh responded to the grievance on October 9, 2006 and the Grievance Officer, Defendant Garcia responded on October 17, 2006, and Defendant McCann did so also on that date.  Counselor Cannon somehow  responded on October 19, 2006 and plaintiff Thomas appealed these adverse decisions on October 20, 2006 to the ARB. On January 25, 2007, the ARB denied plaintiff relief. SEE ATTACHMENTS.

## VIII.
### Cause of Action

52.   Plaintiff Thomas support the following claims by reference to the previous paragraphs of this complaint.

### COUNT I

53.   The delibereate indifference of the defendant Ghosh's blatant denial of plaintiff Thomas medical need, the three and a half month delay in obtaining an xray to determine the extent of his injury, resulted in substantial damage to plaintiff's finger, including, but not limited to, plaintiff's inability to bend his finger, the pain and anguish involved in undergoing two surgical procedures, and is scheduled for another corrective surgical procedure

- 13 -

54. Defendant Ghosh prevented plaintiff Thomas from obtaining an xray for 107 days, his erroneous response to plaintiff's grievance was concurred to by all the remaining defendants, their deliberate indifference to plaintiff Thomas' medical needs violates the Eighth Amendment of the United States Constitution.

IX

Prayer for Relief

WHEREFORE, plaintiff Robert Thomas respectfully prays that this Court will grant him relief, due to defendants' reckless indifference to his medical needs which deprived him of prompt and proper medical care, resulting in plaintiff's inability to bend or use hisright ring finger. Plaintiff's right-ring finger will not bend. Plaintiff has underwent two corrective surgery procedures in a futile attempt to correct the deformity. His finger is presently in a cast, another surgical procedure is being comtemplated.

Plaintiff Thomas prays that this Court will grant him actual and punitive damages, as follows;

A. Defendant Ghosh in the amount of $50,000 for compensatory damages, and 75,000 in punitive damages.

B. Defendant Halloran, in the amount of 50,000 for compensatory damages, and $75,000 in punitive damages;

C. Defendants Walker Jr., Ford, McCann, Garcia and Williams, in the amount of $20,000 for compensatory damages, and $40,000 in punitive damages from each defendant.

respectfully submitted,

Robert Thomas

Robert Thomas N53969
Stateville Correctional Center
post Office Box 112
Joliet, Illinois 60434-0112

DATED; August 8, 2008        - 14 -

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT THOMAS,                )
                             )
                 Plaintiff,   )
                             )
    v.                       )      Civil Action No. _____
                             )
PARTHA GHOSH, et al.,         )
                             )
                 Defendants,  )

## ATTACHMENTS

### Contents                                      Pages

1. Plaintiff's Grievance filed 09-26-06                    1-2

2. Plaintiff's letter to Dr. Ghosh regarding xray 09-26-08    3

3. Affidavit of inmate McLaurin, plaintiff's cellmate       4

4. Plaintiff received in mail from counselor, original griev, and copy of Memorandum from Dr. Ghosh.    5-7

5. Copy of the ONLY HCU pass received in month of October    8

6. Plaintiff's letter to Director of IDOC, dated 10-18-06    9

7. Letter to ARB c/o Defendant Ford, appealing adverse grievance decision, including documents.   10-20-06    10-21

8. Copy of HCU pass for lab work on 10-30-06                22

9. Plaintiff letter to Defendant Halloran, CEO of Wexford requesting assistance in obtaining medical treatment    23-24

10. Copy of HCU pass for Dr. Ghosh's Clinic on 11-27-06    25

11. Copy of HCU pass for xray for 11-29-06                 26

12. Copy of Dr. Ghosh Memorandum of 10-09-06              27

13. Copy of Defendants Garcia and McCann's response to plaintiff's grievance, dated 10-17-06    28

14. Plaintiff's to Dr. Ghosh regarding xray, dated 12-05-06    29

15. Defendant Ford (ARB) decision on appeal, dated 01-25-2007    30

16. Letter to Dr. Ghosh regarding results of xray, 03-16-07    31

17. U of I Hospital Medical Records regarding finger injury    32-59

**OFFENDER'S GRIEVANCE**

| Date SEPT. 26, 2006 | Offender (Please Print) ROBERT THOMAS | | ID# N53969 |
|---|---|---|---|

| Present Facility STATEVILLE | Facility where grievance issue occurred. STATEVILLE |
|---|---|

Received
Grievance Office
OCT 17 2006
STA # **1354**

**NATURE OF GRIEVANCE**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [X] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify)

- [ ] Disciplinary Report _____ / _____ / _____
      Date of Report          Facility where issued

**Note.** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete. Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: On Tuesday, August 15, 2006, while closing my celldoor
I injured my right ring finger. My finger became swollen and my
my fingernail had bruised blood in it. I experienced a huge amount
of pain. I soaked my finger in cold water for a substantial amount of
time. I was waiting to catch a Med Tech on the gallery, but never
did. Thereafter, the prison was on lockdown. During this period, I
continued soaking my hand and taking aspirin that were previously
prescribed to me to relieve the pain. The swelling disappeared,
clearly showing a disformity in my finger. On August 25, 2006, a
Med Tech delivered precription medication to my cellmate and I [continue]

Relief Requested: TO HAVE MY FINGER X-RAYED AS SOON AS POSSIBLE TO DETERMINE
THE DAMAGE AND OBTAIN THE PROPER MEDICAL ATTENTION IN A
TIMELY FASHION.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Robert Thomas | N53969 | 9 , 26 , 06 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: _____ / _____ / _____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: _____

RECEIVED
SEP 27 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

| _____ | _____ | _____ |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: _____ / _____ / _____

Is this determined to be of an emergency nature?

- [ ] Yes: expedite emergency grievance
- [ ] No: an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| _____ | _____ |
|---|---|
| Chief Administrative Officer's Signature | Date |

Distribution: Master File; Offender          Page 1          DOC 0046 (Rev. 3/2005)

showed her my deformed finger.  She told me that I would be
called to the Health Care Unit the following day.  On August 26,
2006, I went to the H.C.U. Emergency Room and the doctor had a
splint placed on my finger, gave me some Ibuprofens and scheduled
me to be taken to NRC to have an xray taken because there is no
available xray technician at Stateville Correctional Center, nor
does the xray machine works properly.  I WAS NOT taken to NRC to
obtain an xray.  As a matter of fact, I have been writted TWICE
to the U. of I. Hospital for liver testing since this incident
occurred, on Septmeber 18th and 25th, 2006.  I asked transportation
officers could they return to the Health Care Unit and ask if I
could be taken to the Emergency Room at U. of I. Hospital while
we were there.  I was told that if they did not have "paperwork"
for me go to the Emergency Room, they cannot take me there. At
this hour, I still have not had an xray to determine WHY my right
ring finger is deformed as it is.

    According to Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285,
50 L.Ed 2d 251 (1976), my Eighth Amendment rights are being
violated.  The U.S. Supreme Court In Estelle stated:

    "[D]eliberate indifference to serious medical needs of
    prisoners constitutes the "unnecessary and wanton inflic-
    tion of pain" proscribed by the Eighth Amendment. This
    is true whether the indifference is manifested by
    prison doctors in their response to the prisoner's need
    or by prison guards in intentionally denying or delaying
    access to medical care or intentionally interfering with
    the treatment once prescribed.  Regardless of how
    evidenced, deliberate indifference to a prisoner's
    serious illness or injury states a cause of action
    under §1983."

    I intend to file civil actions in this matter.

RECEIVED

SEP 27 2006

STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

ILLINOIS DEPARTMENT OF CORRECTIONS
OFFENDER'S GRIEVANCE

| Date: SEPT. 26, 2006 | Offender: (Please Print) ROBERT THOMAS | IDN: N53969 |
|---|---|---|

| Present Facility: STATEVILLE | Facility where grievance issue occurred: STATEVILLE |
|---|---|

NATURE OF GRIEVANCE

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify) _____

- [ ] Disciplinary Report _____ / _____
      Date of Report        Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: On Tuesday, August 15, 2006, while closing my celldoor
I injured my right ring finger. My finger became swollen and my
my fingernail had bruised blood in it. I experienced a huge amount
of pain. I soaked my finger in cold water for a substantial amount of
time. I was waiting to catch a Med Tech on the gallery, but never
did. Thereafter, the prison was on lockdown. During this period, I
continued soaking my hand and taking aspirin that were previously
prescribed to me to relieve the pain. The swelling disappeared,
clearly showing a disformity in my finger. On August 25, 2006, a
Med Tech delivered precription medication to my cellmate and I [continue]

Relief Requested: TO HAVE MY FINGER X-RAYED AS SOON AS POSSIBLE TO DETERMINE
THE DAMAGE AND OBTAIN THE PROPER MEDICAL ATTENTION IN A
TIMELY FASHION.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self

| _Robert Thomas_ | N53969 | 9 / 26 / 06 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 9.26.06   [ ] Send directly to Grievance Officer   [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277 Springfield, IL 62794-9277

Response: Dr. Ghosh State:
Offender has been seen to bring the
Offender to HCU for evaluation.

R E C E I V E D
SEP 27 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. ASS'T

| _____ | _____ | _____ |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: _____ / _____ / _____

Is this determined to be of an emergency nature?
- [ ] Yes: expedite emergency grievance
- [ ] No: an emergency is not substantiated
  Offender should submit this grievance in the normal manner.

| _____ | _____ |
|---|---|
| Chief Administrative Officer's Signature | Date |

ILLINOIS DEPARTMENT OF CORRECTIONS
OFFENDER'S GRIEVANCE (Continued)

showed her my deformed finger. She told me that I would be
called to the Health Care Unit the following day. On August 26,
2005, I went to the H.C.U. Emergency Room and the doctor had a
splint placed on my finger, gave me some Ibuphens and scheduled
me to be taken to NRC to have an xray taken because there is no
available xray technician at Stateville Correctional Center, nor
does the xray machine works properly. I WAS NOT taken to NRC to
obtain an xray. As a matter of fact, I have been writted TWICE
to the U. of I. Hospital for liver testing since this incident
occurred, on Septmeber 18th and 25th, 2006. I asked transportation
officers could they return to the Health Care Unit and ask if I
could be taken to the Emergency Room at U. of I. Hospital while
we were there. I was told that if they did not have "paperwork"
for me go to the Emergency Room, they cannot take me there. At
this hour, I still have not had an xray to determine WHY my right
ring finger is deformed as it is.

According to Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285,
50 L.Ed.2d 251 (1976), my Eighth Amendment rights are being
violated. The U.S. Supreme Court In Estelle stated:

"[D]eliberate indifference to serious medical needs of
prisoners constitutes the "unnecessary and wanton inflic-
tion of pain" proscribed by the Eighth Amendment. This
is true whether the indifference is manifested by
prison doctors in their response to the prisoner's need
or by prison guards in intentionally denying or delaying
access to medical care or intentionally interfering with
the treatment once prescribed. Regardless of how
evidenced, deliberate indifference to a prisoner's
serious illness or injury states a cause of action
under §1983."

I intend to file civil actions in this matter.

RECEIVED
SEP 27 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

September 26, 2006

TO:   Dr. Ghosh, Medical Director
      Health Care Unit

FROM: Robert Thomas N53969
      Unit C-457

RE:   Injured Right-Ring Finger


On August 15, 2006, I injured my finger in the cell door. After the swelling went-down, I realized that my finger was broken or worse? On Friday, August 25, 2006, I finally was able to have a Med Tech examine my finger. Upon viewing the deformity, the Med Tech concluded that my finger was broken and told me that I will be placed on Sick Call to see a doctor.

On Saturday, August 26, 2006, I was taken to the HCU and a doctor examined my finger and prescribed an x-ray, had my finger placed in a splint and I was given some motrin. I was told that I would be taken to NRC that following Monday 8-28-06 to have an x-ray taken because a mental patient was already scheduled to be transported to NRC.

Approximately one (1) month has passed and I still have not had my finger x-rayed. What's troublesome to me is... I've been on a writ to the hospital in Chicago twice, and on each occassion there was no order to have my finger x-rayed or examined.

I would like to have my finger x-rayed to determine the extent of damage that has occurred. Had I received an x-ray in a timely fashion, I doubt seriously that my fionger would be deformed as it presently is.

All that is promptly rendered in regard to this matter would be appreciated greatly.

*Robert Thomas*
Robert Thomas N53969
Unit C-457


cc:   personal file

3

STATE OF ILLINOIS )
                  ) SS:
COUNTY OF WILL    )

## A F F I D A V I T

I, <u>Charles McLaurin, #N94252</u>, being competent to make this declaration and having personal knowledge of the matter(s) stated therein, declares pursuant to 28 U.S.C.§ 1746:

1. I am presently incarcerated at the Stateville Correctional Center situated in Joliet, Illinois.

2. On August 15,2006, I was housed in Unit C, assigned to cell #457.  My cell partner, Robert Thomas, was closing the cell door on this date and accidently slammed his right ring finger between the door and door jam.  He experienced a tremendous amount of pain and began soaking his finger (Thomas) in cold water in the sink.

3. The following days, he (Thomas) constantly complained about the pain, but deeply felt that once the swelling goes down, he would be okay.  His finger remained swollen for over a week and his fingernail was filled with bruised blood.  On a couple occassions, I saw him stop a Correctional Officer and show them his finger. They would tell him that they'll call the Health Care Unit.

4. When the swelling went down, inmate Thomas right middle finger was very deformed-looking, the tip of his finger was pointing upward(s) as if it was broken.

5. On August 25,2006, Mrs.Friar, Medical Technician, (I believe) brought my prescribed medication to the cell and inmate Thomas showed her his finger and she said "its broken,  I've got to get you to the Health Care Center tomorrow morning."

Pursuant to 28 U.S.C.§ 1746, I declare under the penalty of perjury that the foregoing is true and correct.    Executed on August 3,2008.

Charles McLaurin, #N94252
affiant

4



Rod R. Blagojevich
Governor

**Illinois**
Department of
**Corrections**

**From The Desk Of**
**Mr. Cannon, Correctional Counselor**

DATE: SEP 2 7 2006

TO: Dr Ghosh

SUBJECT

Please Review
and Respond.



RECEIVED
SEP 2 7 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

*Notice:* I received this document from my counselor thru institutional mail on 10-20-06. This is my Original grievance (See My Signature) and the Counselor's Response is completed. See Grievance with Grievance Officer's Report and Chief Administrator's Response. there is no counselor response.

R. Thomas N53969

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: SEPT. 26, 2006 | Offender: (Please Print) ROBERT THOMAS | ID#: N53969 |
|---|---|---|

| Present Facility: STATEVILLE | Facility where grievance issue occurred: STATEVILLE |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☑ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☐ Other (specify):

☐ Disciplinary Report: ___/___/___
       Date of Report            Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete. Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
     Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     Chief Administrative Officer, only if EMERGENCY grievance.
     Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
     administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
     Administrative Officer.

Brief Summary of Grievance: On Tuesday, August 15, 2006, while closing my celldoor
I injured my right ring finger. My finger became swollen and my
my fingernail had bruised blood in it. I experienced a huge amount
of pain. I soaked my finger in cold water for a substantial amount of
time. I was waiting to catch a Med Tech on the gallery, but never
did. Thereafter, the prison was on lockdown. During this period, I
continued soaking my hand and taking aspirin that were previously
prescribed to me to relieve the pain. The swelling disappeared,
clearly showing a disformity in my finger. On August 25, 2006, a
Med Tech delivered precription medication to my cellmate and I [continue]

Relief Requested: TO HAVE MY FINGER X-RAYED AS SOON AS POSSIBLE TO DETERMINE
THE DAMAGE AND OBTAIN THE PROPER MEDICAL ATTENTION IN A
TIMELY FASHION.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _Robert Thomas_ | N53969 | 9 /26 /06 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 9 /26 /06     ☐ Send directly to Grievance Officer     ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Dr Ghosh states: offender has been issued to bring the
offender to HCU for evaluation.

| _GANNON_ | _(signature)_ | 10 /19 /06 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: ___/___/___     Is this determined to be of an emergency nature?
☐ Yes: expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature                              ___/___/___
                                                                           Date



**Illinois**
**Department of**
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

Stateville Correctional Center / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727-3607
TDD: (800) 526-0844

# MEMORANDUM

Date:        October 9, 2006

To:          Cannon,
             Counselor

From:        Partha Ghosh, MD
             Medical Director

Subject:     Medical Grievance for Thomas, Robert N53969 C457

A pass has been issue to bring the offender to HCU for evaluation.

PG:jrw

Cc:    Assistant Warden Programs
       Grievance Office
       Medical Records
       File

Case 1:08-cv-04046 Document 4 Filed 08/19/2008 Page 26 of 108
R.J.

SOMERVILLE CORRECTIONAL CENTER                     Page#_____
Notification Of Appointment to HCU

Name _Thomas_               Number _NS3969_        Date _10/9/06_
Cell# _C457_  Time to Report _8-30_   Assignment _____

| ☒ Lab | _ X-Ray | _ Dietician | _ Seizure Clinic | _ Other |
|---|---|---|---|---|
| _ E.R. | _ OPHTH | _ Infirm Adm | _ Diabetic Clinic | |
| _ P.T. | _ ORTHO | _ M.D. in E.R. | _ Hypertensive Clinic | |
| _ OPT | _ Dental | _ Asthma Clinic | _ Infec. Control Nurse | |
| _ POD | _ Physicals | _ Surgery Clinic | _ Mental Health ___ | |

Special Instructions:

_ NPO -(Nothing By Mouth After 12:00 Midnight)

_ I Accept This Pass _____
                              Inmate Signature

_ I Refuse This Assignment _____
                              Inmate Signature
If you are on a psychotropic medication, This will be discontinued or
Tapered off. If you do not come to your next scheduled appointment.

_ Reason for Refusal _____

Witness _____
                              CMT Signature

** If You fail to keep this appointment (NO SHOW) you will have to  **
       Re-schedule your own appointment thru the CMT.

_ No Show

Attempts to deliver this pass made at the following times:

P.N.'S _____ Reason not delivered _____

Midnights _____ Reason Not delivered _____

_ R.N. Notified of inability to deliver Pass
Signature of CMT _____ P.M. _____ M.N. _____ A.M.
Signature of R.N. _____ P.M. _____ M.N. _____ A.M.

Time inmate departed Assignment _____ Officer _____
TIME Inmate Arrived at HCU      _____ Officer _____
Time Inmate departed HCU        _____ Officer _____
Time Inmate Arrived Assignment  _____ Officer _____

IL 426- DCA 2234  Revised 04/93           White-- Inmate
                                          Yellow--Provider

8

Wednesday, October 18, 2006

Rodger E. Walker Jr., Director
Administrative Review Board [ARB]
Illinois Department of Corrections
P.O.Box 19277
Springfield, Illinois  62794-9277

                        Re:  Inmate Robert Thomas  N53969
                             Appeal of Grievance #1354
                             Denial of Medical Treatment
                             [Stateville]

Dear Director,

        My letter is written regarding my complaint initiated on
September 26, 2006, regarding my broken right ring finger and the
inability of Stateville staff to xray the fracture.  This blatant
denial has caused my finger to heal deformed.   I exhausted institut-
ional remedies and appeal the adverse decision to the ARB for relief.
        Briefly, on August 15, 2006, while closing the celldoor, I
accidently closed it on my finger which caused a substabtial amount
of pain, swelling and my fingernail darkened.   I soaked my finger
continuously and took Motrins that were previously prescribed for the
severe arthritis in my left leg, to avoid the pain.   The prison went
on lockdown status, I wasn't able to show a Med Tech my finger.   On
August 25, 2006, a Med Tech delivered prescription medication to my
cellmate and I explained to the Med Tech how I injured my finger and
she examined it and told me that she would place me on sick call to
see a doctor.   The following day, a doctor evaluated my injured
finger, placed a splint on it, gave me Motrin and scheduled me to be
taken to NRC on Monday, August 28, 2006 (At this hour, I have not
received an xray on my finger)
        I've been waiting as patiently as possible to have my injured
finger x-rayed to determine why it healed deformed.  Dr. Ghosh, Medical
Director here at Stateville erroneously declared that " a pass was
being sent for me to be evaluated and the matter resolved. When in fact,
I was evaluated by Dr. Williams on August 26, 2006 and was scheduled
to be taken to CRC for x-rays of my injured finger.   At this hour, my
finger remains the same and Dr. Ghosh's respond to my grievance have
left me bewildered and confused, being that he based his professional
judgement **without** personally observing the injury.   I merely request
a proper review of my appeal.
        All that is promptly rendered in regard to this matter would
be greatly appreciated.  I await your reply.

                              Sincerely,

                              *Robert Thomas*

                              Robert Thomas  N53969
                              Stateville Correctional Ctr.
                              Post Office Box 112
                              Joliet, IL  60434-0112

cc: personal file              9

Friday, October 20, 2006

Chairperson
Administrative Review Board [ARB]
Office of Inmate Issues
Illinois Department of Corrections
1301 Concordia Ct., P.O. Box 19277
Springfield, Illinois 62794-9277

RE:    Inmate ROBERT THOMAS N53969
       Appeal of Grievance #1354
       Denial of Medical Treatment
       [Stateville]

Dear Chairperson,

Enclosed with my letter is the requisite grievance form and attached documents to initiate the appeal process in this matter regarding the blatant denial of MEDICAL TREATMENT... failure to obtain treatment of my right ring finger.

The crux of my complaint derives from the staff's inadequate manner in handling my particular situation and the unnecessary delay stemming from this mishap.  Records would conclusive show that an equal protection violation has manifested itself, in that I'm being treated differently than others similarly situated and the apparent deliberate indifference to my injury.

OCCURRANCE:

On August 15, 2006, while  closing my cell door, my right-ring finger was injured.  This incident caused a substantial amount of pain. swelling and my fingernail darken.. clearly showing bruised blood lodged within it.  Not realizing the seriousness of my injury, I immediately begin soaking my finger in cold water and consuming "motrins" and "aspirins" (previously prescribed for unrelated reasons) to alleviate the pain.  The deformity of my finger did not become noticable until after the swelling subsided. During this period, the prison was placed on LEVEL ONE lockdown status and sitting in a cell waiting for a Med Tech to walk the galleries, proves to be an futile act.  On two (2) separate occassions, the cellhouse Sargeant walked by my cell, when I called for assistance; my call was completely ignored.  By chance, on August 25, 2006, a Med Tech delivered prescribed medication to my cellmate.  I explained to the Med Tech how I obtained the injury.  Upon noticing my finger, I was told that "my finger was broken" and that I will be placed on Sick Call list to see the doctor at the Health Care Unit.  The following day, August 26, 2006, I was escorted to the H.C.U.  I was EXAMINED and EVALUATED by a doctor, an x-ray was prescribed and scheduled me to be transported to NRC Monday, August 28, 2006 to have my finger X-rayed, being that Stateville facility is unequipped to do x-rays. A splint was placed on my finger and I was given some motrin for the pain. [See Attached Grievance Form].

Page 1 of 3

COUNSELOR:

On September 19, 2006, while my counselor was making his weekly rounds in the cellhouse, I brought this matter to his immediate attention requesting him to contact H.C.U. and find out "what they plan to do about my injured finger?"  On September 26, 2006, approximately one (1) month after the doctor evaluated my finger and prescribed an x-ray... as my counselor was making his rounds, I told him that his call to H.C.U. must have been somewhat affected because I received my blood pressure & arthritis medication in a timely fashion.  I gave my counselor the inital complaint (grievance form) "specifically" requesting that as soon as he sign-off on it to return it to me [See attached note] to enable me to forward it to the Grievance Officer. On October 3, 2006, I prepared and forwarded a letter to my counselor once again requesting that the grievance be returned to me after his completion, that I would forward it to the Grievance Officer. [See Attached Letters]  On October 4, 2006, I received a response from my counselor stating that Dr Ghosh was issued my grievance complaint and upon receiving Dr. Ghosh's response, he'll send the original and a copy to me. [See Attachments].  On October 20, 2006, I received from my counselor the following documents:

       (a)   an original and copy of my grievance
              [with counselor's response]

       (b)   letter from Dr. Ghosh stating that a
              pass will be sent for EVALUATION.
                                  [See Attachments]

PARTHA GHOSH, M.D.:

On September 26, 2006, after discussing this matter with my counselor (supplying him with my initial grievance) I prepared a letter to Dr. Ghosh [See Attachment] bringing to his attention the irregularities that took place regarding my obtaining medical attention for my injury in a much speedious manner. At this hour, I have not received a response. On October. 18, 2006, I received from the Grievance Officer, Dr. Ghosh's reply... he merely stated that a pass has been issued for EVALUATION." I find this statement to be highly offensive and inaccurate being that I was previously evaluated at the HCU by a doctor on August 26, 2006, NOTICE: there is no mention of the 8-26-06 evaluation or previously being prescribed for an x-ray. In addition, he stated that a pass has been issued for me. As a matter of fact, I have not received a pass to the HCU regarding this matter... I received a pass to the HCU for 10-9-06 at 8:30 a.m for lab [See Attachments] That particular pass was cancelled because it was a Holiday. Nor did Dr. Ghosh explain how he was capable of approving my paperwork to be writted to the U. of I. Hospital in Chicago on two (2) separate occassion after my finger was injured and did not follow-up and the doctor's 9-26-06 prescribing an x-ray to determine the extent of my injury? During the two visits to Chicago Hospitals, I tried vigorously to have my finger examined and x-rayed, without success and without obtaining an x-ray or being examined by an orthopedic doctor to determine the exact damage of my injured finger.

GRIEVANCE OFFICER:

On October 17, 2006, the Grievance Officer signed-off on my grievance stating the following:

"Per Dr. Ghosh, M.D., a pass has been issued to bring offender to HCU for EVALUATION."

"It appears that this grievance has been resolved."

NOTICE: the grievance that the Grievance Officer signed-off on and/or responded to DOES NOT have the Counselor's Response completed... there is a stamp from the HCU.. How could the Grievance Officer make an valid decision without first permitting the Counselor to respond to the grievance as proscribed by Departmental Rules, amounting to a procedural due process violation.

CHIEF ADMINISTRATOR:

On October 17, 2006, the Chief Administrator concurred with the Grievance Officer's response. As mentioned above, his response was administered without a response from the counselor... amounting to a procedural due process violation.

CONCLUSION:

I'm in total disagreement with Dr. Ghosh's analysis and the Grievance Officer's Response. THIS MATTER HAS NOT BEEN RESOLVED, on the contrary, this matter has been ignored by the HCU staff and their deficiencies is being overlooked and "rubber-stamped" in the process. Records clearly show that my previous EVALUATION took place on 8-26-06 (nearly 2 months ago) whereas an x-ray was prescribed to determine the extent of my injury. Dr. Ghosh's failure to mention this important factor should give credence to the manner in which this matter was and is being handled. The delay in obtaining medical treatment has caused the deformity of my right ring finger and contributed to a clear and apparent deliberate difference and equal protection violation in that several inmates were transported to NRC a couple of Sundays ago, specifically for the purpose of having x-rays taken. In addition, I was writted to U of I Hospital (Chicago) on two separate occassions for unrelated reasons during the inception of my attempts to obtain proper medical attention. Therefore, I humbly request a formal hearing regarding this matter.

Robert Thomas
Robert Thomas N53969
Stateville

cc: personal file

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

### Grievance Officer's Report

**Date Received:** October 17, 2006      **Date of Review:** October 17, 2006      **Grievance #** 1354

**Committed Person:** Robert Thomas                                                **ID#:** N53969

**Nature of Grievance:** Medical Tx

**Facts Reviewed:** Grievant alleges he was unable to get a X-Ray on his finger.

**Relief Requested:** to have my finger x-rayed as soon as possible to determine the damage and obtain the proper medical attention in a timely fashion.

Per Dr. Ghosh, Medical Director: A pass has been issued to bring the offender to the HCU for evaluation.

It appears that this grievance issue has been resolved.

This Grievance Officer has no medical expertise or authority to contradict the doctor's recommendation/diagnosis.

**Recommendation:** No further action necessary at this time.

Tammy Garcia _____          _T___ Garcia _____
Print Grievance Officer's Name                                    Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

### Chief Administrative Officer's Response

**Date Received:** _10-17-06_      ☑ I concur      ☐ I do not concur      ☐ Remand

**Comments:**

W. McCann _____          _10-17-06_
Chief Administrative Officer's Signature                                    Date

### Committed Person's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Robert Thomas _____          _N53969_          _10-22-06_
Committed Person's Signature                    ID#                        Date

ILLINOIS DEPARTMENT OF CORRECTIONS
OFFENDER'S GRIEVANCE

| Date: SEPT. 26, 2006 | Offender (Please Print) ROBERT THOMAS | ID# N53969 |
|---|---|---|

| Present Facility: STATEVILLE | Facility where grievance issue occurred: STATEVILLE |
|---|---|

Received
Grievance Office
OCT 1 7 2006
STA # 1354

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] Disability
- [ ] Staff Conduct
- [ ] Dietary
- [x] Medical Treatment
- [ ] HIPAA
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Other (specify):
- [ ] Disciplinary Report: _____ Date of Report _____ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
  Chief Administrative Officer, only if EMERGENCY grievance.
  Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
  administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
  Administrative Officer.

Brief Summary of Grievance: On Tuesday, August 15, 2006, while closing my celldoor
I injured my right ring finger. My finger became swollen and my
my fingernail had bruised blood in it. I experienced a huge amount
of pain. I soaked my finger in cold water for a substantial amount of
time. I was waiting to catch a Med Tech on the gallery, but never
did. Thereafter, the prison was on lockdown. During this period, I
continued soaking my hand and taking aspirin that were previously
prescribed to me to relieve the pain. The swelling disappeared,
clearly showing a disformity in my finger. On August 25, 2006, a
Med Tech delivered precription medication to my cellmate and I [continue]

Relief Requested: TO HAVE MY FINGER X-RAYED AS SOON AS POSSIBLE TO DETERMINE
THE DAMAGE AND OBTAIN THE PROPER MEDICAL ATTENTION IN A
TIMELY FASHION.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Robert Thomas | N53969 | 9 : 26 : 06 |
|---|---|---|
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

---

**Counselor's Response** (if applicable)

| Date Received: _____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. |
|---|---|---|

Response: _____

RECEIVED
SEP 27 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

| Date Received: _____ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| Chief Administrative Officer's Signature | Date |
|---|---|

showed her my def____ed finger.  She told me that I w___ be

called to the Health Care Unit the following day.  On August 26,

2005, I went to the H.C.U. Emergency Room and the doctor had a

splint placed on my finger, gave me some Ibupofens and scheduled

me to be taken to NRC to have an xray taken because there is no

available xray technician at Stateville Correctional Center, nor

does the xray machine works properly.  I WAS NOT taken to NRC to

obtain an xray.  As a matter of fact, I have been writted TWICE

to the U. of I. Hospital for liver testing since this incident

occurred, on Septmeber 18th and 25th, 2006.  I asked transportation

officers could they return to the Health Care Unit and ask if I

could be taken to the Emergency Room at U. of I. Hospital while

we were there.  I was told that if they did not have "paperwork"

for me go to the Emergency Room, they cannot take me there.  At

this hour, I still have not had an xray to determine WHY my right

ring finger is deformed as it is.

According to Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285,

50 L.Ed.2d 251 (1976), my Eighth Amendment rights are being

violated.  The U.S. Supreme Court In Estelle stated:

"[D]eliberate indifference to serious medical needs of
prisoners constitutes the "unnecessary and wanton inflic-
tion of pain" proscribed by the Eighth Amendment.  This
is ____ ____ ____ ____ ____rence is manifested by
prison doctors in their resp___ ___ to the prisoner's need
or by prison guards in intentionall_ ___nying or delaying
access to medical care or intentionally in__ ___ng with
the treatment once prescribed.  Regardless of how
evidenced, deliberate indifference to a prisoner's
serious illness or injury states a cause of action
under §1983."

I intend to file civil actions in this matter.

RECEIVED

SEP 2 7 2006

STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE



**Illinois**
Department of
**Corrections**

Rod R. Blagojevich
Governor

**Roger E. Walker Jr.**
Director

Stateville Correctional Center / P.O. Box 112 / Joliet, IL  60434 / Telephone: (815) 727-3607;
TDD: (800) 526-0844

# MEMORANDUM

Date:      October 9, 2006

To:        Cannon,
           Counselor

From:      Partha Ghosh, MD      *PGU*
           Medical Director

Subject:   Medical Grievance for Thomas, Robert N53969 C457

A pass has been issue to bring the offender to HCU for evaluation.

PG:jrw

Cc:    Assistant Warden Programs
       Grievance Office
       Medical Records
       File

16

September 26, 2006

TO:  Dr. Ghosh, Medical Director
     Health Care Unit

FROM:  Robert Thomas N53969
       Unit C-457

RE:  Injured Right-Ring Finger

On August 15, 2006, I injured my finger in the cell door. After the swelling went-down, I realized that my finger was broken or worse? On Friday, August 25, 2006, I finally was able to have a Med Tech examine my finger. Upon viewing the deformity, the Med Tech concluded that my finger was broken and told me that I will be placed on Sick Call to see a doctor.

On Saturday, August 26, 2006, I was taken to the HCU and a doctor examined my finger and prescribed an x-ray, had my finger placed in a splint and I was given some motrin. I was told that I would be taken to NRC that following Monday 8-28-06 to have an x-ray taken because a mental patient was already scheduled to be transported to NRC.

Approximately one (1) month has passed and I still have not had my finger x-rayed. What's troublesome to me is... I've been on a writ to the hospital in Chicago twice, and on each occassion there was no order to have my finger x-rayed or examined.

I would like to have my finger x-rayed to determine the extent of damage that has occurred. Had I received an x-ray in a timely fashion, I doubt seriously that my finger would be deformed as it presently is.

All that is promptly rendered in regard to this matter would be appreciated greatly.

*Robert Thomas*
Robert Thomas N53969
Unit C-457

cc:  personal file

17.

TO: CHRIS CANNON
Unit C Counselor

FROM: ROBERT THOMAS N53969
Unit C-457

RE: GRIEVANCE - MEDICAL


Mr. Cannon, I'm writing to once again remind you that I would like to have a copy of my complaint. Last Tuesday (9-26-06) I gave you my medical complaint regarding my now deformed finger, enabling you to sign-off on it, prior to my sending it to the Grievance Officer.

Being that you had previously contacted the Health Care Unit regarding this matter, you had available information to submit to your response to my complaint.

When I gave you my complaint (9-26-06) I asked could I obtain a copy of my grievance because I was unable to have the complaint copied before giving it to you, you told me that you would send me a copy.

As you were making your rounds today (10-03-06), I brought this to your attention and you advised me that you would send a copy of the complaint to me again.

At this hour, my concern is directed towards the handling of my Grievance in the most appropriate and promptly fashion as possible. Today, you **did** **not** mention whether you had signed-off on my grievance and if you did, was my grievance forwarded to the Grievance Officer??

I would appreciate it if you were to advise me of the above. All that is promptly rendered in regard to this matter would be appreciated greatly. Thank You.

*Robert Thomas*
Robert Thomas N53969
Unit C-457

cc:  personal file


I, **ROBERT THOMAS**, affiant, do hereby declare and affirm pursuant to 735 ILCS 5/109, under the penalty of perjury, that the contents contained herein are true and correct to the best of my knowledge and belief. Furthermore, this missive was placed in my cell bars, picked-up by an correctional officer on October 3, 2006 at 10:00 p.m., to be taken to the institutional mailroom for delivery.

*Robert Thomas*
Robert Thomas, affiant

Mr. Canon,

After completing your response, find a copy back to me and return original guidance to me so that I can obtain a copy before its sent to Grievance Officer.

Thomas N55969

7 - 28 - 06

19

Robert —

I sign off on it after I get a
response from Dr Ghosh. (I sent him a copy
right away.)

If he does not respond in a timely manner,
I will note that, send a copy to you,
and forward the original to the Grievance Office

— CANNON

R.J.

STATEVILLE CORRECTIONAL CENTER
Notification Of Appointment to HCU

Page#_____

Name _Thomas_____ Number _N53969_____ Date _10/9/06_

Cell# _C457_ Time to Report _8:30_ Assignment _____

| | | | | |
|---|---|---|---|---|
| X Lab | __ X-Ray | __ Dietician | __ Seizure Clinic | __ Other |
| __ E.R. | __ OPHTH | __ Infirm Adm | __ Diabetic Clinic | |
| __ P.T. | __ ORTHO | __ M.D. in E.R. | __ Hypertensive Clinic | |
| __ OPT | __ Dental | __ Asthma Clinic | __ Infec. Control Nurse | |
| __ POD | __ Physicals | __ Surgery Clinic | __ Mental Health | |

Special Instructions: _____

__ NPO -(Nothing By Mouth After 12:00 Midnight)

__ I Accept This Pass _____
                        Inmate Signature

__ I Refuse This Assignment _____
                             Inmate Signature

If you are on a psychotropic medication, This will be discontinued or
Tapered off. If you do not come to your next scheduled appointment.

__ Reason for Refusal: _____

Witness _____
            CMT Signature

** If You fail to keep this appointment (NO SHOW) you will have to **
        Re-schedule your own appointment thru the CMT.

__ No Show

Attempts to deliver this pass made at the following times:

P.M.'s _____ Reason not delivered _____

Midnights _____ Reason Not delivered _____

__ R.N. Notified of inability to deliver Pass
Signature of CMT _____
Signature of R.N. _____ P.M._____ M.N._____ A.M._____
                  _____ P.M._____ M.N._____ A.M._____

Time inmate departed Assignment _____
TIME Inmate arrived at HCU _____ Officer _____
Time inmate departed HCU _____ Officer _____
Time Inmate Arrived Assignment _____ Officer _____
                                                Officer _____

IL 426- DCA 2234  Revised 04/93                White-- Inmate
                                               Yellow--Provider

21

SOMEVILLE CORRECTIONAL CENTER
**Notification Of Appointment to HCU**                                Page# ____

Name _____ Number _____        Date _____

Cell# _____/_____ Time to Report _____        Assignment _____

___ Lab        ___ X-Ray        ___ Dietician        ___ Seizure Clinic        ___ Other

___ E.R.       ___ OPHTH        ___ Infirm Adm      ___ Diabetic Clinic

___ P.T.       ___ ORTHO        ___ M.D. in E.R.    ___ Hypertensive Clinic

___ OPT        ___ Dental       ___ Asthma Clinic   ___ Infec. Control Nurse

___ POD        ___ Physicals    ___ Surgery Clinic  ___ Mental Health _____

Special Instructions:

___ NPO -(Nothing By Mouth After 12:00 Midnight)

___ I Accept This Pass _____
                           Inmate Signature

___ I Refuse This Assignment _____
                           Inmate Signature
If you are on a psychotropic medication. This will be discontinued or
Tapered off.  If you do not come to your next scheduled appointment.

___ Reason for Refusal _____

Witness _____
                           CMT Signature

** If You fail to keep this appointment (NO SHOW) you will have to  **
         Re-schedule your own appointment thru the CMT.

___ No Show

Attempts to deliver this pass made at the following times:

P.N.'s _____ Reason not delivered _____

Midnights _____ Reason Not delivered _____

___ R.N. Notified of inability to deliver Pass
Signature of CMT _____
Signature of R.N. _____ P.M. _____ M.N. _____ A.M.
                                   P.M. _____ M.N. _____ A.M.

Time inmate departed Assignment _____ Officer _____
TIME Inmate arrived at HCU _____ Officer _____
Time Inmate departed HCU _____ Officer _____
Time Inmate Arrived Assignment _____ Officer _____

IL 426- DCA 2234  Revised 04/93                    White-- Inmate
                                                   Yellow--Provider

22

Kevin C. Halloran, C
Waxford Health Sources, Inc.
381 Mansfield Avenue, Suite 205
Pittsburg, Pennsylvania  15220-2751

<div align="right">

Re: Inmate Robert Thomas N53969
Stateville Correctional Center
Denial of proper medical care
</div>

Dear Chief Executive Officer,

I'm presently and has been for some time, incarcerated at
the Stateville Correctional Center situated in Joliet, Illinois.
Wexford's Contract #9906022, which extended from 12/17/05 up until
12/16/07 provides medical services to Stateville Correctional Center.

My letter is written to you to bring to your immediate
attention a certain irregularity that's preventing me from obtaining
proper medical treatment as proscribed by your contract and 730 ILCS
5/3-7-2(a) of the Illinois Compiled Statutes.

On August 15, 2006, I accidently injured my right-ring
finger closing my cell door.  After the swelling subsided, it was
apparent that my finger was damaged... the tip of my finger was
pointing in upward direction.  On August 26, 2006, I was escorted
to the Health Care Unit's Emergency Room where I was evaluated by
Dr. Williams.  Everyone I come in contact with immediately states
after observing my injury "your finger is broken."  Dr. Williams
told me that I would be transported to CRC on Monday, August 28, 2006.
After waiting a substantial time, I filed a grievance (complaint)
stating that **I have not had an X-ray to determine the damage of my
finger.**  On October 9, 2006, Dr. Ghosh, Medical Director, prepared
a Memorandum regarding my complaint stating the following:

**A pass has been issued to bring the offender to HCU for evaluation.**

At this hour, I **have not** been evaluated or sent a pass in
this regard.  As a matter of fact, the Grievance Officer and Warden
McCann concurred with Dr.Ghosh's erroneous response to my complaint.

<div align="center">

*23*
</div>

I humbly request your assistance in this matter. It is obvious just from looking at my right ring finger that it's damaged and this prolonged delay in obtaining medical care is crucial towards the repair of any fractures.

All that is promptly rendered in regard to this matter would be appreciated greatly. Thank you for your time. I await your reply.

Sincerely,

Robert Thomas

Robert Thomas   N53969
Stateville Correctional Center
Post Office Box 112
Joliet, IL   60434

cc: personal file

24

STATEVILLE CORRECTIONAL CENTER
Notification Of Appointment to HCU                    Page#_____

Name_____ Number_____    Date_____

Cell#_____ Time to Report_____ Assignment_____

| | | | |
|---|---|---|---|
| __ Lab | __ X-Ray | __ Dietician | __ Seizure Clinic |
| __ E.R. | __ OPHTH | __ Infirm Adm | __ Diabetic Clinic |
| __ P.T. | __ ORTHO | __ M.D. in E.R. | __ Hypertensive Clinic |
| __ OPT | __ Dental | __ Asthma Clinic | __ Infec. Control Nurse |
| __ POD | __ Physicals | __ Surgery Clinic | __ Mental Health |

__ Other

Special Instructions:

__ NPO -(Nothing By Mouth After 12:00 Midnight)

__ I Accept This Pass_____

                    Inmate Signature

__ I Refuse This Assignment_____

                    Inmate Signature

If you are on a psychotropic medication, This will be discontinued or
Tapered off. If you do not come to your next scheduled appointment.

__ Reason for Refusal_____

Witness_____

                    CMT Signature

** If You fail to keep this appointment (NO SHOW) you will have to   **
        Re-schedule your own appointment thru the CMT.

__ No Show

Attempts to deliver this pass made at the following times:

P.N.'S_____ Reason not delivered_____

Midnights_____ Reason Not delivered_____

__ R.N. Notified of inability to deliver Pass
Signature of CMT_____ P.M._____ M.N._____ A.M.
Signature of R.N._____ P.M._____ M.N._____ A.M.

Time inmate departed Assignment_____ Officer_____
TIME Inmate arrived at HCU_____ Officer_____
Time Inmate departed HCU_____ Officer_____
Time Inmate Arrived Assignment_____ Officer_____

IL 426- DCA 2234  Revised 04/93              White-- Inmate
                                             Yellow--Provider

25

## STATEVILLE CORRECTIONAL CENTER
### Notification of Appointment to HCU

Name  __THOMAS, ROBERT__          Number  __N53969__        Date:_____

Cell___C 0448___          Time to Report__10:00 AM__          Assignment_____

| | | | | |
|---|---|---|---|---|
| ___LAB | ___X-RAY | ___DIETITIAN | ___SEIZURE CLINIC | ___OTHER |
| ___E.R. | ___OPHTH | ___INF.ADMIT | ___DIABETIC CLINIC | |
| ___P.T. | ___ORTHO | ___MD in E.R. | ___HYPERTENSIVE CLINIC | |
| ___OPT | ___DENTAL | ___ASTHMA CLINIC | ___INFEC. CONTROL | |
| ___POD | ___PHYSICALS | ___SURGERY CLINIC | ___MENTAL HEALTH ------ | |

__X__  PPD XRAY/GATE 5

Special Instructions:        **CAN NOT REFUSE**

_____I accept this pass_____
<div align="center">Inmate Signature</div>

_____I Refuse this Assignment_____
<div align="center">Inmate Signature</div>

   **If you are on a psychotropic medication, this will be discontinued or tapered off  if you do not come to your next scheduled appointment.**

_____Reason for refusal_____

_____

_____Witness_____
<div align="center">CMT Signature</div>

**If you fail to keep this appointment (NO SHOW) you will have to reschedule your own appointment through the CMT.

_____NO SHOW

Attempts to deliver this pass made at the following times:

PMs_____  Reason not delivered_____
Midnights_____  Reason not delivered_____

_____R.N. Notified of inability to deliver pass
Signature of CMT_____ P.M._____ M.N._____ A.M.
Signature of R.N. _____ P.M._____ M.N._____ A.M.

Time inmate departed Assignment_____  Officer_____
Time inmate arrived at HCU _____  Officer_____
Time inmate departed HCU _____  Officer_____
Time inmate arrived Assignment_____  Officer_____

IL426
DCA2234 (Rev 4/93)



**Illinois**
**Department of**
# Corrections

Rod R. Blagojevich
Governor

Roger E. Walker Jr.
Director

Stateville Correctional Center / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727-3607
TDD: (800) 526-0844

# MEMORANDUM

Date:      October 9, 2006

To:        Cannon,
           Counselor

From:      Partha Ghosh, MD          $P6\mathcal{U}$
           Medical Director

Subject:   Medical Grievance for Thomas, Robert N53969 C457

A pass has been issue to bring the offender to HCU for evaluation.


PG:jrw


Cc:    Assistant Warden Programs
       Grievance Office
       Medical Records
       File



27

ILLINOIS DEPARTMENT OF CORRECTIONS
RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report |
|---|

**Date Received:** October 17, 2006     **Date of Review:** October 17, 2006     **Grievance #** 1354

**Committed Person:** Robert Thomas                   **ID#:** N53969

**Nature of Grievance:** Medical Tx

**Facts Reviewed:** Grievant alleges he was unable to get a X-Ray on his finger.

**Relief Requested:** to have my finger x-rayed as soon as possible to determine the damage and obtain the proper medical attention in a timely fashion.

Per Dr. Ghosh, Medical Director:  A pass has been issued to bring the offender to the HCU for evaluation.

It appears that this grievance issue has been resolved.

This Grievance Officer has no medical expertise or authority to contradict the doctor's recommendation/diagnosis.

**Recommendation:**  No further action necessary at this time.

Tammy Garcia
     Print Grievance Officer's Name                  Grievance Officer's Signature
    (Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** 10-17-06     ☑ I concur     ☐ I do not concur     ☐ Remand

**Comments:**

W. McCann                       10-17-06
Chief Administrative Officer's Signature                    Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Robert Thomas            N53969           10-30-06
   Committed Person's Signature               ID#            Date

Printed on Recycled Paper         (Replaces DC 5657)

December 5, 2006

TO:   Dr. Partha Golsh, M.D.
      Health Care Unit [Stateville]

FROMñ  Robert Thomas N53969
       Unit C-457

RE:   Xray of injured right ring finger


On November 27, 2006, during my appointment with you at your
liver clinic... I showed you my injured finger and explained that
I had previously filed a grievance because my finger was injured
in August and I never obtained the prescribed xray to determine
the amount of damage.  You prescribed an xray for me and I was
taken to NRC On November 29th for an xray.

At this hour, I would like to know the diagnosis of the xray and
what amount of damage occurred??  As you noticed, my finger is
deformed.  If it was fractured, will it have to be re-broken and
set or some other procedure to correct the deformness of my right
ring finger??

I would like to have this deformity corrcted to enable me to use
my right hand as I did before this accident occurred.

All that is promptly renderedin regard to this matter would be
appreciated greatly.  Thank You.

29

**Rod R. Blagojevich**
Governor

# Illinois
**Department of**
# Corrections

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

January 25, 2007

Robert Thomas
Register No. N53969
Stateville Correctional Center

Dear Mr. Thomas:

This is in response to your grievance received on October 25, 2006, regarding medical treatment (requests an x-ray for his finger), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue be addressed without a formal hearing.

The Grievance officer's report, 1354, and subsequent recommendation dated October 17, 2006 and approval by the Chief Administrative Officer on October 17, 2006 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Melody J. Ford
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:   Warden Terry McCann, Stateville Correctional Center
      Robert Thomas, Register No. N53969
      Chron. File

DATE;  March 16, 2007

   TO;  Dr. Ghosh, M.D.
        Health Care Unit

FROM;  Robert Thomas N53969
        Unit C-457

   RE;  DEFORMED RIGHT FINGER
        AND LIVER MEDICATION


     On August 15, 2006, my right ring finger was injured.  On August 25, 2006, I showed a Med-Tech my injury and was taken to the Health Care Unit the following day.  I was told that I would be taken to NRC for an x-ray.  After waiting a substantial amount of time for an x-ray, I filed a grievance in this regard which is presently pending before the Administrative Review Board.

     On November 27, 2006, I showed you my injured finger.  You advised me that an x-ray would be ordered, notwithstanding the fact that an x-ray was previously ordered.  In addition, you advised me that surgery was needed to correct the deformity.  On November 29, 2006, I was taken to NRC and x-rays were finally taken of my finger.  On December 5, 2006, I wrote a letter to you inquiring into the results of my x-rays and whether the deformity in my right ring finger will be corrected.  You did not respond to this letter.

     Furthermore, I was taken to the U. of I. Hospital on numerous occassions after discovering that my liver enzymes were high.  I submitted to a MRI and biopsy which disclosed serious damage to my liver. On November 27, 2006, I received a pass to see you.  I was assured that medication would be prescribed for my liver condition.  At this hour, I have not received any form of medication for this particular ailment.

     On March 7, 2007, during my appearance at the Hypertension Clinic, I explained the above mishap with Dr. Williams.  She assured me, after observing my medical charts; that she was going to take my medical chart to you to resolve this matter.  At the writing of this letter, once again, I have not received any form of response from you regarding this inquiry.

     In closing, I merely request that I be informed regarding the liver medication and that my finger be corrected, these are procedures that you assured me would take place.  All that is promptly rendered in regard to this matter would be appreciated greatly.  Thank You and Have A Nice Day.

                              Sincerely,

cc;  personal file
     Dr. Elyea, M.D.
     Administrative Review Board



80350449-0385
Print Dt/Tm: 02/21/2008  04:39 pm

# UNIVERSITY OF ILLINOIS AT CHICAGO

>>>>>>>> PATIENT INFORMATION <<<<<<<<

**THOMAS, ROBERT**
STATEVILLE CORRECTIONAL CENTER
PO BOX 112
Joliet, IL          60434

Birthdate: 04/02/1950     Age: 57 Years     Sex: MALE     Race: OTHER
SSN: 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     Religion:                              MS: SINGLE
Home Phone: (815) 727-3607
Cell Phone:

Employer Name: NOT EMPLOYED
Employer Address:

Employer Phone:                              Work Phone:
City/State/Zip:

>>>>>> EMERGENCY CONTACT INFORMATION <<<<<<          >>>>>>>> NEAREST RELATIVE <<<<<<<<<<

Name: STATE, CORRECTIONAL CENTE          Name:                              Relationship:
Relationship to Patient: CORRECTION          Address:                              Emp Status:
Work Phone                                                            Employer:
Home Phone: (815) 584-2806                    Home Phone:                      Work Ph:

>>>>>>>> GUARANTOR INFORMATION <<<<<<<<

Name: CENTER, CORRECTIONAL          Sex: MALE     Date of Birth: 01/01/1900     Age: 108 Years     MS: SINGLE
Relationship to Patient: CORRECTION                    Social Security Number: 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
Guar. Address: 809 S MARSHFIELD STREET               City/State/Zip: Chicago, IL          60612
                                                                          County: Cook                              Home Phone: (312) 996-1000
Employer Name: NOT EMPLOYED                    Work Phone:                              Employment Status: NOT EMPLOYED
Employer Address:                                          City/State/Zip:
                                                                          Hire:

>>>>>>>> PRIMARY INSURED/INSURANCE INFORMATION <<<<<<<<

Name: CENTER, CORRECTIONAL          Sex: MALE     Date of Birth: 01/01/1900     Age: 108 Years     MS: SINGLE
Relationship to Patient: CORRECTION
Insurance Name: STATE, CORRECTIONS               ID/Member Nbr: 804477629               Contact Phone Nbr:
Claim's Address: STATEVILLE CORRECTIO          Group Number: 003                    Ref Number: NA
                        PO BOX 112                              Cert Number: NOTVALID          Cert Status: NO
City/State/Zip: JOLIET, IL          60432               PCP:                                          Case Name:
Medical Group ID:                                                                                Case Id:

>>>>>>>> SECONDARY INSURED/INSURANCE INFORMATION <<<<<<<<

Name:                                          Sex:               Date of Birth:               Age: 0 Days     MS:
Relationship to Patient:
Insurance Name:                                                    ID/Member Nbr:               Contact Phone Nbr:
Claim's Address:                                                    Group Number:               Ref Number:
                                                                          Cert Number:               Cert Status:
City/State/Zip:                                                    PCP:                              Case Name:
Medical Group ID:                                                                                Case Id:

>>>>>>>> PREVIOUS ENCOUNTER INFORMATION <<<<<<<<          >>>>>>>> VISIT INFORMATION <<<<<<<<

| Visit Date(s) | Visit Type | Physician |
|---|---|---|
| 01/15/2008 14:37 | OUTPATIENT | Chunprapaph MD, Boonmee |
| 11/20/2007 14:08 | OUTPATIENT | Chunprapaph MD, Boonmee |
| 11/06/2007 15:00 | SURGI-CENTER | Chunprapaph MD, Boonmee |

Location: UIH SURGICENTER          Room/Bed: –
Medical Service: ORTHOPEDICS ORANGE
Scheduled D/Tm: 02/25/2008  06:00
Admit Date/Time:                              Visit Type: SURGI-CENTER
Admit Type: ELECTIVE                    Admit Source: CLINICAL
Admit Diagnosis: hunter right ring fl          Pre-Admit Clerk: Montgomery, Jer
Admit Mode:                                          Admit Clerk:
Admitting Physician Name: Chunprapaph MD, Boonmee

>>>>>>>> ACCIDENT INFORMATION <<<<<<<<

Accident: N          Accident Date/Time:
Accident Type:

Attending Physician Name: Chunprapaph MD, Boonmee
Referring Physician Name: SELF, REFERRED
VIP Indicator: PRISONER
Language: ENGLISH          Interpreter: NO
Advance Directive:

# THOMAS, ROBERT          MALE  /  57 YEARS
80350449          80350449-0385

```
                    U OF I HOSPITAL (HPROD03)
  02/28/08                                              PAGE:  1
  =============================

  FINAL DX & PROC FORM              MEDICAL RECORD #:   080350449

  =======================================================================

  FINAL   NAME: THOMAS ROBERT                    ACCT #: 0803504490385

          AGE:  57   SEX: M   RACE: O   DISCH: 02/25/08    SERV: ORO
                                          ADM: 02/25/08
          DR: CHUNPRAPAPH, BOONMEE B            TIME: 09:42 AM
  =======================================================================
                        BIRTHDATE: 04/02/50
   MAIDEN/OTHER NAME:                  SOC SEC #: 080350449   F/C: H
   PATIENT ADDRESS: STATEVILLE CORRECTIONAL C JOLIET       IL 604340000
            PHONE: 8157273607                  P.A.T.:
   INSURANCE COVERAGE 1:  STATE, CORRECTIONS
   INSURANCE COVERAGE 2:
   INSURANCE COVERAGE 3:
   INSURANCE COVERAGE 4:
  ===================PHYSICIAN S REPORT===================================
   DISCHARGE DATE: 02/25/08  TIME: 05:00 PM            CODER: WB

  ADMITTING DIAGNOSIS
                 ADMITTING DIAGNOSIS NOT DEFINED       ICD9=N/A

  PRINCIPAL DIAGNOSIS
             1.   REMOVAL INT FIXATION DEV               ICD9=V54.01

  SECONDARY DIAGNOSES                    DIAGNOSIS TYPE
             2.   RUPT FLEXOR TENDON HAND           S    ICD9=727.64


  PROCEDURES                             PROCEDURE TYPE
   02/25/08 1.   REPAIR/GRAFT HAND TENDON           P    ICD9=26392
   02/25/08 2.   RMVL IMPL DEV SITE NEC             S    ICD9=78.69
  =======================================================================
   DISCHARGE STATUS: 1

                        CHARGES:      00.00
  =======================================================================
   THOMAS ROBERT            0803504490385   FINAL DX & PROC FORM
```

38



**University of Illinois Medical Center at Chicago**

```
80350449-0385
THOMAS, ROBERT
DOB 04-09-50          N    O
02/25/2008
```

### POST-PROCEDURE NOTE

## <u>ALL FIELDS MUST BE COMPLETED</u>
### Use "Not Applicable" as appropriate

**Pre-Procedure Diagnosis / Indication:** ® FDP PF Rupture

**Post-Procedure Diagnosis:** Same

**Procedure Performed:** ® r OPE Palmaris longus transfer

**Practitioner Performing Procedure:** Bommuce

**Findings (include specimens removed):**


**Estimated Blood Loss:** < 10 cc

**Medication / Fluids / Blood and Blood Components Administered:**
*(DO NOT REPEAT IF DOCUMENTED ELSEWHERE)*
Ø

**Unanticipated Events / Complications:**
Ø

**CDC Surgical Wound Classification / Wound Status:**
☑ (1) Clean    ☐ (2) Clean-Contam    ☐ (3) Contaminated    ☐ (4) Infected    ☐ NONE

**Patient's Status Post Procedure (include vital signs and level of consciousness):**
*(DO NOT REPEAT IF DOCUMENTED ELSEWHERE)*
5 po54

**Patient Disposition:** Same Day Surgery

**Physician Signature:** _____  2/25/08

UI-3071 Rev. 04/07


**University of Illinois Medical Center**
at Chicago

# POST ANESTHESIA ORDER AND
# DISCHARGE SHEET

SIGNATURE AND TITLE REQUIRED WITH EACH ORDER

```
80350449-0385
THOMAS, ROBERT
DOB 04-02-50         M   O
02/25/2008
```

Date: _____                Allergies: _____
**Admit Post Anesthesia Care Unit (PACU):** Vital signs Q 15 minutes or as indicated
IV FLUIDS: _____

**Medicate for pain as follows:**
    Morphine _____ _____ mg IVP  Q _____ min. with max. dose _____ mg. PRN
    Fentanyl _25_ mcg. IVP  Q _10_ min. PRN
    Toradol _____ mg IVP / IM  Q _____ hours PRN
    Vicodin _Ī - ĪĪ_ tablet po Q _4_ hours PRN
    Tylenol #3 _____ _____ tablet / elixir po Q _____ hours PRN
    Motrin _____ mg. po. Q _____ hours PRN
    Tylenol _____ mg tablet / elixir / suppository  Q _____ hours PRN
    Others: _____ _____ _____ _____
    May initiate surgical pain management orders in PACU _____
    PCA orders: _____
    Epidural orders: _____

**Medicate for nausea as follows:**
    Droperidol _____ mg IVP x _____ doses
    Compazine _____ mg IV / IM PRN
    Reglan _10_ mg IVP PRN
    Zofran _4_ _____ mg. IVP PRN

**Medicate for shivering as follows:**
    _____ Demerol 12.5 mg IVP x _____ doses

**Oxygen Therapy:**
    Keep O2 saturation of _≥ 13_% with:  _1 - 6_ Liters nasal Cannula _____ % Blowby
    _____ %Face mask / tent   _____ % Trach / t-piece
    Respiratory Treatment: _____
    ABG: _____
    Chest X-ray: _____
    Ventilator Setting:  CMV / IMV / CPAP Rate _____   FIO2 _____ %        TV _____
        PEEP _____ PS _____
        Wean off Ventilator _____   Maintain on Vent _____
    Extubate by anesthesia

**Additional Orders:** _____ _____ _____
_____
_____
_____
_____
_____
_____
_____

_Cristina Bartis_____ M.D.

_____ NURSE

0455

35

# POST ANESTHESIA CARE UNIT DISCHARGE NOTE

**Date:**

**Time:**

## POST ANESTHESIA CARE UNIT SCORE AT DISCHARGE

| SIGNS | SCORE SYSTEM | SCORE |
|---|---|---|
| Activity | 4 extremities voluntarily or on command | =2 _____ |
| | 2 extremities voluntarily or on command | =1 _____ |
| | 0 extremities voluntarily or on command | =0 _____ |
| Respiration | Able to deep breathe and cough freely | =2 _____ |
| | Dyspnea or limited breathing | =1 _____ |
| | Apneic | =0 _____ |
| Circulation | BP + 20% of preanesthetic level | =2 _____ |
| | BP + 20-50% of preanesthetic level | =1 _____ |
| | BP + 50% of preanesthetic level | =0 _____ |
| Consciousness | Fully awake | =2 _____ |
| | Arousable on calling | =1 _____ |
| | Not responding | =0 _____ |
| Color | Pink | =2 _____ |
| | Pale, dusky, blotchy, jaundiced, other | =1 _____ |
| | Cyanotic | =0 _____ |
| | Total | = _____ |

Recovery from regional block: yes____ no____

Intake(type / amount) _____     Oral: _____

Comments: _____

_____

_____

_____

_____

Discharge from PACU to _____

Discharge with oxygen therapy of _____

_____ MD          _____ Nurse

**University of Illinois**
**Medical Center**
at Chicago

Physicians & Medical
Students begin here

P0???????:???5
THOM?S, ?OBERT
DOB ??/??/??
02/25/2008                    M   O

## HISTORY - PHYSICAL PROGRESS NOTES

| DATE | ANESTHESIOLOGY POSTOPERATIVE EVALUATION |
|------|------------------------------------------|

Procedure: (R) finger flexor digitorum reconstruction   Date of Procedure: 2/25/08

Type of Anesthesia: MAC c̄ brachial plexus block

Anesthesia Attending: Babb

Anesthesia Resident: Bartis

Postoperative Analgesia Plan: per primary service

Postanesthesia Course: eventful _____  0  uneventful _____

Comments:

Signature: Cristina Bartis

University of
Illinois
Medical Center
at Chicago

**SURGICENTER RECORD**
**NURSING CARE NOTES/ADMISSION ASSESSMENT**

80350449-0385
THOMAS, ROBERT
DOB 04-09-50          M   O
09/28/2008
PLACE PATIENT LABEL HERE

DATE 2/25          DATE OF SURGER 2/25/08

PROPOSED OPERATION / PROCEDURE

**PREOPERATIVE CHECKLIST**

| | | | | YES | N/A | OTHER | | | YES | N/A | OTHER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OPERATIVE CONSENT | | | UA/CS | | | | CONSULTATIONS | | | | |
| BLOOD CONSENT | | | RPR | | | | ANESTHESIA | | | | |
| TUBAL STERILIZATION CONSENT | | | PT/PTT | | | | PEDIATRIC | | | | |
| ANESTHESIA CONSENT | | | SICKLE CELL SCREEN | | | | MEDICINE | | | | |
| | | | ELECTROPHORESIS | | | | CARDIOLOGY | | | | |
| H & P | | | HEPATITIS ANTIGEN | | | | SIGNATURE | | | | |
| CHEST X-RAY | | | BHCG / URINE | | | | | | | | |
| EKG | | | PULMONARY FUNCT / ABG | | | | | | | | |
| CLINICAL CHEMISTRY | | | OTHER | | | | | | | | |
| CBC | | | | | | | | | | | |

**ADMISSION ASSESSMENT**

DATE 1/25   TIME 1125   SENSORIUM   LANGUAGE   VIA: AMBULATORY  W/C  CART  WITH CANE / CRUTCHES  CARRIED  WALKER

ALLERGIES  LATEX ALLERGY  NO KNOWN ALLERGY   ACCOMPANIED BY:

PAST MEDICAL HISTORY / SURGICAL HISTORY   CALL FOR RIDE  YES  NO

PHONE / NAME

ADMITTING VITALS   HT   WT   OPERATIVE SITE MARKED  YES

PULSE   RESP   TEMP   Surgical Site Verification  YES

**MEDICATIONS (*MEDS TAKEN)**   BELONGINGS / Signature:

| | | LOCKER # | | WITH FAMILY |
| | | WITH PATIENT | | |
| | | DENTURES REMOVED | | VIA |
| | | GLASSES OFF / CONTACTS REMOVED | W/C CART CRIB CARRIER WAGON |

NPO SINCE   MEDICATIONS RECONCILED

PERSONAL HABITS (ETOH   HANDICAP / SPECIAL PRECAUTIONS & DISABILITY   PROTHESIS REMOVED / INFORMED   WITH
SMOKING   ILLICIT DRUGS)   UNDERGARMENT IS REMOVED / PAPER   ACCOMPANIED BY

ID BANDS R / WRIST / R / ANKLE   JEWELRY  BODY PIERCING  REMOVED GIVEN TO PT

| TOP C | | TIME INITIAL |
| VERBALIZES UNDERSTANDING   DEMONSTRATES | NO PAIN  0 1 2 3 4 5 6 7 8 9 10  WORST PAIN |
| D-BARRIERS NOTED  PERFECTLY  PARTIENTIALLY | |
| S-SIGNIFICANT OTHER | WONG-BAKER SCALE |
| LOCATION | Quality of Pain |
| D-DISTRACTION  P-POSITIONING  C/H-COLD/HEAT | |
| R-RELAXATION  ICE-SIGNAL | |

**PREPARATIONS / PREOPERATIVE MEDS**

IV SOLUTION / AMOUNT LR 1000cc   IV STARTED BY

SITE LH   CATH SIZE # 20g

| PRE-OP ACCUCHECK | | UHGG  POSITIVE  NEGATIVE | | |
| TIME | MEDICATION | DOSE | ROUTE | GIVEN BY | TIME | MEDICATION | DOSE | ROUTE | GIVEN BY |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

NURSE'S NOTES

REPORT OFF SIGNATURE

SIGN OUT RN SIGNATURE

UI - 1100 Rev. 09/06

38

# University of Illinois Medical Center at Chicago

**SURGICENTER POSTOPERATIVE RECORD**
**NURSING CARE NOTES**

| TIME | 1640 | RECEIVED FROM |
|---|---|---|
| VIA | | ACCOMPANIED BY |
| AMB WC CART CRIB CARRIED | | |
| PROCEDURE | | |

TYPE OF ANESTHESIA: GENERAL SPINAL EPIDURAL BLOCK MONITORED ANESTH CARE IV SED LOCAL TOPICAL

**TIME**
INITIAL

PAIN SCALE: NO PAIN _____ WORST PAIN
0 1 2 3 4 5 6 7 8 9 10

WONG-BAKER SCALE
0 NO HURT | 2 HURTS LITTLE BIT | 4 HURTS LITTLE MORE | 6 HURTS EVEN MORE | 8 HURTS WHOLE LOT | 10 HURTS WORST

Quality of Pain:
- Aching
- Burning
- Cramping
- Dull
- Pressure
- Radiating
- Sharp
- Throbbing
- Other

**PT. EDUCATION**
TOP-C
V-VERBALIZES UNDERSTANDING D-DEMONSTRATES
B-BARRIERS NOTED PT-PATIENT P-PARENT/FAMILY
S-SIGNIFICANT OTHER

**ADEQUATE COMFORT**
LOCATION
D-DISTRACTION P-POSITIONING CH-COLD/HEAT
P-RELAXATION TECHNIQUE

## PATIENT ASSESSMENT

| TIME/INIT | BP | P | R | T | O2 | LEVEL OF CONSCIOUSNESS | ACTIVITY | DRESSING/DRAIN/PAD | PAIN |
|---|---|---|---|---|---|---|---|---|---|
| | 117/71 | 60 | 20 | 97.7 | 95% RA | awake | in bed | | 0 |
| | 118/62 | 108 | 20 | 97.5 | 96% | A O x 4 | ↑ in cw | | 6 |

| TIME/INIT | MEDICATIONS | DOSE | RTE | SITE | IWB TOTAL | INDICATION | TIME/INIT | FREQ | RESPONSE | TIME/INIT | PO cc | GS | VOID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

| | IV | BLOOD | N/G | OTHER | | | THERAPY | IV FLUID OR BLOOD | SITE | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | EBL | EMESIS | PO | 1640 | | | | |
| OR | 900 | | | 500 | | | | LR C 400 | L HAND | | 50 |
| RR | | | | | | | | 10 | D lac O | | |
| SC | 50 | | | | | | | | 17.50 | | |

## NURSE'S NOTES

1640 Received while awake by SU
95% ... on ® ... all uses ... ... good
cap refill. Denies pain. ...
... Officer ... instruction ...
instruction of ... gun. D/C (Home) ...

**POST-OP ACCUCHECK** _____

- BELONGINGS RETURNED
- DISCHARGE INSTRUCTIONS PROVIDED
- PRESCRIPTION PROVIDED
- NOTE FOR WORK/SCHOOL PROVIDED
- CRUTCH TRAINING
- DRAIN CARE

## DISCHARGE ASSESSMENT

- TOLERATES PO FLUIDS
- MINIMAL NAUSEA/VOMITING
- VITAL SIGNS +/- 20% PRE-OP
- RESP DISTRESS ABSENT

- ALERT
- PAIN CONTROLLED

- VOIDED NA
- AMBULATED NA
- GAG REFLEX PRESENT NA

| PATIENT ADMITTED | |
|---|---|
| 23 HOUR OBSERVATION | INPATIENT |
| REASON | |
| REPORT TO | AT | BY |
| TIME | |
| ROOM NO | |

TIME 1740 ACCOMPANIED BY _____

MODE OF DISCHARGE:
- AMBULATORY
- WHEELCHAIR
- STRETCHER
- CARRIED

DISCHARGED BY

REPORT TO: _____

INITIAL/SIGNATURE

UI-1100 Rev. 09/05



**University of Illinois Medical Center**
at Chicago

## SURGICENTER PREPARATORY INSTRUCTION
## AND FOLLOW-UP REPORT

Thomas, Robert
Statesville Co

**Preparatory Instruction**

Date: 2/22          Time: 3P

Person spoken to: Chestnut

☐ Verify Procedure _____

☐ Time to arrive in Surgicenter ___ 10AM

☐ Directions and location

☐ Parking instructions

☐ Dietary Restrictions _NPO Pmn_

_____

☐ Medications _____

  Instructions _____

☐ Personal preparation and attire:
  makeup, nail polish, jewelry, bath/shower,
  hair washing

☐ Responsible adult to accompany - no children

☐ Symptoms, i.e.: cold, flu

_____

☐ Valuables/Misc.

Comments: _____

_____

_____

_Rose Traveler_  (R.N.)

**Follow Up Report**

Date: 2/26/06          Time: 09:00

Person spoken to: _statesville doctor_

☐ General condition _____ good

_____

☐ Diet _____ Good

☐ Nausea/Vomiting _____ none

☐ Pain _____ controlled

_____

☐ Wound/Dressing _____ OK

_____

☐ Activity _____ good

_____

☐ Follow Up Appointment _____

_____

☐ Problems/Questions _____

_____

Comments: _____

_____

_____

_____ R.N.

Romero
2/26



40

1020 Rev 10/02




**University** of
**Illinois**
**Medical Center**
at Chicago

```
80350449-0385
THOMAS, ROBERT
008  04-02-50      N    0
02/28/2008
```

# SURGICAL / PROCEDURAL
# DISCHARGE INSTRUCTIONS

Patient _____ Procedure _FDP Reconstruction_ Physician _Brennan_ M.D.

## DIET
☒ Resume normal diet – No Restriction          ☐ Liquids, soft, or light diet today, normal diet tomorrow
☐ _____

## BATHING
☐ No restrictions     ☐ Shower only until _____     ☐ Sponge bath only until _____
☒ _Keep cast dry @ all times_____

## MEDICATION INSTRUCTIONS (Check all that apply)
☐ Medication list provided to patient (Required for all prescription and non-prescription meds such as aspirin and vitamins.)
☒ Prescriptions given          ☐ Medications from home returned to patient
☐ No medications, prescription on non-prescription for home required

## WOUND CARE
☒ Do not remove bandage          ☐ Remove bandage in ____ day(s) and clean wound with _____

## ACTIVITY
☐ No restriction          ☐ Rest today, increase activity tomorrow as tolerated
☐ Rest for _____ day(s), then increase activity as tolerated
☒ _No lifting RUE_____
☐ Return to work/school in _____ days

## CLINIC APPOINTMENT
☒ Return to _Ortho_ clinic on _3/4/08_ at _1pm_
☐ Call _____ clinic 312-996- _1160_ _____ for appointment
☐ _____

## SPECIAL INSTRUCTIONS/COMMENTS

| GENERAL INSTRUCTION | IN CASE OF: |
|---|---|
| *DO NOT* work with any electrical or mechanical devices for 24 hours<br>*DO NOT* drive for 24 hours after surgery<br>*DO NOT* drink alcoholic beverages for 24 hours after surgery<br>*NO NOT* make important decisions or sign important documents for 24 hours after surgery (until your full mental alertness returns) | 1. Continuous or heavy bleeding<br>2. Difficulty breathing<br>3. Fever/ / chills<br>4. Continuous nausea and vomiting<br>5. Drainage from surgical area<br><br>Call Dr. _____ at 312-996-6780 or call the emergency department at 312-996-7297 or go to the emergency department |

I have received a copy of and understand the above instructions

_____ and _____
Patient                                              Responsible adult with patient

                                                     _____  _____
                                                     Relationship      Date

_____
Physician / Nurse                                    _____
                                                     Date

UI-1017E (10/07)

* Preliminary Report *

Result Type:       Orthopedic Note
Result Date:       April 15, 2008 12:00 AM
Result Status:     Transcribed
Result Title:      Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.
Performed By:      Thormeyer MD, Jeffrey Robert on April 15, 2008 5:21 PM
Encounter info:    80350449-0386, UICMC. OUTPATIENT, - 4/15/2008

# * Preliminary Report *

**Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.**
   University of Illinois Medical Center at Chicago

CLINIC NOTE          Patient: THOMAS, ROBERT

DICT: JEFFREY THORMEYER. M.D. MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 04/15/2008

DATE OF BIRTH: 04/02/1950

CHIEF COMPLAINT: Status post status post Hunter rod procedure.

HPI: This is a 55-year-old African American male, state jail inmate. who
is status post Hunter rod procedure of FDP and tendon transfer of the FDP,
a tendon in the right ring finger. This procedure was performed on
February 25, 2008, approximately 7 weeks ago. Today, the patient comes in
to the clinic after having tried to remove his Calmdigger splint over the
weekend, because of. what the patient described as a putrid smell. The
patient denies any complaints outside of mild pain at the distal right ring
finger. He denies any fevers, chills, nausea, vomiting, or night sweats.

PHYSICAL EXAMINATION: The patient is a well-developed, well-nourished
African American male, who is in no apparent distress. He is alert and
oriented x3. The patient's upper extremity is in a damaged Clamdigger
splint. The patient's sensation is intact distally. He is able to flex
all digits at the PIP joint, however, flexion at the DIP of that right ring
finger is minimal and very sluggish. The button attaching the suture over
the nail is hanging very loosely.

ASSESSMENT AND PLAN: This is a 58-year-old male who originally sustained a
laceration to his flexor digitorum profundus of his right ring finger
status post Hunter 2 procedure. The patient attempted to remove cast and
may have internally damaged the repair of the flexor digitorum profundus
tendon given the state of the button suture and the inability to fully flex
at the distal interphalangeal joint of the right ring finger. We have
removed the suture and button given its current state. We will remove the

* * Preliminary Report *

cast at this time and buddy-tape the long and ring fingers in 2 places in a position of comfort and flexion of the distal interphalangeal and proximal interphalangeal joints. We will have the patient return to clinic in approximately 3 weeks. We will reevaluate the status of the repair.

The patient was seen and examined by the attending Dr. Boonmee who agrees with the above plan.

DD: 04/15/2008
DT: 04/15/2008
JT/cym
JOB:547047

**Completed Action List:**
* Perform by Thormeyer MD, Jeffrey Robert on April 15, 2008 5:21 PM
* Transcribe by on April 15, 2008 6:23 PM

* Final Report *

| | |
|---|---|
| Result Type: | Orthopedic Note |
| Result Date: | March 04. 2008 12:00 AM |
| Result Status: | Modified |
| Result Title: | Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D. |
| Performed By: | Dubin MD. Jonathan on March 05, 2008 3:03 PM |
| Verified By: | Dubin MD. Jonathan on March 10, 2008 7:18 AM |
| Encounter info: | 80350449-0384, UICMC. OUTPATIENT, - 3/4/2008 |

## * Final Report *
## Document Contains Addenda

**Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.**
University of Illinois Medical Center at Chicago

CLINIC NOTE                    Patient: THOMAS, ROBERT

DICT: Jonathan Dubin, MD      MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 03/04/2008

DATE OF BIRTH: 04/02/1950

HISTORY OF PRESENT ILLNESS: This is a 57-year-old inmate at Statesville. He is status post Hunter rod procedure of FDP and tendon transfer of the FDP tendon of the right ring finger. This procedure was performed on February 25, 2008. Today, the patient comes in the clinic for routine followup. Patient denies any complaints. His pain is well-controlled. Denies any fevers, chills, nausea, vomiting and night sweats.

PHYSICAL EXAMINATION: Reveals a well-developed, well-nourished African American male in no apparent distress. Alert and oriented x3. Patient's extremity is in a dorsal blocking splint which has sustained some damage in between the first web space. However, patient's sensation appears to be intact. He is able to flex all of his fingers.

ASSESSMENT AND PLAN: This is a 57-year-old male who sustained a laceration to his flexor digitorum profundus tendon to his right ring finger, status post Hunter tube procedure to flexor digitorum profundus tendon. Patient appears to be improving well postoperatively. At this time, we would like to extend the dorsal blocking splint for another one as the splint has sustained some damage. I would like to see the patient return to clinic in 4 weeks for a repeat evaluation.

The above assessment and plan were discussed with the patient. He agreed to his understanding.

Patient was seen and evaluated with Dr. Boonmee Chunprapaph.

| | | |
|---|---|---|
| Printed by: | Johnson , Christal | Page 1 of 2 |
| Printed on: | 4/30/2008 3:37 PM | (Continued) |

* Final Report *

DD: 03/05/2008
DT: 03/05/2008
JD/cym
JOB:754218

### Addendum by Chunprapaph MD, Boonmee on March 11, 2008 12:54 PM

I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.

Boonmee Chunprapaph, M.D.

### Completed Action List:
* Perform by Dubin MD, Jonathan on March 05, 2008 3:03 PM
* Transcribe by on March 05, 2008 3:49 PM
* Sign by Dubin MD, Jonathan on March 10, 2008 7:18 AM  March 10, 2008 7:18 AM
* VERIFY by Dubin MD, Jonathan on March 10, 2008 7:18 AM
* Review by Chunprapaph MD, Boonmee on March 11, 2008 12:54 PM  Requested by Dubin MD, Jonathan on March 11, 2008 12:54 PM
* Modify by Chunprapaph MD, Boonmee on March 11. 2008 12:54 PM
* Sign by Chunprapaph MD. Boonmee on March 11, 2008 12:54 PM

** Final Report *

| | |
|---|---|
| Result Type: | Anesthesia Services Consult |
| Result Date: | February 25, 2008 1:54 PM |
| Result Status: | Auth (Verified) |
| Result Title: | nerve block note |
| Performed By: | Oswald MD, Sarah on February 25, 2008 1:58 PM |
| Verified By: | Oswald MD, Sarah on February 25, 2008 1:58 PM |
| Encounter info: | 80350449-0385, UICMC. SURGI-CENTER,  - 2/25/2008 |

## * Final Report *

### University of Illinois at Chicago Medical Center
### Anesthesiology Procedure Note - PERIPHERAL NERVE BLOCKADE

**Peripheral Nerve Block(s) performed:** supraclavicular brachial plexus block

**Approach(es: supraclavicular     Side confirmed:** [ x] Right   [ ] Left

**Diagnosis/pain location:** right ring finger

**Surgical Procedure:** right ring finger tendon repair

**Indication:** The block(s) was placed for: [ ] Perioperative Analgesia  [ x] Surgical anesthesia
[ ] The procedure was specifically for management of postoperative pain by Dr. _____.

**Physical Assessment of site to be blocked:**        [ x] Motor _5/5        [ ] Reflexes ____
**Presence of Neuropathy:**        [ ] None   [ ] Yes, _____

**Consent:** History and physical examination were performed. Risks, benefits and alternatives to this regional
anesthetic were discussed with the patient. Risks discussed included: [ ] bleeding  [ ] infection  [ ] nerve injury
[ ] headache  [ ] pneumothorax  [ ] other: _____.  All patient questions were answered. Consent
was given by patient. A "time-out" with 2 active identifiers of the patient, the procedure, and the site was
performed.

**Date:** 2/25/2008     **Start time** (12:27)   **End time** (13:07)

**Monitors:** [ x] NIBP  [ x] ECG  [x_] SaO2  [ x] O2

**Initial Vitals: BP:** 117/77   **HR:** 69  **SaO2:** 95%

**Preparation:** [ ] povidone-iodine  [ x] chlorhexidine  [ ] iodophor/isopropyl  [ ] alcohol  [ ] drape

**Position:** [x_] supine  [ ] prone  [ ] LLD  [ ] RLD  [ ] sitting

**Needle(s):** [ x] short-bevel  [x_] Touhy  [ ] long-bevel  [ ] pencil-tipped  [ ] Quincke  [ ] introducer
**Manufacturer, length, gauge(s):** Polymedic; 70mm; 22g

**Technique:** [x_] injection through needle
        [ x] nerve stimulation   [ ] infiltration  [x_] ultrasound

| Motor | | m | m | Depth | Techniqu | Sedation | Dose |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

* Final Report *

| Response | A | S | (cm) | e | given | |
|---|---|---|---|---|---|---|
| wrist extension | 0.5 | | | [x_] needle | Midazolam | 5mg, divided doses |
| | | | | [_] catheter | Fentanyl | 150,mcg |
| | | | | | | |

**Injectate**:  [_] bupivacaine  [x_] ropivacaine  [x_] mepivacaine  [_] lidocaine  [_] 2-CP

| Concentration (%) | Volume (mL) | Adjunct | Epinephrine |
|---|---|---|---|
| 1.5% mepivcaine | 20cc | | [_] 1/200,000 [x] not used |
| 0.5% ropivacaine | 20cc | | |

**Narrative**: Injection was made incrementally with constant monitoring and aspiration every 5 ml's.

**Events**: [_x] none: easy and well tolerated; no blood aspirated; negative intravenous test using epinephrine; no pain on injection noted; normal resistance on injection.
[_] difficult (# of attempts___); _____ ; action taken: _____.

**Complication(s)**: [x_] none [_] dyspnea [_] parasthesia (distribution:____) [_] bleeding [_] other:__

**Success**: [_x] complete  [_] partial  [_] failed  [_] aborted  [_] full evaluation pending

**Post Vitals**: **BP**: 127/81  **HR**: 73  **SaO2**: 99%

The procedure was performed by S. Oswald/ P. Espalson. The Attending Anesthesiologist who medically directed and was present for entire procedure is  Dr. Babb.

**Completed Action List:**
* Perform by Oswald MD, Sarah on February 25, 2008 1:58 PM
* Sign by Oswald MD, Sarah on February 25, 2008 1:58 PM
* VERIFY by Oswald MD, Sarah on February 25, 2008 1:58 PM

47

` * Final Report *

| | |
|---|---|
| Result Type: | Operative Report |
| Result Date: | February 25, 2008 12:00 AM |
| Result Status: | Auth (Verified) |
| Result Title: | Operative Report- ATTENDING:.Boonmee Chunprapaph, M.D. |
| Performed By: | Chunprapaph MD, Boonmee on February 25, 2008 6:02 PM |
| Verified By: | Chunprapaph MD, Boonmee on February 28, 2008 6:32 AM |
| Encounter info: | 80350449-0385, UICMC. SURGI-CENTER, - 2/25/2008 |

## * Final Report *

**Operative Report- ATTENDING:.Boonmee Chunprapaph, M.D.**

University of Illinois Medical Center at Chicago

Report of Operation            Patient: THOMAS, ROBERT

DICT:  ALEX ROMERO, MD          MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD  Date of Surgery: 02/25/2008

PREOPERATIVE DIAGNOSIS:  Right ring finger flexor digitorum profundus
disruption, status post Hunter rod placement.

POSTOPERATIVE DIAGNOSIS:  Right ring finger Flexor digitorum profundus
disruption, status post Hunter rod placement.

SURGEON(S):  BOONMEE CHUNPRAPAPH, MD

ASSISTANT(S):

RESIDENT:  ALEX ROMERO, MD

PROCEDURE:  Removal of Hunter rod and  right palmaris longus tendon graft to FDP
of ring finger.

ANESTHESIA:  Regional.

IV FLUIDS:  Per anesthetic record.

TOURNIQUET TIME:  120 minutes.

ESTIMATED BLOOD LOSS:  10 mL.

PATHOLOGY:  None.

IMPLANTS:  None.

DISPOSITION:  To PACU in stable condition.

OPERATIVE INDICATIONS:  Mr. Thomas is a 57-year-old inmate who suffered a disruption to his FDP to his ring finger that became chronic in nature.  Due to the loss of function of his FDP to his ring finger, discussion was had to do a reconstruction.  The first stage of this reconstruction was performed on November 7, 2007 by Dr. Boonmee.  At that time, it was noted that the patient had disruption distal to the PIP joint.  A Hunter rod was therefore placed in the ring finger from the PIP distally.  He returns today for the second stage of that procedure.  The risks and benefits of the procedure were discussed with the patient.  He again agreed to going forward with the procedure.  The appropriate extremity was identified and marked in the preoperative holding area.

OPERATIVE TECHNIQUE:  The patient received preoperative regional anesthesia in the holding area.  The patient was brought into the operating room and placed in the supine position on the operating table.  The right upper extremity had a nonsterile tourniquet applied.  IV antibiotics prophylactically were administered.  The patient had the right upper extremity prepped and draped in the sterile fashion.

The right upper extremity was exsanguinated using an Esmarch bandage.  The tourniquet was inflated to 250 mmHg.  The right hand was used to retract the digits in an external position.  An incision was made following the patient's old Brunner incision scar from the distal phalanx proximally into the distal aspect of the palm.  The skin flaps were elevated using sharp dissection.  Care was taken to remain superficial to the neurovascular bundle.  Blunt dissection was carried out down to the level of the new tendon sheath.  The Hunter rod was medially identified on the distal phalanx.  The figure-of-8 sutures that were placed at the last procedure were excised.  The Hunter rod was freely moved within its newly formed sheath.  The dissection was again further carried out down to the level of the FDP tendon over the proximal phalanx.  FDS was noted to be intact.  FDP was present at this level and was scarred into the level of the PIP joint.  Taking care to avoid damaging neurovascular structures, this dissection was carried proximally into the palm.

After exposing the digit, our attention was turned towards harvesting of the graft.  A curvilinear incision was made over the distal aspect of the volar forearm at the level of the wrist crease.  Palmaris longus was immediately identified.  A tendon stripper was passed approximately 20 cm proximally.  The tendon stripper would not completely harvest the graft.  We therefore made a second incision approximately 1 cm in length over the volar forearm at the level of the midforearm.  The tendon passer and the palmaris longus tendon were both immediately identified.  The palmaris longus tendon was then retracted out of the proximal incision and excised.  Again, we noted that we had approximately 15 cm of tendon graft.  We then returned to the ring finger for placement of the tendon graft, although the FDP was intact to the level of the PIP joint and we felt it would be more beneficial to perform our

* Final Report *

anastomosis at the level just proximal to the A1 pulley as to decrease the
amount of adhesions.  Using figure-of-8 sutures, the distal aspect of the
palmaris tendon graft was then sutured into the proximal aspect of the Hunter
rod.  The Hunter rod was then removed out the distal segments of the new
sheath.  This brought our tendon out distally at the level of the distal
phalanx.  Likewise, the FDP tendon at the level of the proximal phalanx, this
was sutured to the proximal aspect of our tendon graft.  The FDP was then
retracted with sheath along with our tendon graft through the incision in the
distal palm.  The excess FDP tendon was then excised.  The figure-of-8 sutures
were removed.  The tendon graft was then weaved into the intact FDP tendon
proximally using the technique described by Pulvertaft in the end-weave
fashion was performed without difficulty.

We turned our attention to the excision of the distal graft.  The patient did
not have sufficient FDP tendon at the distal phalanx.  Decision was made to
fix the FDP tendon to the distal phalanx through drill tunnels and tieing over
a button.  We placed two 0.45-mm K-wires through the proximal aspect of the
distal phalanx angulated dorsally and distally through the nail plate.  Using
a 3-0 nylon suture, a Krackow stitch was placed in the distal aspect of our
tendon graft.  One at a time, each of the 0.45 K-wires was removed in this
tunnel.  We followed with a Keith needle holding each strand of our Krackow
suture.  The FDP tendon was then appropriately tensioned, so that the resting
position lie in between that of the small finger and long finger.  Again, this
was tied over a button on the dorsal aspect of the nail plate.  The wound was
then copiously irrigated with sterile saline.  The apices of the Brunner
incision were closed using apical stitches.  The remainder of the length was
closed using running 5-0 Vicryl sutures.  The curvilinear incision in the
wrist crease as well as the midforearm volar incision were both additionally
closed using interrupted horizontal locked mattress sutures with 5-0 Vicryl.
The wounds were all dressed with Xeroform, 4 x 4's and overwrapped with a
Kling.  The patient was placed in a dorsal blocking cast that extended out to
the fingertips with the wrist in approximately 10 degrees of volar angulation
in the MCPs at 90 degrees of volar angulation.  Again, this was extended into
a cast and the cast was univalved for swelling.  Dr. Boonmee was present and
scrubbed for the entire procedure.  The patient was transferred to the gurney
and back to same-day surgery in a stable condition.

DD: 02/25/2008
DT: 02/26/2008
AR/cym
JOB:739770

**Completed Action List:**
* Perform by Chunprapaph MD, Boonmee on February 25, 2008 6:02 PM
* Transcribe by on February 26, 2008 2:43 AM

Printed by:    Johnson , Christal
Printed on:    4/30/2008 3:37 PM

**Operative Report**

THOMAS, ROBERT - 80350449

* Final Report *

* Sign by Chunprapaph MD, Boonmee on February 28, 2008 6:32 AM  February 28, 2008 6:32 AM
* Modify by Chunprapaph MD, Boonmee on February 28, 2008 6:32 AM
* VERIFY by Chunprapaph MD, Boonmee on February 28, 2008 6:32 AM

* Final Report *

Result Type:          Anesthesia Services Consult
Result Date:          February 25, 2008 1:54 PM
Result Status:        Auth (Verified)
Result Title:         nerve block note
Performed By:         Oswald MD, Sarah on February 25, 2008 1:58 PM
Verified By:          Oswald MD, Sarah on February 25, 2008 1:58 PM
Encounter info:       80350449-0385, UICMC, SURGI-CENTER, - 2/25/2008

## * Final Report *

### University of Illinois at Chicago Medical Center
### Anesthesiology Procedure Note - PERIPHERAL NERVE BLOCKADE

**Peripheral Nerve Block(s) performed**: supraclavicular brachial plexus block

**Approach(es: supraclavicular**    **Side confirmed**: [_x] Right    [_] Left

**Diagnosis/pain location**: right ring finger

**Surgical Procedure**: right ring finger tendon repair

**Indication**: The block(s) was placed for:  [_] Perioperative Analgesia  [_x] Surgical anesthesia
[_] The procedure was specifically for management of postoperative pain by Dr. _____.

**Physical Assessment of site to be blocked**:     [_x] Motor _5/5     [_] Reflexes ____
          **Presence of Neuropathy**:     [_] None   [_] Yes, _____

**Consent**:  History and physical examination were performed.  Risks, benefits and alternatives to this regional anesthetic were discussed with the patient.  Risks discussed included:  [_] bleeding  [_] infection  [_] nerve injury  [_] headache  [_] pneumothorax  [_] other: _____.    All patient questions were answered.  Consent was given by patient.  A "time-out" with 2 active identifiers of the patient, the procedure, and the site was performed.

**Date**: 2/25/2008     **Start time** (12:27)   **End time** (13:07)

**Monitors**:  [_x] NIBP  [_x] ECG  [x_] SaO2  [_x] O2

**Initial Vitals**: **BP**: 117/77  **HR**: 69  **SaO2** 95%

**Preparation**: [_] povidone-iodine [_x] chlorhexidine  [_] iodophor/isopropyl  [_] alcohol  [_] drape

**Position**: [x_] supine  [_] prone  [_] LLD  [_] RLD  [_] sitting

**Needle(s)**: [_x] short-bevel [x_] Touhy  [_] long-bevel  [_] pencil-tipped  [_] Quincke  [_] introducer
          **Manufacturer, length, gauge(s)**: Polymedic; 70mm; 22g

**Technique**: [x_] injection through needle
          [_x] nerve stimulation  [_] infiltration  [x_] ultrasound

| Motor | m | m | Depth | Techniqu | Sedation | Dose |
|-------|---|---|-------|----------|----------|------|

* Final Report *

| Response | A | S | (cm) | e | given | |
|---|---|---|---|---|---|---|
| wrist extension | 0.5 | | | [x_] needle | Midazolam | 5mg. divided doses |
| | | | | [_] catheter | Fentanyl | 150,mcg |
| | | | | | | |

Injectate: [_] bupivacaine  [x_] ropivacaine  [x_] mepivacaine  [_] lidocaine  [_] 2-CP

| Concentration (%) | Volume (mL) | Adjunct | Epinephrine |
|---|---|---|---|
| 1.5% mepivcaine | 20cc | | [_] 1/200,000 [x] not used |
| 0.5% ropivacaine | 20cc | | |

**Narrative**: Injection was made incrementally with constant monitoring and aspiration every 5 ml's.

**Events**: [x_] none: easy and well tolerated; no blood aspirated; negative intravenous test using epinephrine; no pain on injection noted; normal resistance on injection.
[_] difficult (# of attempts___): _____; action taken: _____

**Complication(s)**: [x_] none [_] dyspnea [_] parasthesia (distribution:____) [_] bleeding [_] other:__

**Success**: [x] complete  [_] partial  [_] failed  [_] aborted  [_] full evaluation pending

**Post Vitals**: **BP**: 127/81  **HR**: 73  **SaO2**: 99%

The procedure was performed by S. Oswald/ P. Espalson. The Attending Anesthesiologist who medically directed and was present for entire procedure is Dr. Babb.


**Completed Action List:**
* Perform by Oswald MD, Sarah on February 25, 2008 1:58 PM
* Sign by Oswald MD, Sarah on February 25, 2008 1:58 PM
* VERIFY by Oswald MD, Sarah on February 25, 2008 1:58 PM

* Final Report *

Result Type:       Surgicenter Documents
Result Date:       February 25, 2008 5:00 PM
Result Status:     Auth (Verified)
Encounter Info:    80350449-0385, UICMC, SURGI-CENTER,  - 2/25/2008

## * Final Report *

* Final Report *

Result Type:            Orthopedic Note
Result Date:            January 15, 2008 12:00 AM
Result Status:          Auth (Verified)
Result Title:           Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.
Performed By:           Barmada PA, Owen on January 15, 2008 4:06 PM
Verified By:            Barmada PA, Owen on January 16, 2008 10:36 AM
Encounter info:         80350449-0383, UICMC. OUTPATIENT,  - 1/15/2008

## * Final Report *

### Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.
University of Illinois Medical Center at Chicago

CLINIC NOTE            Patient: THOMAS, ROBERT

DICT: OWEN BARMADA, P.A.    MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 01/15/2008

DATE OF BIRTH: 04/02/1950

This patient is a 57-year-old inmate at Stateville. He is status post Hunter
I procedure of the FDP tendon in the right ring finger. This was performed on
November 5, 2007. He is here to schedule the second procedure. Patient
reports to me doing well. He has been in the clamdigger splint and has been
working on range of motion.

Today on examination, the patient is alert and oriented. He does not appear
to be in any acute distress. He rates his pain as 0 out of 10. Surgical
scars are clean, dry, and intact without any signs of any infection. He is
neurovascularly intact distally. He has got good range of motion in the PIP
joint but limited in the DIP joint. At this time, we want him to remove the
clamdigger and start working on passive range of motion at the DIP joint. We
took some pictures under fluoroscopy to see where the rod is. It is still in
place and intact. We have tentatively placed him on a schedule for a Hunter
II procedure of the FDP tendon in the right ring finger. This is scheduled
for February 25, 2008. Surgical packet was completed today. History and
physical was performed and consent was signed. Of note, the patient does
suffer from hypertension as well as hepatitis C.

The patient did voice an understanding of the current treatment plan, and this
patient was seen with Dr. Boonmee Chunprapaph who agrees with the above
assessment and plan.

* Final Report *

DD: 01/15/2008
DT: 01/16/2008
OB/cym
JOB:680417

1

**Completed Action List:**
* Perform by Barmada PA, Owen on January 15, 2008 4:06 PM
* Transcribe by  on January 16, 2008 5:27 AM
* Sign by Barmada PA, Owen on January 16, 2008 10:36 AM  January 16, 2008 10:36 AM
* VERIFY by Barmada PA, Owen on January 16, 2008 10:36 AM

56

* Final Report *

Result Type:        Orthopedic Note
Result Date:        January 15, 2008 5:19 PM
Result Status:      Modified
Result Title:       Surgery Plan
Performed By:       Howard RN, Vanessa on January 15, 2008 5:22 PM
Verified By:        Howard RN, Vanessa on January 15, 2008 5:22 PM
Encounter info:     80350449-0383, UICMC. OUTPATIENT, - 1/15/2008

# * Final Report *
## Document Contains Addenda

Surgery Plan
Pt to be scheduled for surgery: DOS: 02/25/08  w/Dr.Boonmee
Dx. s/p (R) hand/RF Hunter I  Procedure: (R) hand/RF Hunter II. Pre-op tests: cbc, coags, LFT(s), Ecg.
Pt is an inmate at Stateville IL DOC. No dates or times given to pt or guards.
Surgery plan faxed to Stateville IL DOC, medical & UIC inmate coordinator, B.Harvey.
VHRN.

**Addendum by Howard RN, Vanessa on January 16, 2008 6:38 PM**
IL DOC facility notified to stop asa 1 wk pta/surg.
VHRN.

**Completed Action List:**
* Perform by Howard RN, Vanessa on January 15, 2008 5:22 PM
* Sign by Howard RN, Vanessa on January 15, 2008 5:22 PM
* VERIFY by Howard RN, Vanessa on January 15, 2008 5:22 PM
* Sign by Howard RN, Vanessa on January 15, 2008 6:38 PM
* Modify by Howard RN, Vanessa on January 15, 2008 6:38 PM

^ * Final Report *

| | |
|---|---|
| Result Type: | Orthopedic Note |
| Result Date: | November 20, 2007 12:00 AM |
| Result State: | Modified |
| Result Title: | Orthopedic Note- ATTENDING: Boonmee Chunprapaph, M.D. |
| Performed By: | McFadden MD, James on November 20, 2007 4:59 PM |
| Verified By: | McFadden MD, James on November 21, 2007 6:57 AM |
| Encounter info: | 80350449-0382, UICMC. OUTPATIENT, - 11/20/2007 |

## * Final Report *
## Document Contains Addenda

## Orthopedic Note- ATTENDING: Boonmee Chunprapaph, M.D.
### University of Illinois Medical Center at Chicago

CLINIC NOTE                    Patient: THOMAS, ROBERT

DICT: JAMES MCFADDEN, MD      MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 11/20/2007

DATE OF BIRTH: 04/02/1950

CHIEF COMPLAINT: The patient comes in today 1 week status post right ring
finger flexor digitorum profundus Hunter 1 tendon reconstruction with
synthetic rod.

HISTORY OF PRESENT ILLNESS: The patient states that he has been doing well.
He does not really have any pain. He has tolerated everything well. He has
kept his splint applied. He changed his dressing once when it got a little
bit dirty, but otherwise he had no complaints.

PHYSICAL EXAM: On exam, with all the dressings removed, there does not appear
to be any swelling of the finger. The wound has healed well. The Vicryl
stitch appears to be intact. The patient has full range of motion about the
MCPJ. He does not have any active flexion of the PIPJ or DIPJ, but he does
have passive flexion at this digit. He is neurovascularly intact. The
medial, ulnar, and radial nerves, capillary refill was excellent.

ASSESSMENT: This is a 57-year-old man now 1 week status post Hunter 1 tendon
reconstruction of the right ring finger flexor digitorum profundus. The
patient is stable and doing well.

PLAN: The patient will return to see us in clinic in approximately 3 to 4
weeks' time, we are going to put him back in to a plaster clam-digger splint
and we will have him use passive and active range of motion to allow the IP
joint to flex from their extended posture. Patient agrees with and
understands the treatment plan.

| | |
|---|---|
| Printed by: | Johnson , Christal |
| Printed on: | 4/30/2008 3:37 PM |

* Final Report *

Dr. Boonmee is present for the visit.

DD: 11/20/2007
DT: 11/20/2007
JM/cym
JOB:605478

### Addendum by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM

I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.

Boonmee Chunprapaph, M.D.

**Completed Action List:**
* Perform by McFadden MD, James on November 20, 2007 4:59 PM
* Transcribe by  on November 20, 2007 10:07 PM
* Sign by McFadden MD, James on November 21, 2007 6:57 AM  November 21, 2007 6:57 AM
* VERIFY by McFadden MD, James on November 21, 2007 6:57 AM
* Review by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM  Requested by McFadden MD, James on November 21, 2007 11:53 AM
* Modify by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM
* Sign by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT THOMAS,                    )
                                  )
            Plaintiff,            )
                                  )
vs.                               )      Civil Action No. _____
                                  )
PARTHA GHOSH, M.D., et. al        )
                                  )
            Defendants,           )

NOTICE OF FILING

TO:  Clerk
     U.S. District Court
     219 S. Dearborn Street
     Chicago, Illinois 60604

     PLEASE TAKE NOTICE that on August 8th, 2008, I have caused
to be filed the requisite number of copies and original of my pro
se Complaint, filed pursuant to Title 42, Section 1983 under the
Civil Rights Act, with the Clerk, at the above-mentioned address.
A copy of which is hereby being served upon you.

                              Respectfully submitted,

                              _Robert Thomas_
                              Robert Thomas, plaintiff
                              Register No. N-53969
                              Stateville Correctional Center
                              Post Office Box 112
                              Joliet, Illinois 60434-0112

CERTIFICATE OF SERVICE

     I, ROBERT THOMAS, do hereby certify that I have caused to be
served on the party listed-above copies of the aforementioned
document by placing same in the U.S. Mail through the mailroom
situated at the Stateville Correctional Center on August 8th,
2008, awaiting postage and delivery by State.

                              _Robert Thomas_
                              Robert Thomas, affiant

AFFIRMATION

     I, ROBERT THOMAS, do hereby affirm under the penalties of
perjury that the foregoing is true and correct in the best of my
knowledge and belief.

                              _Robert Thomas_
                              Robert Thomas, affiant

CFS 1800–A–A
Rev 1/2005

State of Illinois
Department of Children and Family Services

## ADOPTION ASSISTANCE
ELIGIBILITY Determination

This form is to be completed by the child's assigned worker and reviewed by the supervisor.

### I.   Identifying Data

Name on Birth Certificate:  Lopez _____  Miguel ____ Angel _____  Birth date:  8/23/06 _____
                            LAST                FIRST     MIDDLE

ID No. F2158408 _____    Race: Hispanic _____  Gender: Male  SS#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 _____

Date Child Came into Care: 8/25/06 _____

Date of Placement with Caregiver: 2/27/07 _____

| Have parental rights been terminated?   (Please check all that apply) | |
|---|---|
| **Mother:** ☒ Yes    ☐ No    If "yes", How? | **Father:** ☒ Yes    ☐ No    If "yes", How? |
| ☒ Involuntary Termination   1/16/08 <br> Date | ☒ Involuntary Termination   1/16/08 <br> Date |
| ☐ Voluntary Surrender   ____ <br> Date | ☐ Voluntary Surrender   ____ <br> Date |
| ☐ Specific Consent   ____ <br> Date | ☐ Specific Consent   ____ <br> Date |
| ☐ Death   ____ <br> Date | ☐ Death   ____ <br> Date |
| ☐ Expedited Adoption   ____ <br> Date | ☐ Expedited Adoption   ____ <br> Date |

### II.   Adoption Assistance Eligibility Factors (Please check all factors that apply)

1.   a)   Is the Department legally responsible for the child?

☒ Yes    ☐ No         County of Jurisdiction  Kankakee _____

If yes, enter date  8/29/06 _____         Juvenile Court Docket Number 06JA46 _____

**WHEN NO, STOP AND USE THE CFS 1800–A–1, ADOPTION ASSISTANCE ELIGIBILITY FOR CHILDREN NOT UNDER THE LEGAL RESPONSIBILITY OF DCFS.**

**Child's Birth Name:** <u>Miguel Angel Lopez</u>

**Adoptive Parents(s) Name:** <u>Leonel and Sylvia Castillo</u>

**Date:** <u>6/6/08</u>

### AND

b)   A court made a finding of probable cause to believe abuse, neglect, or dependency existed at a temporary custody or adjudicatory hearing.

☒ Yes    ☐ No    Date of hearing: <u>8/29/06</u>    County: <u>Kankakee</u>

### OR

c)   The parents voluntarily surrendered the child without a court finding of abuse, neglect, or dependency and the child was in the care and custody of the Department before July 1, 1998.

☐ Yes    ☒ No

### AND

d)   The Department determined the child is likely to suffer further abuse or neglect or will not be adequately cared for if returned to the home of the parents.

☒ Yes    ☐ No

2.   Check all which qualify the child as a special needs child.

☐   Irreversible or non-correctable physical, mental or emotional disability;
☐   Physical, mental or emotional disability correctable through surgery, treatment or other specialized services;
☒   One (1) year of age or older;
☐   Member(s) of a sibling group being adopted together where at least one child meets one or more of the other criteria;
☐   Child being adopted by adoptive parents who have previously adopted, with adoption assistance, another child(ren) born of the same mother or father.

---

### IF NONE OF THE BOXES IN #2 ABOVE ARE CHECKED, THE CHILD IS NOT ELIGIBLE FOR ADOPTION ASSISTANCE.

---

3.   a)  ☐ Efforts were made to place the child without a subsidy.  Please check all that apply:

☐   Listing with an adoption exchange;
☐   Searching of adoptive placement resources;
☐   Checking waiting lists of adoptive parents;
☐   Asking if prospective adoptive parents are willing to adopt without a subsidy; as evidenced by a written statement;
☐   Other, please specify._____

b)  ☐ Efforts to place the child without a subsidy were unsuccessful.

c)  ☒ Efforts were **not** made to place child without a subsidy because it is against the best interests of the child since there is significant emotional attachment to prospective adoptive parents due to their being relatives, friends of the family, or developed while in their care as foster parents.

---

### IF THE ANSWERS TO II. #1, (a) AND (b) or (c) AND (d) ARE YES, AND AT LEAST ONE BOX IS CHECKED IN #2 AND #3, THE CHILD IS ELIGIBLE FOR ADOPTION ASSISTANCE.

---

CFS ?800-Λ-A
Rev 1/2005

**Child's Birth Name:** Miguel Angel Lopez

**Adoptive Parents(s) Name:** Leonel and Sylvia Castillo

**Date:** 6/6/08

4. **The child is eligible for Adoption Assistance**     ☒ Yes     ☐ No

_____
Signature of Worker Completing the Form

Catholic Charities
_____
Agency

___/___/___
Date

Kathleen Fox
_____
Print Name of Worker Completing the Form

_____
Signature of Supervisor

Catholic Charities
_____
Agency

___/___/___
Date

Joberta Johnson
_____
Print Name of Supervisor

_____
Signature of DCFS Adoption Supervisor/Coordinator

Cook
_____
Region

___/___/___
Date

Johnikutty Joseph
_____
Print Name of DCFS Adoption Supervisor/Coordinator

CFS 1800–A–A
Rev 1/2005

**Child's Birth Name:** Miguel Angel Lopez

**Adoptive Parents(s) Name:** Leonel and Sylvia Castillo

**Date:** 6/6/08

4.  **The child is eligible for Adoption Assistance**     ☒ Yes     ☐ No

_Kettlea Fx_
Signature of Worker Completing the Form

Catholic Charities of Joliet
Agency

8, 7, 08
Date

Kathleen Fox
Print Name of Worker Completing the Form

_Joberta Johnson Woman_
Signature of Supervisor

Agency

8/7/08
Date

Joberta Johnson
Print Name of Supervisor

Signature of DCFS Adoption Supervisor/Coordinator

Cook
Region

/ /
Date

~~Don Vasioh~~ John kutty Joseph
Print Name of DCFS Adoption Supervisor/Coordinator

Department of Children and Family Services

## ADOPTION ASSISTANCE
## APPLICATION

### (SECTION I TO BE COMPLETED BY THE WORKER)

> **If you do not wish to apply for adoption assistance, complete Sections I, II and III.**
>
> **If you wish to apply for adoption assistance complete Sections I, II and IV.**

## I.   ADOPTIVE PARENT AND CHILD INFORMATION

Leonel Castillo                                                    815-806-8715
Adoptive Parent                                                   Home Telephone Number

Sylvia Castillo
Adoptive Parent

22066  Heritage Dr.                          Frankfort    IL    60423
Address                                      City         State  Zip

Miguel Angel Lopez                                              8/23/06
Child's Name                                                    Date of Birth

## II.   INFORMATION REGARDING ADOPTION ASSISTANCE

Following is information regarding the availability of adoption assistance for the child you are planning to adopt.  Please indicate the types of adoption assistance for which you wish to apply.

1.   Nonrecurring Expenses for Adoption Assistance

One-time only payment for expenses incurred during and related to the adoption process.  Eligible expenses include but are not limited to reasonable and necessary adoption fees, court costs, attorney fees, guardian *ad litem* fees, travel expenses related to pre-placement visits, health and psychological examinations and other costs associated with the legal adoption of a special needs child subject to the maximum set by the Department of $1,500 per adopted child.

A)   Families who wish to apply for reimbursement for nonrecurring adoption expenses shall submit the CFS 1800–B–A, Application to the appropriate Adoption Coordinator/Supervisor.

B)   Approval shall not be given for any part of nonrecurring adoption expenses that are paid or reimbursed through another state or federal program.

CFS 1800–B–A
Rev 8/2005

Child's Name: <u>Miguel Angel Lopez</u>

Adoptive Parent(s) Name: <u>Leonel and Sylvia Castillo</u>

Date: <u>6/6/08</u>

C)  Following DCFS approval to pay or reimburse non-recurring expenses, the worker shall send the CFS 1800–C–A to the family for signature.

D)  Adoptive parents sign the CFS 1800–D Direct Payment to the Attorney to authorize direct payment to the attorney handling the adoption if the attorney is a member of the Statewide Adoption Attorney Panel. If the attorney is not a member of the Statewide Adoption Attorney Panel, the adoptive parent(s) is responsible for paying the legal fees. The adoptive parent(s) may be reimbursed for legal fees upon submitting an invoice indicating that fees were paid in full and a copy of the Judgment Order for Adoption.

☒ I request this assistance.        ☐ I **do not** request this assistance.

2.  Monthly Cash Payment

The amount of the monthly cash payment is determined in accordance with DCFS Rules and Procedures 302.310 and shall not exceed the amount the child receives in their current foster family home unless the child is in an unlicensed relative placement. In such a case, upon adoption finalization, the adoptive family may receive up to the applicable DCFS rate for licensed foster family homes.

☒ I request this assistance.        ☐ I **do not** request this assistance.

3.  A Medicaid Card

A Medicaid card will be issued for the child upon completion of the adoption. This card shall be used for all Medicaid-eligible services obtained through Medicaid-enrolled provider(s) that are not payable through your health insurance or through other public resources. If there is not a Medicaid enrolled provider within 25 miles of the child's home, services may be obtained from a provider who does not participate in the Illinois Medicaid Program. If the adoptive parent(s), who now reside in Illinois, move to another state in the future, the change in residency may affect their ability to receive a Medicaid card in that state for their child as Medicaid eligibility requirements vary from state to state. When a family moves out of state and the new state will not provide Medicaid coverage, Illinois will reimburse the adoptive family at the Illinois Medicaid rate for eligible services. If an out-of-state medical provider participates in the Illinois Medicaid program, the provider will bill the Illinois Medicaid program.

☒ I request this assistance.        ☐ I **do not** request this assistance.

Child's Name: <u>Miguel Angel Lopez</u>

Adoptive Parent(s) Name: <u>Leonel and Angel Lopez</u>

Date: <u>6/6/08</u>

4. Payment for Other Approved Services

    **a)**    **Needs Not Payable Through Other Sources**

This payment is for allowable physical, emotional and mental health needs not payable through insurance or public resources that are associated with a pre-existing condition documented on the CFS 1800–B–A Application for Adoption Assistance prior to the finalization of the adoption. Payment cannot be made until the Department has been notified in writing that such services will begin, has approved the requested services and a contract (when applicable) with the identified vendor is in place. The Department's reimbursement will be limited to what is usual, customary, and reasonable in the community as determined by the Department.

The child is currently receiving the following services that will be continued upon the finalization of the adoption. (Add additional pages if necessary)

| Service | Current Provider |
|---|---|
| | |
| | |
| | |
| | |
| | |

☐ I request this assistance.     ☒ I **do not** request this assistance.

This child may require services not currently being provided for pre-existing physical, emotional or mental health needs. These pre-existing conditions must be properly documented in the CFS 1800–C–A before the finalization of the adoption to be eligible for payment or reimbursement through the Adoption Assistance Program at a later date. To receive payment or reimbursement for services the child later requires, the adoptive parent(s) must complete the CFS 1800-F at the time the need is identified and submit it to the subsidy worker.

The child may require the following medical and/or clinical service in the future. List such services that have been documented by a licensed medical professional or qualified mental health practitioner below: (Add additional pages if necessary)

☐ I request this assistance.     ☒ I **do not** request this assistance.

CFS 1800–B–A
Rev 8/2005

Child's Name: <u>Leonel and Sylvia Castillo</u>

Adoptive Parent(s) Name: <u>Leonel and Sylvia Castillo</u>

Date: <u>6/6/08</u>

**b)    Therapeutic Day Care**

Therapeutic day care provides services to children who cannot be served in traditional childcare services or other childhood programs because of their inability to participate in such programs and because of the intensity of the services they require as a result of their physical, mental or emotional disabilities.

Payment will be made for therapeutic day care only for those children who are determined to have a disability, which requires special educational services through a current, Individual Education Plan (IEP), an Individual Family Services Plan (IFSP), or a 504 Educational Special Needs Plan updated on at least an annual basis, when such day care is not payable through another source. In order for payment to be made, the worker must obtain a copy of the current IEP or IFSP or 504 Educational Special Needs Plan.

i.    Payment may be made for therapeutic day care that provides therapeutic intervention rather than only regular childcare services. The day care must include treatment of a disability or a disease as an integral part of the programming (i.e., speech, physical or occupational therapy, behavior modification, psychological or psychiatric services).

ii.    Approval of payment for therapeutic day care requires documentation of the child's specific physical, mental or emotional disability and the special training, licensing or credentialing of the individual providing the therapeutic day care.

iii.    Payment for therapeutic day care cannot be made until the Department has been notified that such services will begin, has approved the requested services, and a contract with the identified vendor is in place (when applicable).

iv.    The Department's reimbursement will be limited to what is usual, customary, and reasonable in the community as determined by the Department.

☐ I request this assistance.          ☒ I **do not** request this assistance.

**c)    Employment Related Day Care for Children Under Age 3**

Adoptive parent(s) receiving assistance for a child under three years of age are eligible for payment of day care services for that child, if day care is required due to one of the following. (Check the appropriate box below).

i.    ☒    The parent(s) employment or participation in a training program will lead to employment.

ii.    ☐    A single adoptive parent is employed or both parents in a two parent adoptive home are either working or in a training program.

iii.    ☐    One parent works and the other parent is unable to care for the child due to a disability.

☒ I request this assistance.          ☐ I **do not** request this assistance.

**Child's Name:** Miguel Angel Lopez

**Adoptive Parent(s) Name:** Leonel and Sylvia Castillo

**Date:** 6/6/08

### d)   Care for Medically Fragile/Technology Dependent Children

Payment may be made for care for a child the Department determines to meet certain conditions. Such payment is not to exceed ten (10) days of respite care per state fiscal year. Unused days cannot be carried over to a new fiscal year or donated to another family. The child must meet the medical eligibility guidelines used by the Department of Public Aid (DPA) for the Home and Community Based Services (HCBS) Waiver program for Children who are Medically Fragile/Technology Dependent. This program is operated by the Division of Specialized Care for Children (DSCC) for DPA. DCFS regional nurses will assist in making this determination.

The care must be provided by an authorized provider. An authorized provider must be licensed by the Department of Public Health as a children's respite care center under the Alternative Health Care Delivery Act; and accept the Medicaid nursing hourly rate as the payment rate for the care. DCFS will select and contract directly with the authorized provider to pay for this service.

The adoptive parent must apply for the DSCC program. As part of this application process, medical eligibility and cost neutrality calculations would be determined. If determined eligible, the adoptive parent must agree to accept DSCC services, and the care would be provided through DSCC (if care were available as part of the service package resulting from these determinations and there is available capacity in the waiver program).

☐ I request this assistance.        ☒ I **do not** request this assistance.

## III.  REFUSAL OF ASSISTANCE

The adoption assistance program has been explained to me/us, and I/we understand that benefits are available to the eligible child. However, I/we do not want to apply for any component of adoption assistance benefits or services as detailed in Section II of this document.

**I/We understand that as a result of this refusal, we will not be able to apply for or receive any of the benefits or services available under the Adoption Assistance program after the finalization of the adoption.**

_____        _____
Adoptive Parent                                                    Date

_____        _____
Adoptive Parent                                                    Date

Child's Name: <u>Miguel Angel Lopez</u>

Adoptive Parent(s) Name: <u>Leonel and Sylvia Castillo</u>

Date: <u>6/6/08</u>

## IV.  ACKNOWLEDGEMENT

I/We, the undersigned, hereby apply for adoption assistance from the Illinois Department of Children and Family Services (DCFS).

1.   I/We understand that health-related adoption assistance payments cannot be made if my/our health insurance coverage or community resources, including DPA Medicaid, can appropriately meet the child's health-related needs

2.   I/We understand that the Department cannot pay for health insurance deductibles or make co-payments for medical services, nor supplement health related payments made by health insurance or DPA Medicaid.

Information to be provided by adoptive parent(s)

☐ Check box if child will be insured by the family's health insurance provider.

Name of Company _____    Policy number _____

3.   I/We understand that after the child's adoption, I/we must apply for such financial benefits to which the child may be entitled (such as Supplementary Security Income or Veterans benefits).

The child is presently eligible for:

| Benefit | Amount | Verified by | Date |
|---|---|---|---|
| ☐ Social Security Benefits | | | |
| ☐ Veterans Benefits | | | |
| ☐ Other (specify): | | | |
| ☐ MANG (Not IV-E eligible) | | | |
| ☒ AFDC-FC (IV-E eligible) (98-211) | -0- | Marcy Jackson | 6/5/08 |

Any benefits the child currently receives may be affected by assistance through the Adoption Assistance programs.

4.   I/we are unable to adopt the child without assistance.

Child's Name: <u>Miguel Angel Lopez</u>

Adoptive Parent(s) Name: <u>Leonel and Sylvia Lopez</u>

Date: <u>6/6/08</u>

5. I/We understand that the following information is necessary for the Department to meet the reporting requirements of the Adoption and Foster Care Analysis and Reporting System (AFCARS) mandated by Section 479 and 1123A of the Social Security Act.

Adoptive Mother Information

Date of Birth: <u>3/22/68</u>

Adoptive Father Information

Date of Birth: <u>9/29/67</u>

Check all that apply:

RACE:
☐ Black or African American
☐ White
☐ American Indian/Alaskan Native
☐ Asian
☐ Native Hawaiian or Other Pacific Islander
☐ Undetermined

Check all that apply.

RACE:
☐ Black or African American
☐ White
☐ American Indian/Alaskan Native
☐ Asian
☐ Native Hawaiian or Other Pacific Islander
☐ Undetermined

Hispanic Origin (Y/N): <u>Yes</u>

Hispanic Origin (Y/N): **Yes**

MARITAL STATUS:    ☒ Married    ☐ Single Mother    ☐ Single Father

6. I/We understand that I/We may appeal the determination of DCFS regarding this application in accordance with 89 Ill. Adm. Code Part 337, Service Appeal Process.

Adoptive parent(s) may appeal the Department's decisions regarding payment for adoption assistance in accordance with 89 Ill. Adm. Code, Part 337, Service Appeal Process.

Decisions or actions made by the Department are appealed after the adoptive parent(s) has received notice of the decision or action. Any written notices from the Department will provide specific information about the appeal rights of adoptive parents, guardians and foster parents.

To appeal a decision or action made by the Department, a written request for a service appeal is submitted to:

Administrative Hearings Unit
Department of Children and Family Services
406 E. Monroe, Station 15
Springfield, IL 62701
217.782-6655

7. I/We have read and understand the application.

_____
Adoptive Parent

326 - 60 - 7906
SS#

_____
Adoptive Parent

358 - 54 - 9800
SS#

CFS 1800–B–A
Rev 8/2005

6-23-08

.Date

CFS 1800-C-A
Rev 8/2005

State of Illinois
Department of Children and Family Services

## ADOPTION ASSISTANCE
## AGREEMENT

The following agreement has been entered into by and between the Department of Children and Family Services, hereinafter called "the Department," and _____

Leonel and Sylvia Castillo _____
Name of Adoptive Parent(s)

22066 Heritage Dr. Frankfort, IL 60423 _____
Home Address

_____
Mailing Address (if different than above)

hereinafter called the "adoptive parent(s)" for the purpose of facilitating the legal adoption of

Andrew Scott Castillo _____        08 / 23 / 06
Child's Name (Proposed adoptive name)                     Date of Birth

Child is IV-E Eligible   ☒ Yes   ☐ No

If yes, write eligibility number: 98-211-01-F2158408 _____

I.    **LEGAL BASE**

The Children and Family Services Act [20 ILCS 505/5(j)] provides the statutory authority for adoption assistance. Department Rules and Procedures 302.310, Adoption Assistance, promulgated pursuant to the above statute, govern the provision of adoption assistance by the Department.

II.   **GENERAL PROVISIONS**

Following the adoption finalization:

1.    This agreement may not be amended, suspended, or terminated except by mutual agreement in writing.

2.    While payment may be increased based on changes in the needs of the child, payments will not be decreased based on changes in the needs of the child.  All modifications/amendments to this agreement require documentation that the mental, emotional and/or physical condition or risk factors existed prior to the finalization of adoption.

3.    This agreement shall remain in place regardless of the place of residence of the adoptive parent(s) and the child.  However, if the adoptive parent(s), who now reside in Illinois, move to another state in the future, the change in residence may affect their ability to receive a Medicaid card in that state for their child as eligibility requirements differ from state to state. If the child is not eligible for Medicaid coverage in a different state, Illinois will reimburse the adoptive parents at Illinois Medicaid reimbursement rates for eligible services.  In the event that the out-of-state medical provider participates in the Illinois Medicaid program, the provider will bill the Illinois Medicaid program for medical expenses.

CFS 1800-C-A
Rev 8/2005

Child's Name: Miguel Angel Lopez

Adoptive Parent(s) Name: Leonel and Sylvia Castillo

Date: 6/6/08

4.  This agreement cannot be transferred by the adoptive parent(s) to any other party. However, in the event of the death of the adoptive parent(s) or termination of their parental rights, the child remains eligible for assistance in a subsequent adoption or legal guardianship. The new subsidy agreement must be approved by the Department prior to the Judgment Order of Adoption.

    The successor adoptive parent(s) or potential guardian(s) must contact the DCFS Adoption Coordinator / Supervisor identified in Section XII of this agreement.

5.  An ongoing monthly payment can be issued only to the adoptive parent identified as payee in Section V. b) of this agreement and this person will be the designated authority for the purpose of service provision. In the event that there is a change in the custodial status of the child, the Department must be notified. If a change in payee is necessary, notification must be sent to the Department in writing with the supporting legal documentation attached. A non-custodial parent may request notice in writing of reviews or subsequent amendments to the agreement regarding their child(ren).

## III.  OBLIGATIONS OF THE ADOPTIVE PARENT(S)

The following are obligations of the adoptive parent(s). Failure to comply with these obligations may result in suspension or termination of the Medicaid Card and the subsidy.

1.  The Department is required to conduct reviews to confirm that the adoptive parent(s) remains legally and financially responsible for the child, in part, to re-certify the child's eligibility for Medicaid benefits. Written notice will be sent annually to the adoptive parent(s) along with a form that must be completed and returned to the Department.

2.  The adoptive parent(s) agrees to notify their DCFS Post Adoption Subsidy worker no later than 30 days after the following occurrences:

    a)  When the child is no longer the legal responsibility of the adoptive parent(s);

    b)  When the adoptive parent(s) no longer financially supports the child;

    c)  When the child graduates from high school or equivalent;

    d)  When there is a change of residential address or mailing address of the adoptive parent(s) or the child;

    e)  When the child becomes an emancipated minor;

    f)  When the child marries;

    g)  When the child enlists in the military;

    h)  When the custodial status of the child changes;

    i)  When the child dies.

CFS 1800-C-A
Rev 8/2005

Child's Name: <u>Miguel Angel Lopez</u>

Adoptive Parent(s) Name: <u>Leonel and Sylvia Castillo</u>

Date: <u>6/6/08</u>

## IV.    OBLIGATIONS OF THE DEPARTMENT

The Department agrees to pay for services resulting from any pre-existing psychological, medical, emotional or physically handicapping condition at the rate that is customary and usual in the adoptive parents' community, if not covered by the Medicaid card or other public resources.

This child may require services not currently being provided for pre-existing physical, emotional or mental health needs or risk factors. Such pre-existing conditions must be described in the CFS 1800–C–A to be eligible for assistance through the Adoption Assistance Program at a future date. Assistance cannot be granted for services for pre-existing conditions if the condition(s) is not listed on the CFS 1800–C–A.

In this section, documentation must be provided regarding why the child and all other siblings, if known, came into care, as well as all known mental health, medical, and substance abuse histories of the biological parents (include additional pages as necessary).

Documentation of the child's unique physical, mental, or emotional conditions must be provided. Attached records relating to the history, medical, physical or mental condition of the child are considered part of this agreement. All of the child's pre-existing conditions must be identified, including what physical, emotional and mental health services the child is receiving and will continue to receive and specify frequency and duration, the start date and anticipated end date. If there is no information to provide, state the reason.

Specifically, complete the following:

1)    Why the child's case came into the system;

<u>This case came to the attention of DCFS when an investigation found that the minor's birth mother had delivered a baby boy on August 23, 2006 who was born positive for cocaine. The birth mother tested positive for cocaine and benzoids and admitted to using as recently as August 22, 2006. There was no prenatal care. The birthmother stated that she intended to allow the infant to be adopted, but had not made any arrangements to do so prior to his birth. She admitted that she could not care for the infant. The doctor who delivered the child reported that the birth mother was unsafe and could not parent her child at this time. This report was indicated due to an immediate or continuing threat to the child's well being. As a result of this DCFS investigation, Protective Custody of the minor, Miguel Lopez was granted on August 25, 2006. Temporary Custody of the minor was granted to DCFS on August 29, 2006.</u>

2)    Why the child's siblings came into the system, if known;

<u>None of Miguel's siblings were taken into care at the time that he was. Because of the birth mother's lack of contact with the agency, nothing is known about Migul's siblings other than names provided by the mother's cousin who was the initial relative caregiver.</u>

CFS 1800-C-A
Rev 8/2005

3)  Information as to the existence of any other children born to the birth parent(s), including birth dates and genders:

There is no information as to the specific birth date for each child. There is information as to the gender of each child and their ages as of 7/23/07. This information is as follows:

Male, 22yrs., Male 18 years, Male 17 years, Male 15 years, Female 8 or 9 years, Male 11 years, Male, 4 years, Male, 5 years.

**Child's Name:** Miguel Angel Lopez

**Adoptive Parent(s) Name:** Leonel and Sylvia Castillo

**Date:** 6/6/08

4)   The reason(s) the child was unable to return to his/her birth family;

The minor's mother and father failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare and did not engage in services. Their parental rights were terminated in Kankakee County Court on 1/16/08.

5)   Dates of all placements, whether the caregiver was a relative or non-relative, residential placements, and reasons for moves;

Miguel was initially placed in the relative foster home of his 2nd cousin from 8/25/06 until 2/27/07 when he was placed in his current traditional licensed foster home after the relative placement failed. He has remained in this placement since that time and he has thrived in this placement.

6)   Mental health treatment history of the child, if known. Attach copy of diagnoses, including assessment reports.

This child has not had any mental health treatment.

7)   Substance abuse history of the immediate family, including birth parents, siblings and grandparents. Do not include identifying information.

Minor's birthmother has a history of substance and alcohol abuse. No information is known regarding the birthfather as he has never been involved in the case.

8)   Physical disabilities, prior injuries, diagnosed medical conditions, including dates of diagnoses & hospitalizations, medication history, genetic history. Attach supporting documentation of diagnoses.

When Miguel was born he tested positive for cocaine and his mother also tested positive for cocaine and benzoids and admitted to using drugs up until 8/22/06. She did not receive prenatal care. Miguel exhibitied reflux and a slant board as well as a change in formula was prescribed for him. Miguel also had surgery on 11/30/06 for an Inguinal Hernia Repair with Hydrocelectomy. He currently has an ear infection for which he is prescribed antibiotics.



CFS 1800-C-A
Rev 8/2005

9) Names of all service/health-care providers, past and present, specifying what services were provided and dates of services;

Miguel was referred to Child and Family Connections for assistance with Gross Motor Development, Communication and Cognitive/Problem Solving Development. He received services sporadically during his initial placemnt. Folowing his placement with his current adoptive family, it was noted by the service providers that Miguel no longer qualified for services due to the care he was receiving from his new foster family. They had provided the needed stimulation and interaction in a nurturing environment and services were discontinued. During the final evaluation done on 4/03/07, it was noted that Miguel had blossomed socially, emotionally and cognitively.

Miguel's pediatrician is Dr. Jain at Heges Clinic located in Frankfort, IL. His most recent well child exam was on 11/30/07. He was found to be healthy and he is current on his immunizations.

CFS 1800-C-A
Rev 8/2005

**Child's Name:** Miguel Angel Lopez

**Adoptive Parent(s) Name:** Leonel and Sylvia Lopez

**Date:** 6/6/07

10) Behavioral problems - both past and present;

The child does not exhibit any behavioral problems.

11) Physical abuse experiences of which the child was the victim, if known;

Miguel has not experienced physical abuse.

12) Sexual abuse incident(s) in which the child was the victim or the perpetrator, if known;

Miguel has not been the victim or perpetrator of sexual abuse.

13) Neglect experiences in which the child was the victim, if known;

Miguel tested positive for cocaine at birth and his mother also tested positive for cocaine and benzoids and she admitted to using drugs as recently as the day previous to his birth.  She also did not receive prenatal care.

14) Educational issues: names of schools attended, dates of Individual Education Plans (IEP) and/or Individual Family Service Plans (IFSP) or 504 Educational Special Needs Plan (attach IEPs or IFSPs or 504 Educational Special Needs Plan if applicable);

Child is not of school age.

15) Assessments and/or diagnoses of any learning disorders;

No learning disorders have been diagnosed.

CFS 1800-C-A
Rev 8/2005

Child's Name: Miguel Angel Lopez

Adoptive Parent(s) Name: Leonel and Sylvia Castillo

Date: 6/6/08

16) Special services provided in the school, now or in the past;

Child is not of school age..

17) Separation and loss issues;

This child may experience separation and loss issues due to being separated from his birth parents and siblings.

18) Other pre-existing health and mental health conditions of immediate family, including parents, siblings and grandparents. Do not include identifying information;

No information is known regarding pre-existing health and mental health conditions of the family. The birth mother was not cooperative with services so no information is known. The birth father also was not cooperative so no information is known about him.

19) Additional information regarding the child and immediate family member. Do not include identifying information;

The child has eight siblings who are not placed with their birth mother. They have been adopted by family members.

20) List all of the therapy, counseling or other services that the child is currently receiving including the name of the provider, service type and frequency of treatment.

The minor is not currently receiving any type of services.

21) List all of the documents that have been attached to this agreement including the name of the treatment or service provider, date of report or service, and the type of service.

Physical Therapy Evaluation dated 12/14/06 from BZ Kids, Inc.

Re-evaluation Report dated 4/3/07 from BZ Kids, Inc.

History and Physical Examination report dated 12/5/06 regarding the minor requiring a left inguinal repair with hydrocelectomy. This surgery was performed on 12/6/06.

CFS 1800-C-A
Rev 8/2005

CFS 1800-C-A
Rev 8/2005

**Child's Name:** Miguel Angel Lopez

**Adoptive Parent(s) Name:** Leonel and Sylvia Castillo

**Date:** 6.6.08

## V.  SERVICES PROVIDED UNDER THE AGREEMENT FOR ASSISTANCE

The Department shall provide assistance for the approved services as listed below upon finalization of the adoption. Services being provided to the child at the time of the agreement will continue with the same provider and are allowable when the services are described in section d) Needs Not Payable Through Other Sources (below).

### a)  Nonrecurring Adoption Assistance Expenses

One-time only payment for expenses incurred during and related to the adoption process.  Eligible expenses include but are not limited to reasonable and necessary adoption fees, court costs, attorney fees, guardian *ad litem* fees, travel expenses related to pre-placement visits, health and psychological examinations and other costs associated with the legal adoption of a special needs child subject to the maximum set by the Department of $1,500 per adopted child.

Specify expenses other than legal fees and court costs.

| | |
|---|---|
| Legal expenses not to exceed $1500 | $1,500 |
| Attorney Dennis Baron, 200 East Court St., Kankakee, IL 60901 | $ |
| | $ |
| | $ |

*Nonrecurring Expenses are approved for reimbursement through this agreement:*

☒ Yes          ☐ No

### b)  Monthly Cash Payment

The monthly cash payment shall not exceed the amount the child receives in the current foster family home unless the child is in an unlicensed relative placement.  In such a case, upon adoption finalization the adoptive parent(s) may receive up to the applicable DCFS rate for licensed foster family home rate.

Direct monthly payments to, Leonel Castillo _____ at the rate of

Name of Payee

$380.00 _____ per month.

*The Department has approved monthly cash payments as a part of this agreement:*

☒ Yes          ☐ No

### c)  Medicaid Card

In no event can the Department make supplemental payments, pay for deductibles or make co-payments for medical services.

1)  When the child and family live in Illinois, medical benefits are provided under Title XIX of the Social Security Act (Medicaid).  Medicaid pays for eligible services not covered by medical insurance (if the child has been added to a medical insurance policy).  If there is not a service provider who participates in the Illinois Medicaid program within 25 miles of the child's home, a non-participating provider may be used.  Adoptive parent(s) will be reimbursed for eligible services.

CFS 1800-C-A
Rev 8/2005

**Child's Name:** Miguel Angel Lopez

**Adoptive Parent(s) Name:** Leonel and Sylvia Castillo

**Date:** 6/6/08

2) When a family moves out of state and the new state will not provide Medicaid coverage, Illinois will reimburse the family at Illinois Medicaid reimbursement rates for eligible services.

3) In the event the family lives in another state and a medical provider participates in the Illinois Medicaid program, the provider will bill the Illinois Medicaid program for medical expenses.

*A Medicaid Card is a part of this agreement:*

☒ Yes          ☐ No

**d)   Needs Not Payable Through Other Sources**

1) Payment for physical, emotional and mental health services cannot be made until the Department has been notified that such services will begin, the Department has approved the requested services, and a contract (when applicable) with the identified vendor is in place.

2) The Department will pay the service provider directly or reimburse the family for Medicaid ineligible services relating to a pre-existing condition, which must be approved by the Department prior to providing services and at a rate negotiated and agreed to regardless of the state in which the child lives.

3) The Department will make direct payments to providers not enrolled in Medicaid. Prior approval from the Department is required.

4) The Department will also make direct payments to the provider or reimburse the family when services from a Medicaid enrolled provider are not available within a twenty-five mile radius of the family's home.

5) Current Services:
The child is currently receiving the following services that will be continued following the finalization of the adoption: (Add additional pages if necessary)

<u>Child is not currently any services.</u>

*The Department has approved payment or reimbursement for the above services that are not payable through other sources for physical, mental or emotional problems or disorders as a part of this agreement:*

☐ Yes          ☒ No

CFS 1800-C-A
Rev 8/2005

Child's Name: <u>Miguel Angel Lopez</u>

Adoptive Parent(s) Name: <u>Leonel and Sylvia Castillo</u>

Date: <u>6/6/08</u>

6)  Future Services:
    Specify each medical and/or clinical service that the child may need in the future and that is being requested as part of this agreement. List all reports, records and correspondence that are attached to the subsidy agreement including documentation from a licensed medical professional or qualified mental health practitioner of the child's diagnosis and related future service needs.

    <u>Minor may require counseling or therapy in the future in order to address separation and loss issues.</u>

    _____

    _____

    _____

*The Department has approved payment or reimbursement for the above services which may be needed in the future if found at the time of need to not be payable through other sources:*

☐ **Yes**            ☒ **No***

***Checking the "No" box at the time of the completion of this form does not preclude the adoptive family from requesting services following the finalization of the adoption through the amendment process as described in Procedure 302.310.**

e)  **Therapeutic Day Care**

    Therapeutic day care provides services to children who cannot be served in traditional childcare settings or other childhood programs because of their inability to participate in such programs and because of the intensity of services they require as a result of their physical, mental or emotional disabilities.

    Payment will be made for therapeutic day care only for those children who are determined to have a disability that requires special educational services through a current, Individual Education Plan (IEP), an Individual Family Services Plan (IFSP), or a 504 Educational Special Needs Plan updated on at least an annual basis, when such day care is not payable through another source. Local school districts are responsible for developing the Individual Education Plan or Individual Family Services Plan for students requiring special education services.

    1)  Payment may be made for specialized care that provides therapeutic intervention rather than only regular childcare services. The day care must include treatment of a disability or a disease as an integral part of the programming (i.e., speech, physical or occupational therapy; behavior modification; psychological or psychiatric services).

    2)  Approval of payment for therapeutic day care requires documentation of the child's specific physical, mental or emotional disability and the special training, licensing or credentialing of the individual providing the therapeutic day care.

    3)  Payment for therapeutic day care cannot be made until the Department has been notified that such services will begin, has approved the requested service, and a contract with the identified vendor is in place (when applicable).

    4)  The Department's reimbursement will be limited to what is usual, customary, and reasonable in the community as determined by the Department.

*The Department has approved payment or reimbursement for therapeutic day care as a part of this agreement:*

☐ **Yes**            ☒ **No**

CFS 1800-C-A
Rev 8/2005

**Child's Name:** Miguel Angel Lopez

**Adoptive Parent(s) Name:** Leonel and Sylvia Castillo

**Date:** 6/6/08

**f)    Employment Related Day Care**

Adoptive parent(s) receiving assistance for a child under three years of age are eligible for payment of day care services for that child, if day care is required due to one of the following.  (Check the appropriate box below).

☒    The adoptive parent(s) is employed or participating in a training program that will lead to employment.

☐    A single adoptive parent is employed or in a training program that will lead to employment or both parents in a two-parent adoptive home are working or in a training program that will lead to employment.

☐    One adoptive parent works and the other adoptive parent is unable to care for the child due to a disability.

*The Department has approved payment or reimbursement for employment-related day care as a part of this agreement:*

☒ Yes                    ☒ No

## VI.   SOCIAL SERVICES

Social services, as provided under Title XX of the Social Security Act shall be available in accordance with the procedures of the state of residence.  Illinois residents may apply at the local Department of Human Services office.

## VII.   REVIEW / RECERTIFICATION

1.    The Department will conduct reviews to determine whether the adoptive parent(s) remains legally and financially responsible for the child.  This review is a necessary step in re-certifying the child's eligibility for Medicaid benefits.

2.    Written notice will be sent annually to the adoptive parent(s) along with a form that must be completed and returned to the Department.  Failure of the adoptive parent(s) to participate in the review process may result in payment suspension or termination of the Medicaid Card and the subsidy.

## VIII.   PAYMENT SUSPENSION

Ongoing monthly payments may be suspended when any of the following come to the attention of the Department:

1.    The adoptive parent(s) is no longer providing any financial support for the child.

2.    The adoptive parent(s) requests that the payments stop.

3.    The child has been moved from the home, with the adoptive parent(s) concurrence and the out of home services are being funded by the Department.

4.    The adoptive parent(s) has failed to participate in the review process by not responding to the annual written notice within the specified timeframe.

Ongoing monthly payments to the adoptive parent(s) will be reinstated when the reason for the payment suspension no longer exists.

CFS 1800-C-A
Rev 8/2005

**Child's Name:** Miguel Angel Lopez

**Adoptive Parent(s) Name:** Leonel and Sylvia Castillo

**Date:** 6/6/08

## IX.  TERMINATION

The Adoption Assistance shall terminate when the Department has determined that one of the following has occurred:

1.  When the terms of the adoption assistance agreement are fulfilled.

2.  The adoptive parent(s) has requested that the payment permanently stop.

3.  The adoptive parent(s) is no longer legally or financially responsible for the child.

4.  The child becomes an emancipated minor.

5.  The child marries.

6.  The child enlists in the military.

7.  A)  The child reaches age 18 and is not in high school or equivalent; or

    B)  The child 18 years of age graduates from high school or equivalent or reaches age 19, whichever occurs first; or

    C)  The child with a physical, mental or emotional disability which affects his/her major life activities, which existed prior to the adoption finalization and which was documented in the assistance agreement, reaches age 21; or

    D)  The child reaches age 21 who prior to the adoption finalization transfer, was determined to be at risk of developing a physical, mental or emotional disability due to environmental, genetic or hereditary factors, which subsequently manifested itself.  The disability affects his/her life activities, and it is documented that it was developed prior to age 18.

8.  The adoptive parent(s) die.

9.  The adoptive parent(s) rights are terminated.

10.  The child dies.

## X.  APPEAL

Adoptive parent(s) may appeal the Department's decision to change or terminate assistance in accordance with 89 Ill. Adm. Code, Part 337, Service Appeal Process.  Decisions that may be appealed include payments for services for the child for whom you are guardian or denial of a request for increased assistance to provide the child with additional services.

Decisions or actions made by the Department are appealed after the adoptive parent has received notice of the decision or action. Any written notices from the Department will provide specific information about the appeal rights of adoptive parents, guardians and foster parents.

To appeal a decision or action made by the Department, a written request for a service appeal is submitted to:

<div align="center">

Administrative Hearings Unit
Department of Children and Family Services
406 E. Monroe, Station 15
Springfield, IL 62701
217.782-6655

</div>

<div align="center">14 of 15</div>

CFS 1800-C-A
Rev 8/2005

Child's Name:  Miguel Angel Lopez

Adoptive Parent(s) Name:  Leonel and Sylvia Castillo

Date:  6/6/08

## XI.  AMENDMENTS

Upon notification by the adoptive parent(s) of a change in the adoptive parent(s) circumstances or the child's needs as set forth in Section IV Obligations of the Department, amendments to the Agreement may be made at times other than at the review.

Following the adoption finalization, the agreement may be amended, suspended or terminated with the mutual agreement of the adoptive parent(s).  Amendments to the agreement must be completed on a CFS 1800-F, Amendment to Agreement for Assistance, and can only be completed by Subsidy Unit staff.  An amendment to increase the ongoing monthly payment may be made only when authorized by the Post Adoption/Guardianship Services Review Committee (PAGSRC).

If it becomes necessary to change a subsidy that has been signed by all parties prior to finalization, a new agreement must be completed, approved and signed.

## XII.  EFFECTIVE DATE

This agreement is effective as of the date the adoption finalization of this child.

The adoptive parent(s) acknowledges receipt of a copy of this agreement at the time of signing this agreement.

SIGNATURES:

_____          6-23-08
Adoptive Parent                                                    Date

_____          6-23-08
Adoptive Parent                                                    Date

**The information contained in this agreement is complete to the best of my knowledge.**

_____          _____
Signature of DCFS Adoption Supervisor/Coordinator          Date

Leslie A. Galloway    Johnikutty Joseph
Print Name of DCFS Adoption Supervisor/Coordinator

**The information contained in this agreement is complete to the best of my knowledge.**

_____
Signature of DCFS or POS Supervisor

Joberta Johnson
Name of DCFS or POS Supervisor

**DCFS Office:**

DCFSCook County
Name

1026 S. Damen Ave.
Street Address

Chicago                    IL        60612
City                          State    ZIP Code

**Worker Preparing the Form:**

Kathleen Fox                                        6/6/08
Name                                                    Date

Catholic Charities of Joliet
Agency

Joberta Johnson
Worker's Supervisor

CFS 1800–D
Rev 1/2005

State of Illinois
Department of Children and Family Services

# DIRECT PAYMENT TO ATTORNEY

Date: 6/9/08

Name of the Child: Miguel Angel Lopez          ID #F2158408

Attorney's Name: Dennis Baron

RE: Adoption Assistance/Subsidized Guardianship

We agree that direct payment will be made by the Department for the following:

1) ☒ **Adoption Assistance**

One-time only payment for reasonable and necessary adoption fees, court costs, attorney fees and other expenses (such as travel for visitation, transportation, etc.) that are directly related to the legal adoption of a child with special needs subject to the maximum set by the Department of $1,500 per adopted child.

2) ☐ **Subsidized Guardianship**

One-time only payment for reasonable and necessary miscellaneous costs, and legal fees related to subsidy review, that are directly related to the transfer of guardianship of a child subject to the maximum set by the Department of $500 per child.

3) ☒ **Attorney Review of the subsidy**

My/Our attorney and/or staff has reviewed to completion with me/us, the subsidy forms including the Eligibility Determination, Application and Agreement.

We understand that direct payment to our attorney for attorney's fees and court costs, will not be made until the court has entered an order of adoption/guardianship and will only be made if the attorney is a member of the DCFS Statewide Adoption Attorney Panel, and that if our attorney is not on the DCFS Panel, the Department will reimburse us after the court has entered an order of adoption/guardianship and we have paid our attorney.

_____     6-23-08
Adoptive Parent/ Guardian                    Date

_____     6-23-08
Adoptive Parent/ Guardian                    Date

_____     6/03/08
Signature of Adoption Attorney              Date

State of Illinois
Department of Children and Family Services

## AFFIDAVIT OF INFORMATION DISCLOSURE FOR ADOPTION

Caseworker's Name  Mary Anne Dowding/Kathy Fox

Child's Name: Miguel Angel Lopez                                    Birthdate: 8/23/06

Termination Date  1/16/08          Termination Type     ☐ Voluntary    ☒ Court Ordered
                                                        ☐ Combination

Placement Date 2/27/07

Foster Home Conversion          ☒ Yes ☐ No

Adoptive Parent(s)  Leonel and Sylvia Castillo

The following reflects all known non-identifying information available to the Department as of this date:

|  |  | YES | NO | N/A | INFO UNKNOWN |
|---|---|:---:|:---:|:---:|:---:|
| 1. | I have provided the family with all available non-identifying information on the child's birth parents as required in AP-5 and the Adoption Act. | ☒ | ☐ | ☐ | ☐ |
| 2. | I have informed the family of the child's relationship with his/her birth family. | ☒ | ☐ | ☐ | ☐ |
| 3. | I have informed the family of any known alcohol/drug addiction the child's birth parents may have had (if the Department has that information). | ☒ | ☐ | ☐ | ☐ |
| 4. | I have given information as to the existence of any other children born to | ☒ | ☐ | ☐ | ☐ |

Birthdates of the children: Birthdates not known

Sex of the children:  Male 22 yrs. Male 18 yrs. Male 17 yrs. Male 15 years. Female 9 years, Male 11 years, Male 4 years, Male 5 Years.

|  |  | YES | NO | N/A | INFO UNKNOWN |
|---|---|:---:|:---:|:---:|:---:|
| 5. | I have provided the reasons and the date the child came into foster care. | ☒ | ☐ | ☐ | ☐ |
| 6. | I have provided information as to the reason the child was unable to return to his/her family of origin. | ☒ | ☐ | ☐ | ☐ |
| 7. | I have provided the number of placements the child has experienced since he/she has been in the care of the Department. | ☒ | ☐ | ☐ | ☐ |
| 8. | I have provided information (as reflected in the Department's case record) regarding the child's: | | | | |

| | YES | NO | N/A | INFO UNKNOWN |
|---|:---:|:---:|:---:|:---:|
| Health History | ☒ | ☐ | ☐ | ☐ |
| School | ☐ | ☐ | ☐ | ☒ |
| Mental Health | ☐ | ☐ | ☐ | ☒ |
| Hospitalization | ☐ | ☐ | ☐ | ☒ |
| Residential Placements | ☐ | ☐ | ☐ | ☒ |

-- over --

DISTRIBUTION:
Original – Case File
Copy – Family

|  | YES | NO | N/A | INFO UNKNOWN |
|---|---|---|---|---|
| Medication History | ☐ | ☐ | ☐ | ☒ |
| Genetic History | ☐ | ☐ | ☐ | ☒ |

9. I have provided information pertaining to any:

| | | YES | NO | N/A | INFO UNKNOWN |
|---|---|---|---|---|---|
| (a) | physical abuse experiences of which the child was the victim (if the Department has that information) | ☐ | ☐ | ☐ | ☒ |
| (b) | sexual abuse experiences of which the child was the victim (if the Department has that information) | ☐ | ☐ | ☐ | ☒ |
| (c) | neglect experiences of which the child was the victim (if the Department has that information) | ☐ | ☐ | ☐ | ☒ |

10. I have given information of any known incident(s) of physical or sexual abuse perpetrated by the child — ☐ ☐ ☐ ☒

11. I have informed the family of any known incident(s) or trauma(s) suffered by the child while in the care of the Department. — ☐ ☐ ☐ ☒

12. I have explained that the child being placed may have undiagnosed mental, physical , or emotional problems. — ☒ ☐ ☐ ☐

13. I have provided available pictures of the child from his/her case record. — ☐ ☒ ☐ ☐

14. In addition to the above, the following non-identifying information has been disclosed to the family regarding the child: — ☒ ☐ ☐ ☐

none _____

_____

_____

15. I have informed the family of available services for which the child may be eligible following the adoption consummation: — ☒ ☐ ☐ ☐

Medical Card _____

Adoption Subsidy _____

_____

I understand that this Affidavit of Disclosure will be placed in the child's case record and will be accessible to the Department or family (upon request) at any time after the child's adoption is completed.

Name of Caseworker Completing Form: Kathy Fox

☐ DCFS    ☒ Private Agency

| | |
|---|---|
| _____  _____ | Kathy Fox _Katl Fox_ |
| Department Caseworker     Date | Private Agency Caseworker     Date |
| | |
| _____  _____ | Joberta Johnson _Joberta Johnson_ |
| Department Supervisor     Date | Private Agency Supervisor     Date |
| _Arnul Castillo_  6-23-08 | _Ofelia Castillo_  6-23-08 |
| Adoptive Father     Date | Adoptive Mother     Date |

Copy of Affidavit was sent to parent on _____
                                         Date

File Date: _AUG 19, 2008_____

Case No: _08 cv 4644_____

ATTACHMENT # _____1_____

EXHIBIT    _____

TAB (DESCRIPTION) _____



CFS 411
Rev 1/2008

Rod R. Blagojevich
Governor

Erwin McEwen
Director

## Illinois Department of Children & Family Services

### IN THE CIRCUIT COURT OF <u>COOK COUNTY</u>

| | |
|---|---|
| **IN THE MATTER OF THE PETITION OF** | ) |
| | ) |
| Leonel Castillo | ) |
| | ) |
| Sylvia Castillo | )   NO. _____ |
| | ) |
| **TO ADOPT** | ) |
| | ) |
| Miguel Angel Castillo | ) |
| | ) |
| _____ | ) |

### REPORT OF INVESTIGATION

To the Honorable Presiding Judge:

**The following information has been secured from our home visits with the adoptive parents and from other contacts, which we have made in the course of our social study of this adoptive family.**

Address: <u>22066 Heritage Dr., Frankfort, IL  60423</u>

Adoptive mother: <u>41</u>      <u>Hispanic</u>   <u>Catholic</u>
                       Age            Race             Religious background, if any

Adoptive father: <u>40</u>      <u>Hispanic</u>   <u>Catholic</u>
                       Age            Race             Religious background, if any

Date and place of marriage: <u>12/21/91- St. Benedict Church,Blue Island, IL</u>

Adoptive child: <u>Miguel Angel Lopez</u>                                 <u>8/23/06</u>
                     Full birth name                                          Date of birth

                     <u>Kankakee, IL</u>                                      <u>Male</u>
                     Place of birth                                           Sex

                     <u>Catholic</u>                                         <u>Hispanic</u>
                     Religious background, if any                             Race

ACCREDITED ● COUNCIL ON ACCREDITATION FOR CHILDREN AND FAMILY SERVICES

Adoptive child:

| | |
|---|---|
| Full birth name | Date of birth |

| | |
|---|---|
| Place of birth | Sex |

| | |
|---|---|
| Religious background, if any | Race |

Adoptive child:

| | |
|---|---|
| Full birth name | Date of birth |

| | |
|---|---|
| Place of birth | Sex |

| | |
|---|---|
| Religious background, if any | Race |

**I.     Child to be named:** Andrew Scott Castillo

**II.     Current Placement**

(For each child being adopted, include a brief summary of how the child came to be placed with this particular adoptive family. Explain what kind of placement this is: licensed relative, unlicensed relative or licensed non-relative.)

Miguel Lopez was born on 8/22/06. His case came to the attention of DCFS when an investigation found that his mother had delivered a baby boy on 8/23/06 who was born testing positive for cocaine. The mother tested positive for cocaine and benzoids and she admitted to using as recently as 8/22/06. There was no prenatal care. Birth mother stated that she intended to allow the infant to be adopted, but had not made any arrangements to do so. She acknowledged that she could not care for the infant. The doctor who delivered the child reported that the birth mother was unsafe and could not parent her child at this time. This report was indicated due to an immediate or continuing threat to the child's well being. As a result of this DCFS investigation, Protective Custody of Miguel Lopez was taken on August 25, 2006. Temporary Custody of Miguel Lopez was granted to DCFS on August 29, 2006. Miguel was initially placed in the home of a relative. He was then placed in traditional foster care with licensed foster parents Sylvia and Leonel Castillo on 2/27/07 after the relative placement failed.

**III.     Adoptive Mother: Current and background information**

(Include family background information; educational information; prior and current employment information including income, length of employment and other means of financial support; information regarding the adoptive parent's character, prior marriages, reputation and general standing in the community; physical description; health information including

medical conditions and medications including any psychotropics and any assessments or treatment for substance abuse or mental health conditions; military history; hobbies, etc.)

Sylvia Castillo was born on March 22, 1968 in Chicago, IL where she was raised by her parents. She is currently 41 years of age. She is 5 ft. 5 in. tall and weighs approximately 155 lbs. She has black hair and eyes and an olive complexion. She is the eldest child and she has two younger brothers who she has a very good relationship with. Sylvia received an associates degree in nursing in 1993 and in 2003 she received a Bachelors degree in health arts from the University of St. Francis. She is currently employed as a staff nurse at the University of Chicago Hospital. She has been employed at this job since 2000. She works Monday thru Friday from 7:00 AM until 2:30 PM and she is usually home by 3:30 in the afternoon. Sylvia's mother Guadalupe or Leonel's mother Maria provides child care for Miguel while she and Leonel are at work. Sylvia is in good health. She denies having any health problems that might interfere in her ability to care for and parent Miguel over time. Sylvia was raised in the Catholic faith and she and Leonel belong to St. Benedict Catholic Church and they attend services on a regular basis. They plan to raise Miguel in the Catholic faith also.

## IV.   Adoptive Father: Current and background information

(Include family background information; educational information; prior and current employment information including income, length of employment and other means of financial support; information regarding the adoptive parent's character, prior marriages, reputation and general standing in the community; physical description; health information including medical conditions and medications including any psychotropics and any assessments or treatment for substance abuse or mental health conditions; military history, hobbies, etc.)

Leonel Castillo was born on September 29, 1967 in Monterrey, MX and he was raised by his parents. He is now 40 years of age. He is 5 ft. 5 in. tall and weighs approximately 185 lbs. He has black hair, brown eyes and an olive complexion. Leonel has a younger brother and sister. Leonel and his family came to the United States in 1968 when he was one year of age. He attended grade school in the United States and then in 1975 his family moved back to Mexico where he attended high school. He eventually graduated from Eisenhower High School in 1985. After he graduated from high school he began working in the construction field with his uncle. Leonel is currently employed as a carpenter for a construction company called Levy Construction located in Northbrook, IL. He works Monday thru Friday and is usually off on the weekends. Leonel is in good health and he does not take any medication. He denies having any health problems that might interfere in his ability to care for Miguel over time. Leonel was raised in the Catholic faith and he and Sylvia belong to St. Benedict Catholic Church and they attend services on a regular basis and they plan to raise Miguel in the Catholic faith also.

## V.   Adoptive Family and Family Home

(Composition of the family: Include information about the composition of the adoptive family, including names, ages and descriptive information about all other children and adults in the home and their relationships to the adoptive parent/s. Include school/education information about other children in the home. Marriage: Include information regarding adoptive parents' marriage. If they are separated, include details regarding the separation: length of separation, whether they have undergone counseling, whether there are plans to reunite or divorce, whether a divorce is in process. If one spouse is no longer in the home, describe his/her degree of ongoing involvement with the child/ren in the home and that spouse's new address. Provide information regarding the effect the couple's separation has had on the child/ren and how their needs have been addressed. House/Apartment/Community: Describe the home and any concerns with its physical structure. Describe the living and sleeping arrangements for the child and family. Describe the community and neighborhood. Health Insurance: Advise the Court as to the health insurance coverage available for the child. Back up Plan: If the adoptive parent/s have a back up plan, include the details for the Court. If the adoptive parent is/are over age 60, details on the adoptive parent's back-up plan must be provided. Further, provide details regarding when the meeting/s took place to discuss the back up plan with the adoptive parent/s and the backup caregiver/s. Include information regarding what type of relationship the child has with the backup caregiver/s and confirm that the backup caregiver is in agreement with the plan.)

Sylvia and Leonel Cstillo do not have biological children and no one else lives in their home accept Miguel Lopez. He has been placed with them since 2/27/07. Sylvia and Leonel Castillo were married on December 21, 1991 at St. Benedict Church. They had dated for two years prior to being married. This is the first marriage for both of them. The Castillo's live in a four bedroom, single family home with an attached three garage. The home is located in an upscale subdivision in Frankfor, IL. On the main floor of the home is located the living room, dining room, den, kitchen and family room. The home's four bedroom are located on the upper level of the home. Miguel has his own bedroom that is very nicely decorated and he has his own crib and there is plenty of storage space for his clothers and many toys. The master bedroom is located on this level and it has an adjoining bathroom. There are two spare bedroom that are used by guests who come to visit. The basement level of the home is not finished. The family has plans to finish this space in the future. The home is clean, well ventilated and more than adequately complies with the licensing standards for foster homes. There are working smoke detectorrs located on each level of the home. The back yard is completley fenced in and there is an above ground pool that has a deck surrounding it and there is a gate that is kept locked for safety. The Castillo home is located in a rapidly growing area. It is located near many school, shopping areas and parks.

The Castillo's plan to continue to have Miguel covered by the Illinois Medical Card and they have chosen to not have him added to their insurance. They plan to name Sylvia Castillo's mother as guardian of Miguel should they become incapacitated or pass away. Her name is Guadalupe Valdez. Her address is 9382 S. Manistee St., Chicago, IL Guadalupe provides child care for Miguel whild Sylvia and Leonel work so he has a very good relationship with her and she loves him very much.

## VI.    Birth Mother

(Do not include the birth parent's last name. Include information about the background of the birth mother. Explain the facts regarding why the child came into care. Indicate the reasons that led the birth mother to place the child for adoption, if applicable. Describe the circumstances surrounding the execution of the surrender or consent signed by mother, or the date of termination of parental rights, if applicable. Tell the Court what information about the biological father the mother gave to the agency. State briefly if the birth mother is still involved in the child's life.)

This case came to the attention of DCFS when an investigation found that the minor's birth mother had delivered a baby boy on 8/23/06 who was born testing positive for cocaine. The birth mother also tested positve for cocaine and benzoids and she admitted to using drugs as recently as 8/22/06. There was no prenatal care. The birthmother stated that she intended to allow the infant to be adopted, but had not made any arrangement todo so prior to his birth. She admitted that she could not care for the infant. The doctor who delivered the child reported that the birth mother was unsafe and could not parent her child at this time. The report was indicated due to an immediate and continuing threat to the child's well being. As a result of this DCFS investigation, Protective Custody of the minor Miguel Lopez was granted on 8/25/06. TX of the minor was granted to DCFS on 8/29/06. Miguel was initially placed in the relative unlicensed home of his 2nd cousin from 8/25/06 until 2/27/07 when he was placed in his current traditional licensed foster home after the relative placement failed where he has remained and he has thrived in this home. Miguel's mother failed to maintain a reasonable degree of interes, concern or responsibility as to the child's welfare and she did not engage in services. The child's father's identity is not known and he never engaged in services. Neither parent participated in the integrated assessment process. Miguels's mother and fathers parental rights were terminated in Kankakee County Court on 1/16/08. Because of the birth mother's lack of contact with the agency, nothing is known about Miguel's eight older siblings other than names provided by the cousin who was Miguel's initial caregiver. Miguel does not have contact with his mother or siblings.

## VII.    Birth Father

(Do not include the birth parent's last name. Include available information about the background of the birth father. State briefly why the child was removed. Indicate the reasons that led the birth father to place the child for adoption, if applicable. Describe the circumstances surrounding the execution of the surrender or consent signed by the father, or the date of termination of parental rights, if applicable. Tell the Court what information regarding the biological mother the father gave to the agency. State briefly if the birth father is still involved in the child's life.)

Miguel's birth father has never been involved in services and his identity is inknown. His parental rights were terminated in Kankakee County Court on 1/16/08.

## VIII.    Adoptee

(Overall Assessment/Personality/Adjustment: Tell the Court about the child; about how the child is doing in the home and in school. Education: Provide the name of the school, what grade the child is in and what grades the child receives. Address the child's attendance record at school, and whether there have been any suspensions or expulsions, if the child is school-age. If the child is in special education and/or has an IEP, IFSP (for children ages 0 – 3) or a 504 Educational Special Needs Plan (for children who require special accommodations), explain what type of classroom setting the child is currently in and how the school is addressing the child's educational needs. Childcare: Include information about childcare arrangements, if applicable, for pre-school and school-age children. Health/Special Needs/Behavioral & Developmental Issues/Services: Include information about any health and/or behavioral problems affecting the child and what services are being provided to address those needs. Juvenile Justice/Delinquency Issues: Include information regarding any history of delinquency, criminal charges or convictions. include any other relevant information concerning the child: developmental, educational, behavioral, etc. Include information on/about any services that were provided in the past. If the child is still in need of assessments or services that are not yet in place, provide information regarding what assessments will be completed, when they will be completed, and what services will be provided, by whom and for what period of time. If there are any outstanding disagreements in relation to the subsidy, specify what the issues are and how they will be resolved. Understanding of Adoption: If child is old enough to understand adoption, indicate whether the child is in agreement with the adoption.)



Miguel Lopez will be two years old on 8/22/08. He is healthy and is developmentally on target and he does not receive any special services. When he was born on 8/23/06, he tested positive for cocaine. His mother tested positive for cocaine and benzoids and she admitted to using drugs up to 8/22/06. She did not receive prenatal care. Miguel exhibited reflux and a slant board as well as a change in formula was prescribed for him. Miguel had surgery on 11/30/06 for an Inguinal Hernia with Hydrocelectomy. Miguel was referre to Child and Family Connections for assistance with Gross Motor Development, Communication and Cognitive/ Problem Solving Development. He received services sporadically during his initial placement. Following his placement with his current foster/adoptive parents, it was noted by the service providers that Miguel no longer qualified for services due to to the care that he was receiving from his foster family. They had provided the needed stimulation and interaction in a nurturing environment and services were discontinued. During the final evaluation completed on 4/30/07, it was noted that Miguel had blossomed socially, emotionally and cognitively. Miguel is now twenty three months old. He will be evaluated for educational services as he nears his third birthday. Miguel is cared for by family members whild Sylvia and Leonel are at work. Since Miguel is only twenty three months old he is still too young to understnd the concept of adoption.

**IX.    Results of criminal background checks on adoptive parents and all adults in home:**

(Summary: Summarize the results of the fingerprint or background check (CANTS & LEADS) for the Court on all adults in the household. If anyone in the home has a criminal background or has been indicated for child abuse/neglect, include information detailing each arrest and conviction and/or finding of abuse/neglect, i.e. the date, charge and disposition of the crime. Convictions: For convictions, when appropriate (after consultation with DCFS Legal), include information regarding the circumstances of the crime based on available records and the individual's account; the date of the background check and where the fingerprints were taken. Explanations/Supporting Information: Explain why adoption is (or is not) recommended despite the criminal background. For example, information may be provided regarding the person's rehabilitation, employment history, ties to the community, membership in civic organizations, and church/religious activities. In some cases, it may be appropriate to consider obtaining letters of character reference that may be attached from employers, community and/or church leaders, etc. Attach 1 copy of each LEADS printout)

Sylvia and Leonel Castillo are licensed Catholic Charities foster parents. An updated CANTS/LEADS background check was completed on them on 4/10/08. Sylvia Castillo's background was clear. Leonel was arrested for a DUI on 8/26/03 when he was 35 years old. He was not convicted of this crime. This was the only time that he has been arrested and this crime occurred three years ago. He was required to attend DUI risk education training. He was also required to attend 20 hours of counseling and he participated in a clinical assessment to determine his risk of reoccurrence. The therapist who assessed Leonel gave him a good prognosis based on the fact that he had changed his lifestyle and has limited his use of alcohol. It does not appear that the nature of this crime would put children at risk and this should not prohibit Leonel with proceeding with the adoption of Miguel.

**X.    Summary of agency's investigative history:**

(Advise the Court about the frequency of home visits made by agency employees; the duration of the agency's supervision; and summarize for the Court what else the agency did in the completion of the investigation.)



This families Catholic Charities licensing representative has made regular six month compliance visits to the home to assess continuing compliance with the licensing standards. The home has been found to remain in compliance with the licensing stnadards for licensed foster homes. Miguel's current caseworker has herself been making monthly home visits with Miguel and his foster/adoptive parents since being placed with them to ensure the well-being and safety of the minor. This adoption worker has had in person contact with the minor and his foster/adoptive parents on 6/5/08 and 7/7/08 for adoption assessment. Telephone contact was also made with the adoptive family on several occasions for adoption assessment purposes. Sylvia and Leonel Castillo completed DCFS Adoption Conversion Training on 11/5/07 and from this training they feel that they have sufficient knowledge of adoption and post adoption services available to her.

**XI. Conclusions and recommendation:**

(Give the conclusion of the agency after the completion of the home study and include a specific recommendation as to whether or not the entry of a final Judgment Order for Adoption is in the best interest of the child. Include specific language regarding whether or not the child has a significant emotional attachment with the adoptive parents and explain why the adoption is recommended.)

Sylvia and Leonel Castillo have demonstrated the ability to effectively parent and meet the needs of Miguel Lopez since his placement in their home on 2/27/07. This is Miguel's second placement since coming into care. Sylvia and Leonel are hard working, family oriented parents. They have provided for all of Miguel's physical and emotional needs and it is obvious that they love him very much. They have been observed to be affectionate, patient and playful with him. It is also obvious that Miguel loves Sylvia and Leonel and they report that he is very comfortable with their extended family and friends and everyone loves him very much. Sylvia and Leonel are committed to providend Miguel with a permanent, stable, loving home and family. Catholic Charities, Diocese of Joliet, and this adoption worker recommend the adoption of Miguel Angel Lopez by Sylvia and Leonel Castillo and that this adoption is in the child's best interest. Catholic Charities, Diocese of Joliet, recommends Sylvia and Leonel Castillo as adoptive parents and approces finalization of this adoption.

**This Investigatory Report must be current within four months of the date of the Petition for Adoption / Interim Order**

Kathy Fox, BSW
**Typed name of caseworker**

**Signature of caseworker**                    Date

8/11/08

Catholic Charities, Diocese of Joliet
**Name of Agency**

203 N. Ottawa St.
**Address of Agency**

Joliet                     IL              60432
**City**                   **State**        **Zip**

(815) 724-1244
**Telephone Number**

Joberta Johnson, MS, MSW
**Typed name of supervisor**

**Signature of supervisor**          **Date** 8/11/08

**IN THE CIRCUIT COURT OF THE TWENTY-FIRST JUDICIAL CIRCUIT**
**IN THE COUNTY OF KANKAKEE AND STATE OF ILLINOIS**

IN THE INTEREST OF:            )
**MIGUEL LOPEZ**               )
                      MINOR    )    CASE NO.  **06 JA 46**
                               )

**FILED**

**JAN 1 8 2008**

*Kathryn K. Thomas*
CIRCUIT COURT CLERK

## ORDER TERMINATING PARENTAL RIGHTS

This cause coming to be heard on the People's Motion to Terminate Parental Rights, the State by Emily K. Lindgren, Assistant State's Attorney, the minor represented by counsel, Rebecca Souligne, natural mother represented by counsel, APD Steeves, the Court having jurisdiction and the Court being duly advised in the premises:

**THE COURT FINDS:**

1.  That **Miguel Lopez** is a minor child under the age of 18 years, to wit:  of the age of 1 year, having been born on August 23, 2006, and that the minor's current residence is in foster care.

2.  That the mother of said minor is **Petra Lopez**, and her last known place of residence is 394 S. Evergreen, Kankakee, Illinois 60901.

3.  That the father of said minor is unknown.

4.  That the mother of said minor is unfit pursuant to Illinois Compiled Statutes, Chapter 750, Act 50, Sections 1(D), and that her parental rights should be permanently terminated, in that: She failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare.

5.  That the father of said minor is unfit pursuant to Illinois Compiled Statutes, Chapter 750, Act 50, Sections 1(D), and that his parental rights should be permanently terminated, in that: He failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare.

6.  That it is in the best interest of the minor that the parental rights be hereby permanently terminated.

**THEREFORE, IT IS ORDERED:**

1.  That the parental rights of **Petra Lopez** and **any and all unknown fathers** shall be hereby permanently terminated.

2.  That D. Jean Ortega-Piron, Guardianship Administrator of the Illinois Department of Children and Family Services or her successor or successors in office shall be hereby named guardian of said minor with the power to consent to medical treatment and adoption.

ENTERED:

_____
JUDGE

Dated this __18__ day of ___January___, 2008.

IN THE CIRCUIT COURT OF Cook   COUNTY, ILLINOIS
COUNTY DEPARTMENT - COUNTY DIVISION

IN THE MATTER OF THE PETITION OF )
)
___Leonel Castillo_____ )
)
AND _Sylvia Castillo_____ )       No._____
)
TO ADOPT _Miguel AngelLopez___ )

### AFFIDAVIT OF AGENCY

1.  The following is a statement of expenses incurred or to be incurred by Agency in the above-captioned adoption:

| NAME | AMOUNT |
|---|---|
| Hospital.............................................................. | $.....0. |
| Obstetrician.......................................................... | .......0. |
| Pediatrician.......................................................... | .......0. |
| Other Medical Expenses........................................ | .......0. |
| ............................................................................ | .......0. |
| Other Expenses (Specify)...................................... | .......0. |
| ............................................................................ | .......0. |
| ............................................................................ | .......0. |
| **TOTAL** | **$   0.** |

2.  The following is a statement of contributions, fees or other compensation received by or promised to Agency.

| DESCRIPTION | AMOUNT |
|---|---|
| Contribution promised by adoptive parents | $......0. |
| Amount of contribution paid to date | ......0. |
| Fees billed to adoptive parent(s) | ......0. |
| Amount of fees paid to date | ......0. |
| Compensation received from other sources: | |
| (Identify)............................................................... | ......0. |
| Compensation or contribution promised by other sources: | |
| (Identify)............................................................... | ......0. |

3.  The adopting parent(s) must pay following expenses directly to billers and Agency has or will so inform adopting parent(s).

| NAME | AMOUNT |
|---|---|
| Hospital................................................... | $....0. |
| Obstetrician.............................................. | ....0. |
| Pediatrician.............................................. | ....0. |

Other Medical Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
Psychologist, Psychiatrist or Therapist. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
Attorneys, other than Attorney of Record for adoption:. . . . . . . . . . . . . . . . . .0.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
Travel Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
Visas, Passports, Foreign Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
Other agency or governmental body . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0.
Other Expenses (Specify) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0

4.  This is (not) a subsidized adoption.

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certify that the statements set forth in this Affidavit are true and correct.


Dated: _____          (SIGNED) _____

CFS 436-2
(9/00)

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 21st    JUDICIAL CIRCUIT

Kankakee    COUNTY

IN THE MATTER OF THE PETITION OF            )

Leonel Castillo                )
                               )
AND  Sylvia Castillo           )        CASE NO. _____
                               )
                               )
TO ADOPT                       )
                               )
Miguel Angel Lopez             )

## ENTRY OF APPEARANCE

Now comes D. Jean Ortega-Piron _____ , Guardianship Administrator of the Department of

Children and Family Services, State of Illinois, having authority to consent to the adoption of            a minor,

and as the duly authorized and acting agent of the Department of Children and Family Services, State of Illinois,

and hereby waives service of process on behalf of himself and said Department and enters his appearance and

that of said Department in the above entitled cause, and on behalf of himself and said Department consents to the

entering of an Interim Order herein, as fully and with the same force and effect as though he and said Department

a Final Decree of Adoption had been duly served with summons as by statute made and provided.


_____
Guardianship Administrator
Department of Children and Family Services


Attorney Name: _____
Address: _____
City Code: _____
Telephone: _____

CFS 436-1-A
Rev. 4/01

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE ___21st___ _____ JUDICIAL COURT

___Kankakee___ _____ COUNTY

IN THE MATTER OF PETITION OF )
)
___Leonel Castillo___ )
)
AND ___Sylvia Castillo___ )     CASE NO. _____
)
TO ADOPT )
___Miguel Angel Lopez___ )

## CONSENT BY AN AGENCY TO THE ADOPTION OF A MINOR CHILD

Comes now ____D. Jean Oretega-Piron_____, Guardianship

Administrator, of the Department of Children and Family Services, a duly authorized Child Welfare Agency under

the laws of the State of Illinois, and states:

That I am an adult resident of the State of Illinois.

That I am guardian of the person of ___Miguel Angel Lopez___, a ___ male child of the

age of ___1 year___, born on ___8/23/06___ _____

at ___Riverside Medical Center, Kankakee, IL___

That I have the right and authority to consent to the adoption of said child by reason of an Order entered on

the ___29th___ day of ___August___ A.D., ___2006___, by the Circuit Court of the ___21st___

Judicial Circuit, ___Kankakee___ County, Illinois, in Case Number ___06JA46___

That I, ___D. Jean Ortega-Piron___, Guardianship Administrator of the Department of

Children and Family Services, State of Illinois, as guardian of the person of ___Miguel Angel Lopez___ a

minor, and as the duly authorized acting agency of said Department, hearby consent and agree to the adoption of the

aforesaid child by ___Leonel Castillo___ and ___Sylvia Castillo___, the petitioners

herein.

DATED THIS _____ day of _____ A.D., _____

_____
Guardianship Administrator
Department of Children and Family Services
State of Illinois

CFS 482-B
11/2002

## STATE OF ILLINOIS
### DEPARTMENT OF CHILDREN AND FAMILY SERVICES

## SPECIAL NEEDS CERTFICATION

Adoptive Parents Names: **Leonel and Sylvia Castillo**

To Adopt: **Miguel Angel Lopez**      No: _____

I, **D. Jean Ortega-Piron**, an authorized agent of the Department of Children and Family Services Guardianship Administrator, state and certify as follows:

1. The child/ren who is/are sought to be adopted in this proceeding have been placed for adoption with the Petitioners by the Illinois Department of Children and Family Services.

2. This is a special needs adoption, as that term is defined by the Illinois Department of Children and Family Services.

3. It is in the best interests of the child/ren who is/are the subject of this proceeding that this court waive the adoption filing fee in this cause.

_____
D. Jean Ortega-Piron
Guardianship Administrator

### Certification

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I, the undersigned, certify that the statements set forth in this document are true and correct.

Dated: _____      Signed: _____

## STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE ___21st___ JUDICIAL CIRCUIT

___Kankakee___ COUNTY

IN THE INTEREST OF                    )
                                      )          CASE NO. _____
Miguel Angel Lopez                    )
                                      )
_____           )

### PETITION FOR DISCHARGE FROM GUARDIANSHIP

NOW COMES ___D. Jean Ortega-Piron_____, Guardianship

Administrator of the Illinois Department of Children and Family Services, and petitions this honorable

Court to enter an order discharging her/him from her/his duties as guardian of the person of

___Miguel Angel Lopez_____, and in support thereof alleges and says:

That this honorable Court on the ___29th___ day of ___August___, ___2006___

placed said minor under the guardianship of the petitioner herein or her/his predecessors in office. That for

reasons herein set forth it is in the best interest of said minor that ___D. Jean Ortega-Piron___,

Guardianship Administrator of the Illinois Department of Children and Family Services, be discharged

from her/his duties as guardians of the person of said minor, and that the Court terminate wardship of said

minor.

WHEREFORE, ___D. Jean Ortega-Piron_____, Guardianship

Administrator of the Illinois Department of Children and Family Services, respectfully petitions this Court

to discharge her/him from her/his duties as guardian of the person of said minor, and that Court terminate

wardship of the person of said minor.

Dated this _____ day of _____, _____

_____
Guardianship Administrator
Illinois Department of Children and Family Services

By: _____
                Authorized Agent

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE __21st__ JUDICIAL CIRCUIT

__Kankakee__ COUNTY

IN THE MATTER OF )
)
)
   Miguel Angel Lopez )
)

CASE NO. _____

## ORDER OF DISCHARGE

D. Jean Ortega-Piron
_____, Guardianship Administrator of the
Illinois Department of Children and Family Services, having moved the Court to
enter an order releasing him from his duties as guardian of the person of

__Miguel Angel Lopez_____, and further having recommended
that the Court terminate wardship of said minor;

   And the Court having heard said motion and being advised and satisfied in
the premises, finds that the Court has jurisdiction of the subject matter hereof
and the parties hereto, and that __D. Jean Ortega-Piron__
should be discharged as guardian of the person of said minor, and the Court
should terminate wardship of said minor.

   IT IS THEREFORE ORDERED THAT said minor be and is hereby discharged
from the guardianship of the Guardianship Administrator of the Illinois Department
of Children and Family Services. It is further ordered that Court wardship of
said minor is hereby terminated.

ENTER

_____
Associate Circuit Judge

Dated this _____ day of ____ , 19

Affidavit of Agency                                       (Rev. 3-87) CO

IN THE CIRCUIT COURT OF Cook      COUNTY, ILLINOIS
COUNTY DEPARTMENT - COUNTY DIVISION

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE PETITION OF | ) | |
| | ) | |
| Leonel Castillo | ) | |
| | ) | No._____ |
| AND Sylvia Castillo | ) | |
| | ) | |
| TO ADOPT Miguel AngelLopez | ) | |

### AFFIDAVIT OF AGENCY

1. The following is a statement of expenses incurred or to be incurred by Agency in the above-captioned adoption:

| NAME | AMOUNT |
|---|---|
| Hospital.......................................................................... | $.....0. |
| Obstetrician.................................................................... | ........0. |
| Pediatrician.................................................................... | ........0. |
| Other Medical Expenses................................................. | ........0. |
| ....................................................................................... | ........0. |
| Other Expenses (Specify)................................................ | ........0. |
| ....................................................................................... | ........0. |
| ....................................................................................... | ........0. |
| **TOTAL** | **$    0.** |

2. The following is a statement of contributions, fees or other compensation received by or promised to Agency.

| DESCRIPTION | AMOUNT |
|---|---|
| Contribution promised by adoptive parents | $......0. |
| Amount of contribution paid to date | ......0. |
| Fees billed to adoptive parent(s) | ......0. |
| Amount of fees paid to date | ......0. |
| Compensation received from other sources: | |
| (Identify)....................................................................... | ......0. |
| Compensation or contribution promised by other sources: | |
| (Identify)....................................................................... | ......0. |

3. The adopting parent(s) must pay following expenses directly to billers and Agency has or will so inform adopting parent(s).

| NAME | AMOUNT |
|---|---|
| Hospital........................................................ | $ ....0. |
| Obstetrician.................................................. | ....0. |
| Pediatrician.................................................. | ....0. |

Other Medical Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

Psychologist, Psychiatrist or Therapist. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

Attorneys, other than Attorney of Record for adoption:. . . . . . . . . . . . . . . . . . . . . . .0.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

Travel Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

Visas, Passports, Foreign Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

Other agency or governmental body . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0.

Other Expenses (Specify) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .0

4.   This is (not) a subsidized adoption.

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certify that the statements set forth in this Affidavit are true and correct.


Dated: _____          (SIGNED) _____

CFS 436-2
(9/00)

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 21st    JUDICIAL CIRCUIT

<u>Kankakee</u>    COUNTY

IN THE MATTER OF THE PETITION OF    )

)
    <u>Leonel Castillo</u>    )
)
AND <u>Sylvia Castillo</u>    )    CASE NO._____
)
       TO ADOPT    )
)
  <u>Miguel Angel Lopez</u>    )

### ENTRY OF APPEARANCE

Now comes <u>D. Jean Ortega-Piron</u> , Guardianship Administrator of the Department of

Children and Family Services, State of Illinois, having authority to consent to the adoption of     a minor,

and as the <u>duly authorized and</u> acting agent of the Department of Children and Family Services, State of Illinois,

and hereby waives service of process on behalf of himself and said Department and enters his appearance and

that of said Department in the above entitled cause, and on behalf of himself and said Department consents to the

entering of an Interim Order herein, as fully and with the same force and effect as though he and said Department

i Final Decree of Adoption had been duly served with summons as by statute made and provided.

                          _____
                             Guardianship Administrator
               Department of Children and Family Services

ttorney Name:_____
ddress:_____
tty Code:_____
lephone:_____

CFS 436-1-A
Rev. 4/01

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE __21st_____JUDICIAL COURT

Kankakee_____COUNTY

IN THE MATTER OF PETITION OF )
)
Leonel Castillo_____ )
)          CASE NO. _____
AND Sylvia Castillo_____ )
)
TO ADOPT )
Miguel Angel Lopez_____ )
)

## CONSENT BY AN AGENCY TO THE ADOPTION OF A MINOR CHILD

Comes now _____D. Jean Oretega-Piron_____, Guardianship

Administrator, of the Department of Children and Family Services, a duly authorized Child Welfare Agency under

the laws of the State of Illinois, and states:

That I am an adult resident of the State of Illinois.

That I am guardian of the person of __Miguel Angel Lopez_____, a _____ male child of the

age of __1 year_____, born on ___8/23/06_____,

at _Riverside Medical Center, Kankakee, IL_

That I have the right and authority to consent to the adoption of said child by reason of an Order entered on

the _29th____ day of _August_____ A.D., _2006___, by the Circuit Court of the __21st_____

Judicial Circuit, _Kankakee_____County, Illinois, in Case Number _06JA46_____.

That I, _D. Jean Ortega-Piron_____, Guardianship Administrator of the Department of

Children and Family Services, State of Illinois, as guardian of the person of _Miguel Angel Lopez_a

minor, and as the duly authorized acting agency of said Department, hearby consent and agree to the adoption of the

aforesaid child by _Leonel Castillo____ and _Sylvia Castillo_____, the petitioners

herein.

DATED THIS _____ day of _____A.D., _____.

Guardianship Administrator
Department of Children and Family Services
State of Illinois

CFS 482-B
11/2002

## STATE OF ILLINOIS
### DEPARTMENT OF CHILDREN AND FAMILY SERVICES

## SPECIAL NEEDS CERTFICATION

Adoptive Parents Names: **Leonel and Sylvia Castillo**

To Adopt: **Miguel Angel Lopez**    No: _____

I, **D. Jean Ortega-Piron**, an authorized agent of the Department of Children and Family Services Guardianship Administrator, state and certify as follows:

1. The child/ren who is/are sought to be adopted in this proceeding have been placed for adoption with the Petitioners by the Illinois Department of Children and Family Services.

2. This is a special needs adoption, as that term is defined by the Illinois Department of Children and Family Services.

3. It is in the best interests of the child/ren who is/are the subject of this proceeding that this court waive the adoption filing fee in this cause.

_____
D. Jean Ortega-Piron
Guardianship Administrator

### Certification

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I, the undersigned, certify that the statements set forth in this document are true and correct.

Dated: _____    Signed: _____

CFS 440
Rev. 9/99

## STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE ___21st___ JUDICIAL CIRCUIT

___Kankakee___ COUNTY

IN THE INTEREST OF )
)
) CASE NO. _____
Miguel Angel Lopez )
)

### PETITION FOR DISCHARGE FROM GUARDIANSHIP

NOW COMES ___D. Jean Ortega-Piron___, Guardianship

Administrator of the Illinois Department of Children and Family Services, and petitions this honorable

Court to enter an order discharging her/him from her/his duties as guardian of the person of

___Miguel Angel Lopez___, and in support thereof alleges and says:

That this honorable Court on the ___29th___ day of ___August___, ___2006___

placed said minor under the guardianship of the petitioner herein or her/his predecessors in office. That for

reasons herein set forth it is in the best interest of said minor that ___D. Jean Ortega-Piron___,

Guardianship Administrator of the Illinois Department of Children and Family Services, be discharged

from her/his duties as guardians of the person of said minor, and that the Court terminate wardship of said

minor.

WHEREFORE, ___D. Jean Ortega-Piron___, Guardianship

Administrator of the Illinois Department of Children and Family Services, respectfully petitions this Court

to discharge her/him from her/his duties as guardian of the person of said minor, and that Court terminate

wardship of the person of said minor.

Dated this _____ day of _____, _____

_____
Guardianship Administrator
Illinois Department of Children and Family Services

By: _____
Authorized Agent

(Rev. 4/78)                  STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE __21st__ JUDICIAL CIRCUIT

__Kankakee__ COUNTY

IN THE MATTER OF                )
                                )
                                )        CASE NO. _____
  Miguel Angel Lopez            )
_____       )

ORDER OF DISCHARGE

__D. Jean Ortega-Piron__
_____, Guardianship Administrator of the
Illinois Department of Children and Family Services, having moved the Court to
enter an order releasing him from his duties as guardian of the person of

__Miguel Angel Lopez_____, and further having recommended
that the Court terminate wardship of said minor;

    And the Court having heard said motion and being advised and satisfied in
the premises, finds that the Court has jurisdiction of the subject matter hereof
and the parties hereto, and that __D. Jean Ortega-Piron__
should be discharged as guardian of the person of said minor, and the Court
should terminate wardship of said minor.

    IT IS THEREFORE ORDERED THAT said minor be and is hereby discharged
from the guardianship of the Guardianship Administrator of the Illinois Department
of Children and Family Services.  It is further ordered that Court wardship of
said minor is hereby terminated.

ENTER

_____
          Associate Circuit Judge

Dated this _____ day of _____ , 19

# KANKAKEE COUNTY, ILLINOIS





**STATE OF ILLINOIS**

## CERTIFICATE OF LIVE BIRTH

CHILD'S BIRTH NUMBER

112 2006 198094

**TYPE/PRINT PERMANENT BLACK INK FOR INSTRUCTIONS SEE HANDBOOK**

REGISTRATION DISTRICT NO. 46.1
REGISTERED NUMBER

**CHILD**

1. CHILD'S NAME FIRST: MIGUEL — MIDDLE: ANGEL — LAST: LOPEZ
2. DATE OF BIRTH (MONTH, DAY, YEAR): Aug. 23, 2006 — 3. TIME OF BIRTH: 08:13A M
4. SEX: Male — 5. CHILD'S BLOOD TYPE: — — 6. CITY, TOWN, TWP., ROAD DIST. NO., OR LOCATION OF BIRTH: KANKAKEE — 7. COUNTY OF BIRTH: KANKAKEE
8. PLACE OF BIRTH: Hospital — 9. FACILITY NAME (IF NOT INSTITUTION, GIVE STREET AND NUMBER): RIVERSIDE MEDICAL CENTER

**CERTIFIER ATTENDANT**

10a. I CERTIFY THAT THIS CHILD WAS BORN ALIVE AT THE PLACE AND TIME AND ON THE DATE STATED. (SIGNATURE OPTIONAL)
10b. DATE SIGNED (MONTH, DAY, YEAR)
10c. ILLINOIS LICENCE NUMBER
11. ATTENDANT'S NAME AND TITLE (IF OTHER THAN CERTIFIER) (TYPE/PRINT): DAGAULLE HAILE M. D.
12. CERTIFIER'S NAME AND TITLE (TYPE/PRINT): SHIRRON GRIFFIN SECRETARY — ATTENDANT'S MAILING ADDRESS (STREET AND NUMBER OR RURAL ROUTE NUMBER, CITY OR TOWN, STATE, ZIP CODE): N WALL ST KANKAKEE IL 60901
13.
14. SIGNATURE ► LOCAL REGISTRAR'S: Bruce Clark by *Sharon Guiga* — DATE FILED BY LOCAL REGISTRAR (MONTH, DAY, YEAR): August 29, 2006

**MOTHER**

15. MOTHER'S MAIDEN NAME (FIRST, MIDDLE, LAST): PETRA CARMEN GONZALES
16. DATE OF BIRTH (MONTH, DAY, YEAR): 12/15/1970
17. BIRTHPLACE (STATE OR FOREIGN COUNTRY): TEXAS
18a. RESIDENCE-STREET AND NUMBER: 649 S EVERGREEN AVE
19a. CITY, TOWN, TWP., OR ROAD DIST. NO.: Kankakee — 19b. INSIDE CITY (YES/NO): YES
19d. COUNTY: KANKAKEE — 19e. STATE: IL — 19f. 60901 — MOTHER'S MAILING ADDRESS (IF SAME AS RESIDENCE, ENTER ZIP CODE ONLY)

**FATHER**

**INFORMANT**

20. FATHER'S NAME (FIRST, MIDDLE, LAST):
21. DATE OF BIRTH (MONTH, DAY, YEAR):
22. BIRTHPLACE (STATE OR FOREIGN COUNTRY)
23. I CERTIFY THAT THE PERSONAL INFORMATION PROVIDED ON THIS CERTIFICATE IS CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.
INFORMANT'S SIGNATURE (OPTIONAL) ► X *Petra C Lopez*

VR 100 REV 4/89

INFORMATION FOR MEDICAL AND HEALTH USE ONLY

(Based on 1989 U.S. Standard Certificate)



**SEAL**

CERTIFIED COPY OF VITAL RECORDS

STATE OF ILLINOIS } SS
COUNTY OF KANKAKEE

DATE ISSUED 10-11-06

I, Bruce Clark, Kankakee County Clerk, do hereby certify that this document is a true and correct copy of the original record which is on file in the office of the County Clerk, Kankakee, Illinois.

Not valid without the embossed seal of Kankakee County.

*Bruce Clark*
BRUCE CLARK
COUNTY CLERK

04/08/2008 13:18 FAX 815 932 30~~~~    RECEIVED 04/08/200~ ~:17    @001
                                        Catholic Charities-K3

## REQUEST FOR UPDATED BACKGROUND CHECK FOR A LICENSED PROVIDER

TO:  Central Office of Licensing - Telephone Number 217-785-2688 • Fax Number 217-785-6368

Updated Background Check Is Requested For License Provider # **459 364** for the purpose of:

☒ Adoption            ☐ Subsidized Guardianship            ☐ Legal Screening

Name: SYLVIA CASTILLO            ☒ Negative CANTS    ☐ Positive CANTS

SS#: 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  DOB: 3/22/68   ☒ Negative FBL      ☐ Positive FBL

Name: LEONEL CASTILLO            ☒ Negative CANTS    ☐ Positive CANTS

SS#: 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  DOB: 9/27/67   ☐ Negative FBL      ☒ Positive FBL

Name: _____   ☐ Negative CANTS    ☐ Positive CANTS

SS#: _____ DOB: _____   ☐ Negative FBL      ☐ Positive FBL

Name: _____   ☐ Negative CANTS    ☐ Positive CANTS

SS#: _____ DOB: _____   ☐ Negative FBL      ☐ Positive FBL

## ACKNOWLEDGMENT OF CONFIDENTIALITY OF LICENSE BACKGROUND CHECK INFORMATION
I understand that the background check information provided as a result of this request is strictly
confidential and is to be used only for the purpose specified above.

Name of Employee Requesting Check (please print): MARY ANNE DOWDING

Signature of Employee: Mary Anne Dowding

Agency/DCFS Team: Catholic Charities    2A-MY

Address: 270 N. SCHUYLER AVE.    KANKAKEE, IL  60901

Telephone Number: (815) 933-7791    Fax Number: (815) 932-3030

Worker ID#: 513131    Date: 4-8-08

## RESULTS OF BACKGROUND CHECK BY THE CENTRAL OFFICE OF LICENSING:
FBL = Fingerprint-Based LEADS Check
NC = Negative CANTS; no record of CANTS history
NF = Negative Fingerprint Finding; no record of criminal history (fingerprint-based LEADS check).
PC = Positive CANTS Finding
PF = Positive Fingerprint Finding; history rap sheet (fingerprint-based LEADS check) will be sent
     to the above address within 24 hours.

Processed By: _____    Date: APR 1 0 2008

```
08.101 15.49.47
ILDCFS0H1  OPR/PL  PUR/C  REQ/LLOYD-DARRING, PAM
SID/IL52414820
ATN/LLOYD-DARRING, PAM
 THIS RECORD IS BASED ONLY ON THE SID NUMBER IN YOUR REQUEST-
IL52414820 BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME,
A NEW COPY SHOULD BE REQUESTED WHEN NEEDED FOR SUBSEQUENT USE.
                     ILLINOIS STATE POLICE
             CRIMINAL HISTORY RECORD INFORMATION
   STATE ID NO.  FBI NO.   CHICAGO IR NO.  DATE REQUESTED
   ********************* ILLINOIS STATE POLICE *********************
            CRIMINAL HISTORY RECORD INFORMATION
   ********************** STATE USE ONLY *********************
   -------------------------------------------------------------------
   DATE: 04/10/2008 * ORI: ILDCFS0K2
   -------------------------------------------------------------------

   ILLINOIS STATE POLICE
   BUREAU OF IDENTIFICATION
   260 NORTH CHICAGO STREET
   JOLIET, IL 60432-4075
   ==================================================================
   CRIMINAL HISTORY OF CASTILLO, LEONEL    (LAST KNOWN NAME)
   ==================================================================
   STATE IDENTIFICATION NUMBER: IL52414820
   CONVICTION STATUS: NO CONVICTION STATUS
   CUSTODIAL STATUS: NO STATUS FOUND

   JUVENILE DATA
   -------------------------------------------------------------------
   INFORMAL ADJUSTMENT: 0 * FORMAL ADJUSTMENT: 0 * PROBATION ADJUSTMENT: 0

   ALIAS NAME(S)
   -------------------------------------------------------------------
   CASTILLO, LEONEL

   DATE OF BIRTH
   -------------------------------------------------------------------
   09/19/1967
   09/29/1967


   ===================================================================
                     SUBJECT IDENTIFICATION DATA
   END OF PAGE 001 -- MORE DATA WILL FOLLOW

   08.101 15.49.47
   ILDCFS0H1  OPR/PL  PUR/C  REQ/LLOYD-DARRING, PAM
   SID/IL52414820
    (CONTINUED FROM PREVIOUS RESPONSE)


   ===================================================================
    FBI#: 559241CC9 * CHICAGO IR#:
    SEX: MALE
    RACE: WHITE
    HEIGHT: 508 * DATE REPORTED:
    WEIGHT: 180 * DATE REPORTED:
    EYES: BROWN
    HAIR: BLACK
    SKIN: LIGHT
    SCARS/MARKS/TATTOOS:
    PLACE OF BIRTH: ILLINOIS / MEXICO
    DRIVERS LICENSE NUMBERS * DL STATE:
       C23452067277 * IL
    SOCIAL SECURITY NUMBERS:
       326607906
    MISCELLANEOUS NUMBERS [ NUMBER CODE -- ID NUMBER ]:
    PALM PRINT AVAILABLE ORGANIZATIONS:
    PHOTO AVAILABLE ORGANIZATIONS:
       BLUE ISLAND POLICE DEPARTMENT
    IDOC#:
    FOID#:
    INS#:
    OCCUPATION * DATE REPORTED:
    EMPLOYER * DATE REPORTED:
    BASIS FOR CAUTION * DATE REPORTED:
   ===================================================================
```

CRIMINAL HISTORY DATA

=====================================  ===================================

****************************** ARREST ******************************
DCN: G15564311 * DATE OF ARREST: 08/26/2003
NAME: CASTILLO, LEONEL * DATE OF BIRTH: 09/29/1967

RESIDENCE:
    12131 S ARTESIAN
    BLUE ISLAND, IL 60406
ARRESTING AGENCY: BLUE ISLAND POLICE DEPARTMENT * NCIC: IL0161000
AGENCY CASE NUMBER: 2003-17072 * OFFICER BADGE NUMBER:
PHOTO AVAILABLE: YES

ARREST CHARGES
--------------------------------------------------------------------
COUNT: 1
    STATUTE CITATION: 625 ILCS 5.0/11-501-A-1
    LITERAL DESCRIPTION: DUI/ALCOHOL
    INCHOATE CODE: O
    CLASS: A
    ARREST TYPE: * DATE OF OFFENSE:
COUNT: 2
    STATUTE CITATION: 625 ILCS 5.0/11-501-A-2
    LITERAL DESCRIPTION: DUI/ALCOHOL
    INCHOATE CODE: O
END OF PAGE 002 -- MORE DATA WILL FOLLOW

08.101 15.49.47
ILDCFS0H1   OPR/PL   PUR/C   REQ/LLOYD-DARRING, PAM
SID/IL52414820
  (CONTINUED FROM PREVIOUS RESPONSE)

   CLASS: A
   ARREST TYPE: * DATE OF OFFENSE:
COUNT: 3
    STATUTE CITATION: 625 ILCS 5.0/3-413-F
    LITERAL DESCRIPTION: REGISTRATION EXPIRATION
    INCHOATE CODE: O
    CLASS: P
    ARREST TYPE: * DATE OF OFFENSE:

STATES ATTORNEY SECTION
--------------------------------------------------------------------
FILING DECISION: DIRECT FILED WITH COURT * DECISION DATE: 08/27/2003
COUNT: 1
    STATUTE CITATION: 625 ILCS 5.0/11-501-A-1
    LITERAL DSCRIPTION: DUI/ALCOHOL
    INCHOATE CODE: O
    CLASS: A
    AGENCY NAME: COOK COUNTY STATE'S ATTORNEY * NCIC: IL016013A
FILING DECISION: DIRECT FILED WITH COURT * DECISION DATE: 08/27/2003
COUNT: 2
    STATUTE CITATION: 625 ILCS 5.0/11-501-A-2
    LITERAL DSCRIPTION: DUI/ALCOHOL
    INCHOATE CODE: O
    CLASS: A
    AGENCY NAME: COOK COUNTY STATE'S ATTORNEY * NCIC: IL016013A
FILING DECISION: DIRECT FILED WITH COURT * DECISION DATE: 08/27/2003
COUNT: 3
    STATUTE CITATION: 625 ILCS 5.0/3-413-F
    LITERAL DSCRIPTION: REGISTRATION EXPIRATION
    INCHOATE CODE: O
    CLASS: P
    AGENCY NAME: COOK COUNTY STATE'S ATTORNEY * NCIC: IL016013A

=====================  END OF RECORD  =====================

=====================  STATE USE ONLY  =====================
--------------------------------------------------------------------
END OF PAGE 003 -- END OF RECORD

CFS-486
08/01

## CATHOLIC CHARITIES

## ADOPTION CONVERSION HOMESTUDY

Name of Family: ___Leonel and Sylvia Castillo_____

Address: ___22066 Heritage Drive, Frankfort, IL  60423_____

Telephone: ___815-806-8715_____

Date(s) of Contact: ____6/5/08, 6/10/08_____

|  | **Adoptive Mother** | **Adoptive Father** |
|---|---|---|
| Birth Date: | 3/22/68 | 9/29/67 |
| Religion: | Catholic | Catholic |
| Education: | Bachelor of Health Arts | High School graduate |
| Occupation: | Registered Nurse | Carpenter |
| Employer: | UIC Hospital | Levy Construction |
| Address: | 5817 S. Maryland St. | 3925 Commercial Ave. |
|  | Chicago, IL  60637 | Northbrook, IL  60062 |
| Phone: | 773-834-4127 | 847-564-8950 |

### Children to be Adopted

| | Name | DOB | Gender | Religion |
|---|---|---|---|---|
| 1. | Miguel Angel Lopez | 8/23/06 | Male | Catholic |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

### Other Child(ren)/Adults in Household

| | Name | DOB | Gender | Religion | Relationship |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |

1

**CFS-486**
**08/01**

3. _____

4. _____  _____  _____  _____  _____



CFS-486
08/01

## ADOPTION CONVERSION ASSESSMENT

Name of Family:  Lopez

### I.  Adoptive Child's Summary
#### A.  History and Background

This case came to the attention of DCFS when and investigation found that the minor's birth mother had delivered a baby boy on August 23, 2006 who was born positive for cocaine. The birth mother tested positive for cocaine and benzoids and admitted to using drugs as recently as August 22, 2006. There was no prenatal care. The birthmother stated that she intended to allow the infant to be adopted, but had not made any arrangements to do so prior to his birth. She admitted that she could not care for the infant. The doctor who delivered the child reported that the birth mother was unsafe and could not parent her child at this time. This report was indicted due to an immediate or continuing threat to the child's well being. As a result of this DCFS investigation, Protective Custody of the minor, Miguel Lopez was granted on 8/25/06. TC of the minor was granted to DCFS on 8/29/06. Miguel was initially placed in the relative foster home of his 2nd cousin from 8/25/06 until 2/27/07when he was placed in his current traditional licensed foster home after the relative placement failed. He has remained in this placement since that time and has thrived in this placement. The minor's mother and father failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare and did not engage in services. Their parental rights were terminated in Kankakee County Court on 1/16/08.

When Miguel was born he tested positive for cocaine and his mother also tested positive for cocaine and benzoids and she admitted to using drugs up until 8/22/06. She also did not receive prenatal care. Miguel exhibited reflux and a slant board as well as a change in formula was prescribed for him and this worked for him. Miguel had surgery on 11/30/06 for a Inguial Hernia Repair with Hydrocelectomy.

Miguel was referred to Child and Family Connections for assistance with Gross Motor Development, Communication and Cognitive/ Problem Solving Development. He received services sporadically during his initial placement. Following his placement with his current adoptive family, it was noted by the service providers that Miguel no longer qualified for services due to the excellent care that he was receiving from his new foster family. They had provided the needed stimulation and interaction in a nurturing environment and services were discontinued. During the final evaluation done on 4/03/07, it was noted that Miguel had blossomed socially, emotionally and cognitively.

Miguel's pediatrician is Dr. Jain at Hedges Clinic located in Frankfort, IL. His most recent well child exam was on 11/30/07. He was found to be healthy and he is current on his immunizations.

#### B.  Current Level of Functioning and Projection of Child's Possible Future Service Needs

Miguel is developing on target and he exhibits age appropriate behaviors. Miguel may require counseling or therapy in order to deal with separation and loss issues due to his pas history.

#### C.  Child's Attachment to Significant Others

Miguel has been placed with his current foster parents since 2/27/07. During this time he has blossomed into a healthy and happy little boy. He appears to be having all of his needs met by Sylvia and Leonel Castillo. He receives much love and attention from them. He refers to them as mommy and daddy. He is also well loved and accepted by the Castillo's extended family.

#### 4.  Racial, Ethnic and/or Cultural Identity

Sylvia and Leonel Castillo are of the Hispanic race as is Miguel so there should be no problems

3

CFS-486
08/01

with regards to racial, ethnic or cultural identity.

**D. Child's Understanding of Adoption**

The adoptive parent is prepared to discuss the issue of adoption with the child when he is older and is able to understand the concept of adoption. They plan to tell him about the circumstances regarding his adoption and that he has older siblings although they do not have any information about them. They plan to answer questions that Miguel may have truthfully regarding his background as they come up.

**E. Projected Eligibility for Adoption Assistance**

Catholic Charities fully anticipates that Miguel will be eligible for adoption assistance based on her age and family history. Adoption assistance will include the monthly adoption subsidy of $380, the adoption attorney fees and the Illinois Medical Card.

**CFS-486**
08/01

### ADOPTION CONVERSION ASSESSMENT

Name of Family:  Castillo

## II. Adoptive Family Summary

### A. Description of Adoptive Parent(s)

Leonel Castillo was born September 29, 1967 in Monterrey, Mexico.  He was raised by both parents.  His father is deceased and his mother is still alive.  He has a younger brother and sister with whom he has a very good relationship.  Leonel came to the United States with his parents in 1968 and attended grade school.  In 1975 his family moved back to Mexico and he completed high school there.  In 1985 he moved back to the United States and began working as a carpenter in the construction field with his uncle.  He has worked in the construction field since 1985 and is currently employed as a carpenter for a company called Levy Construction located in Northbrook, IL.

Leonel is in good health and does not take any medication.  Leonel was raised in the Catholic faith and he and Sylvia and Miguel attend St. Benedict Church on a regular basis.

Sylvia Castillo was born on March 22, 1968 in Chicago, IL where she was raised by her parents.  She is the eldest child and has two younger brothers whom she has a very good relationship with.  Sylvia received an associate's degree in nursing in 1993 and in 2003 she received a Bachelors degree in health arts from the University of St. Francis.  She is currently employed as a staff nurse at the University of Chicago Hospital.  She has been employed at this job since 2000.  She works Monday thru Fridays and is usually home by 3:30 in the afternoon.  Sylvia's mother or Leonel's mother provide child care for Miguel while they are at work in their home.

Sylvia is in good health and does not take any medications.  She is also of the Catholic Faith and attends church on a regular basis.  Sylvia and Leonel plan to raise Miguel in the Catholic faith and they plan to have him baptized after his adoption is finalized.

Sylvia and Miguel Castillo were married on December 21, 1991 in Blue Island, IL.  They originally met each other in 1989 through friends.  This is the first marriage for both of them.  They do not have biological children together.  They have not been able to have children of their own and this is why they turned to foster care as a means to adoption.

The Castillo's report that they are financially stable and are able to meet all of their financial obligations and are able to provide for all of Miguel's needs.  They are aware that they will receive the adoption subsidy and medical card for Miguel until he is 18 years old or graduates from High School.

An updated Background check was completed on Sylvia and Leonel Castillo on 4/10/08. Sylvia's background was clear.  Leonel was arrested for a DUI on 8/26/03 when he was 35 years old.  He was not convicted of this crime.  This was the only time that he has been arrested and this happened three years ago.  He was required to attend DUI risk education training.  He was also required to attend 20 hours of counseling and he participated in a clinical assessment to determine his risk of reoccurrence.  The therapist who assessed Leonel gave him a good prognosis based on the fact that he had changed his lifestyle and has limited his use of alcohol.  It does not appear that

CFS 486
08/01

the nature of this crime would put children at risk.

**B. Adoptive Parent Assessment**

Sylvia and Leonel are motivated to adopt Miguel because they genuinely love him and want to provide him with a permanent home. They were not able to have biological children and turned to adoption as the way to build their family. Miguel has thrived in their care since being placed with them for foster care on 2/27/08. They have provide a loving, stable home for him since placement and have provided for all of his physical and emotional needs. Miguel is well loved and accepted by Sylvia and Leonel's extended family and he has become an integral part of their family.

Sylvia and Leonel have been provided with all non-identifying information regarding Miguel and they understand that he may have undiagnosed medical, mental and behavioral problems. They are prepared to deal with these issues as they come up in the future. Sylvia and Leonel are aware of how to access community resources and are aware of what resources are available should the need arise. Post adoption services have been discussed with Leonel and Sylvia and it has been explained how to access these services should the need arise after the adoption is complete.

There are no concerns regarding Sylvia and Leonel's ability to deal with Miguel's cultural and ethnicity issues as they are of the same race that is Hispanic.

The Castillo's report that Miguel has adjusted very well to living in their home and that this is the only home that he has known and that he is well loved and accepted by everyone that they comes in contact with. They fully understand and accept that separation and loss issues may arise in the future due to Miguel being separated from his birth family. They have said that if Miguel chooses to seek out his siblings in the future they would not be opposed to this.

Leonel and Sylvia Castillo completed Adoption Conversion training on 9/25/06.

**C. Description of Other Children in Home**

There are no other children in this home.

**D. Compliance of Home with Licensing Standards of Home of Relative Placement Guidelines**

Leonel and Sylvia Castillo were issued a foster care license (provider #459364) on 2/27/07 and this license is valid until 2/27/11. Since this license was issued they have complied with the licensing standards for foster homes and their home has always been in compliance. They have expressed to this worker that they plan to maintain their license after this adoption is complete and would accept other foster placements of young Hispanic children and they would be very open to adopting again.

## III.   Recommendations

### A. Summary of Adoptive Family's Strengths

CFS 486
08/01

It appears that Sylvia and Leonel are able to provide Miguel with a loving, nurturing adoptive home. He is very well cared for and it is obvious that they love him very much. and there is no reason to believe that they will not continue to do so in the future. Day care for Miguel is provided by either Sylvia's or Leonel's mother or other family members.

In the event of the incapacitation or untimely death of Sylvia and Leonel they plan to name Sylvia's parents, Hector and Guadalupe Valdez as guardian for Miguel. They live at 9328 S. Manistee St. in Chicago, IL. Guadalupe provides child care for Miguel while Sylvia works so he has a very good relationship with both of them. The Castillo's' plan to have their guardianship plans included in their will after the adoption is complete.

**B. Capacity of child to benefit from adoption by this family**
Miguel Lopez can benefit from having a loving, stable permanent home that the being adopted by Sylvia and Leonel can offer him. Monthly home visits were conducted to this home to monitor the placement of Miguel in this home by his caseworker and he was always observed to be well cared for and as stated previously in this report he has thrived in this placement and is developmentally on target for a child his age. There is no reason to believe that he will not continue to thrive in this adoptive home.

**C. Further Services or Training Needed**
There were no problems areas identified therefore no further training is needed.

**D. Recommendations Regarding Adoption Conversion**
Catholic Charities, Diocese of Joliet recommends that the adoption of Miguel Angel Lopez by Leonel and Sylvia Castillo will be in this child's best interest. Furthermore, Catholic Charities, Diocese of Joliet recommends Leonel and Sylvia Castillo as adoptive parents for this child and approves finalization of this adoption.

| | |
|---|---|
| _signature_, BSW | 8/11/08 |
| Permanency/Adoption Worker | Date Prepared |
| _signature_ | 8/11/08 |
| Supervisor | Date |

7

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT THOMAS,                )
                              )
              Plaintiff,      )
                              )
     v.                       )        Civil Action No. _____
                              )
PARTHA GHOSH, et al.,         )
                              )
              Defendants,     )

## ATTACHMENTS

| Contents | Pages |
|---|---|
| 1.  Plaintiff's Grievance filed 09-26-06 | 1-2 |
| 2.  Plaintiff's letter to Dr. Ghosh regarding xray 09-26-08 | 3 |
| 3.  Affidavit of inmate McLaurin, plaintiff's cellmate | 4 |
| 4.  Plaintiff received in mail from counselor, original griev. and copy of Memorandum from Dr. Ghosh. | 5-7 |
| 5.  Copy of the ONLY HCU pass received in month of October | 8 |
| 6.  Plaintiff's letter to Director of IDOC, dated 10-18-06 | 9 |
| 7.  Letter to ARB c/o Defendant Ford, appealing adverse grievance decision, including documents.  10-20-06 | 10-21 |
| 8.  Copy of HCU pass for lab work on 10-30-06 | 22 |
| 9.  Plaintiff letter to Defendant Halloran, CEO of Wexford requesting assistance in obtaining medical treatment | 23-24 |
| 10.  Copy of HCU pass for Dr. Ghosh's Clinic on 11-27-06 | 25 |
| 11.  Copy of HCU pass for xray for 11-29-06 | 26 |
| 12.  Copy of Dr. Ghosh Memorandum of 10-09-06 | 27 |
| 13.  Copy of Defendants Garcia and McCann's response to plaintiff's grievance, dated 10-17-06 | 28 |
| 14.  Plaintiff's to Dr. Ghosh regarding xray, dated 12-05-06 | 29 |
| 15.  Defendant Ford (ARB) decision on appeal, dated 01-25-2007 | 30 |
| 16.  Letter to Dr. Ghosh regarding results of xray, 03-16-07 | 31 |
| 17.  U of I Hospital Medical Records regarding finger injury | 32-59 |

was not listed in the paperwork that he possessed.

23. On September 25, 2006, plaintiff Thomas was once again
writted to the U of I Hospital in Chicago for further liver diagnosis.
Once again, an futile attempt was made to request a transportation
officer to either obtain paperwork from Dr. Ghosh, or take me to
the Emergency Room at U of I Hospital. Everyone I showed my
injured finger to declared that it "was obviously broken" but if
they did not have the paperwork, they cannot assist me in this
matter.

24. The following day, I prepared a Grievance (complaint)
and placed it into my counselor's hand. [See Attachments,
Thomas' Grievance]. I also prepared a letter to Defendant Ghosh
bringing this irregularity to his immediate attention. [See
Attachments].

25. On October 9, 2006, Defendant Ghosh wrote a Memorandum
to my counselor, Chris Cannon stating that "a pass has been
issued to bring the offender to HCU for evaluation". [See Attachment].
The same evening, I received through institutional mail, a pass
for lab work regarding my upcoming Hypertension Clinic appointment.
The lab pass was for October 10, 2006. [See Attachments].

26. On October 17, 2006, Defendant Tammy Garcia, Grievance
Officer, without any investigation into plaintiff Thomas' claim
of being deprived of an x-ray of his injured finger in a timely
fashion, conceded with Defendant Ghosh and replied "Per Dr. Ghosh,
Medical Director: A pass has been issued to bring the offender
to the HCU for evaluation. It appears that his grievance has
been resolved." [See Attachments]. In doing so, defendant Garcia
acted under the color of law depriving plaintiff Thomas of proper

- 6 -

medical care, and violating the Eighth and Fourteenth Amendment
in the process.

27.  On October 17, 2006, Defendant Terry L. McCann, Warden
signed-off on my grievance, stating that he received it on that
date and concurred with the Defendant Garcia's decision regarding
my blatant denial of prompt and proper medical care.  Defendant
McCann acted under the color of law, in his official and individual
capacity "duplicated" Defendant Garcia's erroneous response
alleging that "the matter has been resolved - being that a pass
was issued for plaintiff Thomas".  Neither defendants called,
checked or investigated whether or not defendant Ghosh actually
provided appropriate medical care to resolve plaintiff Thomas'
medical matter.  Defendant McCann violated the Eighth and Fourteenth
Amendment in the process.

28.  On October 19, 2006, Chris Cannon, Counselor, somehow
responded to plaintiff Thomas' grievance [See Attachments] stating
the identical response of Defendant Garcia and McCann.  It is quite
clear that Counselor Cannon made his response after Defendants
Garcia and McCann response, in direct conflict with the sequence
order and criteria.  The Chief Administrator Officer, in this
matter, Defendant McCann renders the final decision at Stateville
Correctional Center.

29.  On October 23, 2006, I appealed the Defendant's decision
to the Administrative Review Board for relief.

30.  On October 26, 2006, plaintiff Thomas was escorted to
the HCU for lab work (pre-surgery for scheduled transjugular
liver biopsy), while at the HCU, he ran into Suresh Gondalia, Med
Tech, whom expressed surprise when plaintiff Thomas told her that

- 7 -

his injured finger was not x-rayed yet.

31.  On November 27, 2006, plaintiff Thomas was escorted to the HCU for Defendant Ghosh's clinic appointment, regarding his liver ailment.  Plaintiff Thomas told Defendant Ghosh that he had written to him, filed a grievance because his finger is damaged, and fractured.  That defendant Williams seen his injured finger on August 26, 2006, and prescribed an x-ray to be taken at CRC. Defendant Ghosh stated that Defendant "Williams cannot order an x-ray for me".  Thomas further explained that due to his blatant error stating that he was issuing a pass for me and that the matter is resolved, I was deprived of prompt medical care and resulted in my finger being deformed.

32.  Plaintiff Thomas asserts that Defendant Ghosh, as each defendant in the aforegoing complaint, has showed deliberate indifference to his medical needs, and acted in the color of law, deprived plaintiff Thomas prompt and proper medical care, violating the Eighth and Fourteenth Amendment in the process.

33.  On Wednesday, November 29, 2006, plaintiff Thomas was finally transported to CRC to have an x-ray taken of his right ring finger.  It took approximately 104 days to obtain an x-ray to determine the damage of my injured finger.

34.  Each defendant that observed plaintiff Thomas' right-ring finger automatically felt that  his finger was severely damaged as required (non de minimis)   to comply with the criteria needed to establish "a serious injury" which defendants showed deliberate indifference to Thomas' medical needs.

35.  On December 5, 2006, plaintiff Thomas forwarded a letter to Defendant Ghosh regarding the november 29, 2006 x-rays taken of my injured finger.  Whether a medical plan or procedure would be initiated in this matter.  plaintiff received no response. (See Attachments).

36.  On April 27, 2007, plaintiff Thomas received through the institutional mail, the decision regarding the appeal of Grievance #1354.  Defendant Melony J. Ford, concurred with Defendant Garcia and McCann's concurrance of Defendant Ghosh's 'erroneous statement' that the matter has been resolved, a pass was sent for plaintiff to be evaluated.  In addition, Defendant Walker Jr. concurred with Defendant Ford's decision, each defendant's adverse decision blatantly deprived plaintiff Thomas of proper medical care.  (See Attachments... letter dated 01-25-07 from Defendant Ford).

37.  At a minimum, if either defendant would have investigated my claim, rather than take Defendant Ghosh's statement at face-value, they would have easily discovered that 'the matter was not  resolved, nor was a pass sent to plaintiff in this regard'.  In fact, plaintiff finger was not x-rayed until November 29, 2006.

38.  On March 16, 2007, plaintiff Thomas forwarded a letter to Defendant Ghosh "once again" in an attempt to obtain information regarding the results of the xrays taken on 11-29-06, and whether a plan will be rendered to correct the deformity in plaintiff's finger.  Received no response. [See Attachments].

39.  Plaintiff Thomas contends that Defendant Kevin C. Halloran, acted under the color of law, in his official and individual capacity, knew of plaintiff's injury and failed to

- 9 -

contact the other defendants involved, after being contacted by
plaintiff regarding his damaged finger, attempting to remedy this
situation and avoid any possible future damage to plaintiff's finger.

40.   As a result of the defendants' reckless, callous,
grossly negligent and exhibited deliberate indifference to plain-
tiff Thomas' medical needs, and the unnecessary delay in obtaining
an xray, from August 15th up until November 29th, gave cause for
plaintiff to undergo two unsuccessful surgical procedures to
reconstruct his right ring finger.  Plaintiff Thomas finger is
presently in a cast.  A third attempt to correct the deformity is
being considered by the orthopedic doctors. SEE ATTACHMENT,  The
surgeries took place on November 5, 2007 and February 25, 2008,
performed at the University of Illinois Hospital in Chicago.


VI.

Defendant's Knowledge

41.   Plaintiff Thomas incorporates by reference paragraphs
4-40 as though fully set forth in this Count I.

42.   Plaintiff Thomas contacted defendant Ghosh on numerous
occassions regarding his erroneous response to plaintiff's grievance
requesting an xray.  SEE ATTACHMENTS.  Records clearly show that
defendant Ghosh stated that the offender will be sent a pass for
evaluation, and the matter is resolved.  A pass was not sent,
causing me to endure pain and anguish until November 25, 2006,
when I was finally face-to-face with defendant Ghosh enabling me
to show him my deformed finger and explain that he did not follow-
up on ordering an xray to determine the damage of my finger.

43.   Plaintiff Thomas contacted defendant Walker Jr. in a

letter dated 10-18-06, bringing to defendant Walker's immediate attention the irregularities taken place here at Stateville Correctional Center regarding plaintiff's inability to obtain prompt medical care.  That defendant Walker acted under the color of authority of the law of the State of Illinois, or in active concert  with such defendants who are or were so acting when he concurred with their erroneous response to plaintiff's grievance.

44.  Defendant Walker failed to adhere to Section 504.850 of the Illinois Administrative Code, which states in pertinent part; Section 504.850 Appeals

> b.  The Director shall review the grievance and the responses of the Grievance Officer and Chief Administrative Officer and determine whether the grievance requires a hearing before the Administrative Review Board....

45.  Defendant Walker, Ford, McCann, Ghosh, Halloran and Garcia's inexcusable behavior constitutes deliberate indifference to plaintiff Thomas' medical needs and violating his Eighth Amendment right to cruel and unusual punishment.

46.  Defendant Kevin C. Halloran, Chief Executive Officer of Wexford Health Sources, Inc. was contacted by plaintiff Thomas in a letter dated 11-06-06 in a last ditch effort in obtaining an xray to determine the extent of damage involving his deformity whether surgery is needed, requested defendant Halloran's assistance in obtaining prompt medical care at a facility that is contracted through his business.  SEE ATTACHMENTS.  Defendant Halloran did not respond to plaintiff's communication.

47.  Defendant Melody J. Ford, Chairperson/Coordinator of the Administrative Review Board was contacted by plaintiff Thomas

- 11 -

Defendant Walker Jr. duties and responsibilities as the Director of IDOC includes, but not limited to 730 ILCS 5/3-8-8 which provides as follows.

> § 3-8-8.  Grievances. (a) The Director shall establish procedures to review the grievances of committed persons.  The Director may establish one or more administrative review boards within the Department to review grievances. A committed person's right to file grievances shall not be restricted.  Such procedure shall provide for the review of grievances by a person or persons other than the person or persons directly responsible for the condition or actions against which the grievance is made.
>
> (b)  Such procedures shall provide that a record of such grievance and any decision made with respect to it shall be preserved for a period of one year.
>
> (c)  Such procedure shall allow committed persons to communicate grievances directly to the Director or some person designated by the Director outside of the institution or facility where the person is confined.
>
> (d)  All committed persons shall be informed of the grievance procedure established by the Department and they shall be available to all committed persons.
>
> (e)  Discipline shall not be  imposed because of the grievance procedure.

In accordance with 730 ILCS 5/3-8-8(a) and (c), defendant Walker Jr., and his subordinate defendants, Ford and McCann, were aware of plaintiff Thomas' injury and undue delay of proper medical care, either through communications through the mail or the grievance system in which defendant Walker Jr. has the final judgement.  Furthermore, defendant Walker Jr., and defendant Halloran, CEO of Wexford [whom plaintiff Thomas contacted via mail] were joined together through a binding two-year contract. violating plaintiff Thomas' constitutional Eighth Amendment right.



in a letter dated 10-20-06, whereas plaintiff appealed the adverse erroneous decisions of Defendants Ghosh, Garcia, Williams and McCann in compliance with Section 504.850, which states in pertinent part.

Section 504.850   Appeals

> a.  If, after receiving the response of the Chief
>     Administrative Officer, the offender stills
>     feels that the problem, complaint or grie-
>     vance has not been resolved to his or her
>     satisfaction, he or she may appeal in writing
>     to the Director within 30 days after the
>     decision.  Copies of the grievance officer's
>     report and chief administrative officer's
>     decision should be attached.

48.  Thus, defendant Ford rendered a decision acting under the color of the law deprived plaintiff of prompt medical care by 'rubber-stamping' defendants McCann, Garcia, Ghosh aand Williams erroneous response to plaintiff's medical needs.  This inexcusable behavior constitutes deliberate indifference to his medical needs and in violation of the Eighth Amendment of the United States Constitution.

49.  Defendants McCann and Garcia were aware of plaintiff's grievance regarding this matter, and failed to properly review his complaint prior to conceding someone other than themselve's version of events and responses thereto.  Had either defendant simply telephoned defendant Ghosh or the HCU and inquire whether there was a follow-up to my medical needs as Dr. Ghosh proclaimed in his response to my grievance, they would have discovered that I was never seen, and my finger probably would not be as damaged as it presently is.  their actions were deliberate difference to plaintiff's medical need, while acting under color of law, violated his Eighth Amendment right as guaranteed by the U.S. Constitution.

- 12 -

50.    At all times relevant herein, Defendants have acted under the color of authority of the law of the State of Illinois or in active  concert with such Defendants who are or were so acting.

## VII.

### Exhaustion

51.   Plaintiff Thomas filed his initial grievance on September 26, 2006, siad grievance was numbered as 1354.   Defendant Ghosh responded to the grievance on October 9, 2006 and the Grievance Officer, Defendant Garcia responded on October 17, 2006, and Defendant McCann did so also on that date.   Counselor Cannon somehow  responded on October 19, 2006 and plaintiff Thomas appealed these adverse decisions on October 20, 2006 to the ARB. On January 25, 2007, the ARB denied plaintiff relief. SEE ATTACHMENTS.

## VIII.

### Cause of Action

52.   Plaintiff Thomas support the following claims by reference to the previous paragraphs of this complaint.

### COUNT I

53.   The delibereate indifference of the defendant Ghosh's blatant denial of plaintiff Thomas medical need, the three and a half month delay in obtaining an xray to determine the extent of his injury, resulted in substantial damage to plaintiff's finger, including, but not limited to, plaintiff's inability to bend his finger, the pain and anquish involved in undergoing two surgical procedures, and is scheduled for another corrective surgical procedure

- 13 -

54. Defendant Ghosh prevented plaintiff Thomas from obtaining an xray for 107 days, his erroneous response to plaintiff's grievance was concurred to by all the remaining defendants, their deliberate indifference to plaintiff Thomas' medical needs violates the Eighth Amendment of the United States Constitution.

IX

Prayer for Relief

WHEREFORE, plaintiff Robert Thomas respectfully prays that this Court will grant him relief, due to defendants' reckless indifference to his medical needs which deprived him of prompt and proper medical care, resulting in plaintiff's inability to bend or use hisright ring finger. Plaintiff's right-ring finger will not bend. Plaintiff has underwent two corrective surgery procedures in a futile attempt to correct the deformity. His finger is presently in a cast, another surgical procedure is being comtemplated.

Plaintiff Thomas prays that this Court will grant him actual and punitive damages, as follows;

A.  Defendant Ghosh in the amount of $50,000 for compensatory damages, and 75,000 in punitive damages.

B.  Defendant Halloran, in the amount of 50,000 for compensatory damages, and $75,000 in punitive damages;

C.  Defendants Walker Jr., Ford, McCann, Garcia and Williams, in the amount of $20,000 for compensatory damages, and $40,000 in punitive damages from each defendant.

respectfully submitted,

*Robert Thomas*

Robert Thomas N53969
Stateville Correctional Center
post Office Box 112
Joliet, Illinois 60434-0112

DATED: August 8, 2008        - 14 -

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| PARTHA GHOSH, in his individual | ) | JURY TRIAL DEMANDED |
| capacity as Medical Director; | ) | |
| KEVIN C. HALLORAN, in his indi- | ) | |
| vidual capacity as CEO of Wex- | ) | |
| ford Health Source, Inc.; RODGER | ) | |
| WALKER JR. in his individual | ) | |
| capacity as IDOC Director; and | ) | |
| MELONY J. FORD, in her indivi- | ) | |
| dual capacity as ARB Coordinator | ) | |
| TERRY L. McCANN, in his indivi- | ) | |
| dual capacity as Warden of SCC; | ) | |
| LATANYA WILLIAMS, in her indivi- | ) | |
| dual capacity as Physician's | ) | |
| Assistant; TAMMY GARCIA, in her | ) | |
| individual capacity as Grievance | ) | |
| Officer at SCC. | ) | |

COMPLAINT


INTRODUCTION

This is a complaint for actual and punitive damages brought
under 42 U.S.C. §1983, in connection with the deliberate indiffe-
rence to plaintiff Robert Thomas' medical needs by the defendants.
Plaintiff Thomas is a prisoner confined at Stateville Correctional
Center, whom sustained a "non-de-minimis" finger injury.  The
unnecessary delay of 107 days to obtain an xray resulted in
subtantial damage to plaintiff's finger, resulting in two corrective
surgery attempts to correct the deformity.  The defendant's
deliberate indifference to plaintiff Thomas' medical needs violates
his Eighth Amendment's prohibition against cruel and unusual punish-
ment.

- 1 -

I.

## JURISDICTION

1.   The jurisdiction of the Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq.

2.   The court also has jurisdiction over plaintiff Thomas' state-law claims, pursuant to 28 U.S.C. §1367.

II.

## VENUE

3.   This is an appropriate venue because all of the acts alleged herein occurred within the County of Will, State of Illinois.

4.   All of these acts alleged herein were in the course and scope of their employment and under the color of law.  These defendants are sued in their individual capacities.

III

## PARTIES

5.   Plaintiff Robert Thomas, was at all relevant times, incarcerated at Stateville Correctional Center in Joliet, IL.

6.   Defendant Partha Ghosh was at all relevant times, acting under the color of law, as a licensed medical doctor in the State of Illinois, and employed by the Illinois Department of Corrections, [hereinafter referred to as IDOC], is sued in his individual capacity.

7.   Defendant Kevin C. Halloran was at all relevant times, Chief Executive Officer of Wexford Health Sources, Inc. [hereinafter referred to as Wexford], which provides comprehensive health care

- 2 -

services (including medical, mental health, dental, pharmacy and utilization management services) to Stateville Correctional Center, while acting under the color of law.  He is sued in his individual capacity.

8.   Defendant Rodger E. Walker Jr. was at all relevant times acting under color of law as the Director and employed by IDOC.  He is responsible for conditions and operations at Stateville Correctional Center.  See 730 ILCS 5/3-7-2(a).  Defendant Walker is the final policy maker for IDOC.  He is sued in his individual capacity.

9.   Defendant Melony J. Ford was at all relevant times acting under the color of law as Coordinator/Chairperson of the Administrative Review Board [hereinafter referred to as ARB], works in concert with defendant Walker regarding inmate issues. Defendant Ford is employed by IDOC snd she is a decision maker for defendant Walker.  She is sued in her individual capacity.

10.   Defendant Terry L. McCann was at all relevant times acting under the color of law as Warden of Stateville Correctional Center, and employed by IDOC.  He is responsible for the conditions and operations at the facility:  See 730 ILCS 5/3-7-2a.  Defendant McCann is sued in his individual capacity.

11. Defendant Tanya Williams was at all relevant times acting unsed the color of law, as physician's assistance at Stateville Correctional Center, is employed by the IDOC and contracted through Defendant Halloran's business, Wexford Health Source, and is being sued in her individual capacity.

12.   Defendant Tammy Garcia was at all relevant times acting under color of law, as Grievance Officer at Stateville

ILLINOIS DEPARTMENT OF CORRECTIONS
RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report |
|---|

**Date Received:** October 17, 2006          **Date of Review:** October 17, 2006          | Grievance # 1354

**Committed Person:** Robert Thomas                                                         ID#: N53969

**Nature of Grievance:** Medical Tx

**Facts Reviewed:** Grievant alleges he was unable to get a X-Ray on his finger.

**Relief Requested:** to have my finger x-rayed as soon as possible to determine the damage and obtain the proper medical attention in a timely fashion.

Per Dr. Ghosh, Medical Director:  A pass has been issued to bring the offender to the HCU for evaluation.

It appears that this grievance issue has been resolved.

This Grievance Officer has no medical expertise or authority to contradict the doctor's recommendation/diagnosis.

**Recommendation:**  No further action necessary at this time.

**Tammy Garcia**
_____          _____
Print Grievance Officer's Name                Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** _10-17-06_     ☒ I concur          ☐ I do not concur          ☐ Remand

**Comments:**

_____                                    _10-17-06_
Chief Administrative Officer's Signature                                              Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____          _N53969_          _10-22-06_
Committed Person's Signature                ID#                      Date

* Final Report *

| | |
|---|---|
| Result Type: | Orthopedic Note |
| Result Date: | January 15, 2008 5:19 PM |
| Result Status: | Modified |
| Result Title: | Surgery Plan |
| Performed By: | Howard RN, Vanessa on January 15, 2008 5:22 PM |
| Verified By: | Howard RN, Vanessa on January 15, 2008 5:22 PM |
| Encounter info: | 80350449-0383, UICMC. OUTPATIENT, - 1/15/2008 |

## * Final Report *
## Document Contains Addenda

Surgery Plan
Pt to be scheduled for surgery: DOS: 02/25/08  w/Dr.Boonmee
Dx. s/p (R) hand/RF Hunter I   Procedure: (R) hand/RF Hunter II. Pre-op tests: cbc, coags, LFT(s), Ecg.
Pt is an inmate at Stateville IL DOC. No dates or times given to pt or guards.
Surgery plan faxed to Stateville IL DOC, medical & UIC inmate coordinator, B.Harvey.
VHRN.

**Addendum by Howard RN, Vanessa on January 15, 2008 6:38 PM**
IL DOC facility notified to stop asa 1 wk pta/surg.
VHRN.

**Completed Action List:**
* Perform by Howard RN, Vanessa on January 15, 2008 5:22 PM
* Sign by Howard RN, Vanessa on January 15, 2008 5:22 PM
* VERIFY by Howard RN, Vanessa on January 15, 2008 5:22 PM
* Sign by Howard RN, Vanessa on January 15, 2008 6:38 PM
* Modify by Howard RN, Vanessa on January 15, 2008 6:38 PM

57.

* Final Report *

anastomosis at the level just proximal to the A1 pulley as to decrease the
amount of adhesions. Using figure-of-8 sutures, the distal aspect of the
palmaris tendon graft was then sutured into the proximal aspect of the Hunter
rod. The Hunter rod was then removed out the distal segments of the new
sheath. This brought our tendon out distally at the level of the distal
phalanx. Likewise, the FDP tendon at the level of the proximal phalanx, this
was sutured to the proximal aspect of our tendon graft. The FDP was then
retracted with sheath along with our tendon graft through the incision in the
distal palm. The excess FDP tendon was then excised. The figure-of-8 sutures
were removed. The tendon graft was then weaved into the intact FDP tendon
proximally using the technique described by Pulvertaft in the end-weave
fashion was performed without difficulty.

We turned our attention to the excision of the distal graft. The patient did
not have sufficient FDP tendon at the distal phalanx. Decision was made to
fix the FDP tendon to the distal phalanx through drill tunnels and tieing over
a button. We placed two 0.45-mm K-wires through the proximal aspect of the
distal phalanx angulated dorsally and distally through the nail plate. Using
a 3-0 nylon suture, a Krackow stitch was placed in the distal aspect of our
tendon graft. One at a time, each of the 0.45 K-wires was removed in this
tunnel. We followed with a Keith needle holding each strand of our Krackow
suture. The FDP tendon was then appropriately tensioned, so that the resting
position lie in between that of the small finger and long finger. Again, this
was tied over a button on the dorsal aspect of the nail plate. The wound was
then copiously irrigated with sterile saline. The apices of the Brunner
incision were closed using apical stitches. The remainder of the length was
closed using running 5-0 Vicryl sutures. The curvilinear incision in the
wrist crease as well as the midforearm volar incision were both additionally
closed using interrupted horizontal locked mattress sutures with 5-0 Vicryl.
The wounds were all dressed with Xeroform, 4 x 4's and overwrapped with a
Kling. The patient was placed in a dorsal blocking cast that extended out to
the fingertips with the wrist in approximately 10 degrees of volar angulation
in the MCPs at 90 degrees of volar angulation. Again, this was extended into
a cast and the cast was univalved for swelling. Dr. Boonmee was present and
scrubbed for the entire procedure. The patient was transferred to the gurney
and back to same-day surgery in a stable condition.

DD: 02/25/2008
DT: 02/26/2008
AR/cym
JOB:739770

**Completed Action List:**
* Perform by Chunprapaph MD, Boonmee on February 25, 2008 6:02 PM
* Transcribe by  on February 26, 2008 2:43 AM

Printed by:    Johnson , Christal
Printed on:    4/30/2008 3:37 PM

| | |
|---|---|
| Result Type: | Operative Report |
| Result Date: | February 25, 2008 12:00 AM |
| Result Status: | Auth (Verified) |
| Result Title: | Operative Report- ATTENDING:.Boonmee Chunprapaph, M.D. |
| Performed By: | Chunprapaph MD, Boonmee on February 25, 2008 6:02 PM |
| Verified By: | Chunprapaph MD, Boonmee on February 28, 2008 6:32 AM |
| Encounter info: | 80350449-0385, UICMC. SURGI-CENTER, - 2/25/2008 |

## * Final Report *

### Operative Report- ATTENDING:.Boonmee Chunprapaph, M.D.

University of Illinois Medical Center at Chicago

Report of Operation          Patient: THOMAS, ROBERT

DICT: ALEX ROMERO, MD          MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD  Date of Surgery: 02/25/2008

PREOPERATIVE DIAGNOSIS:  Right ring finger flexor digitorum profundus
disruption, status post Hunter rod placement.

POSTOPERATIVE DIAGNOSIS:  Right ring finger flexor digitorum profundus
disruption, status post Hunter rod placement.

SURGEON(S): BOONMEE CHUNPRAPAPH, MD

ASSISTANT(S):

RESIDENT: ALEX ROMERO, MD

PROCEDURE:  Removal of Hunter rod and  right palmaris longus tendon graft to FDP
of ring finger.

ANESTHESIA: Regional.

IV FLUIDS: Per anesthetic record.

TOURNIQUET TIME:  120 minutes.

ESTIMATED BLOOD LOSS:  10 mL.

PATHOLOGY: None.

IMPLANTS: None.

GRIEVANCE OFFICER:

On October 17, 2006, the Grievance Officer signed-off on my grievance stating the following:

> "Per Dr. Ghosh, M.D., a pass has been issued to bring offender to HCU for EVALUATION."

> "It appears that this grievance has been resolved."

NOTICE:  the grievance that the Grievance Officer signed-off on and/or responded to DOES NOT have the Counselor's Response completed... there is a stamp from the HCU.. How could the Grievance Officer make an valid decision without first permitting the Counselor to respond to the grievance as proscribed by Departmental Rules, amounting to a procedural due process violation.

CHIEF ADMINISTRATOR:

On October 17, 2006, the Chief Administrator concurred with the Grievance Officer's response.  As mentioned above, his response was administered without a response from the counselor... amounting to a procedural due process violation.

CONCLUSION:

I'm in total disagreement with Dr. Ghosh's analysis and the Grievance Officer's Response.  THIS MATTER HAS NOT BEEN RESOLVED, on the contrary, this matter has been ignored by the HCU staff and their deficiencies is being overlooked and "rubber-stamped" in the process.  Records clearly show that my previous EVALUATION took place on 8-26-06 (nearly 2 months ago) whereas an x-ray was prescribed to determine the extent of my injury.  Dr. Ghosh's failure to mention this important factor should give credence to the manner in which this matter was and is being handled.  The delay in obtaining medical treatment has caused the deformity of my right ring finger and contributed to a clear and apparent deliberate difference and equal protection violation in that several inmates were transported to NRC a couple of Sundays ago, specifically for the purpose of having x-rays taken.  In addition, I was writted to U of I Hospital (Chicago) on two separate occassions for unrelated reasons during the inception of my attempts to obtain proper medical attention.  Therefore, I humbly request a formal hearing regarding this matter.

*Robert Thomas*
Robert Thomas N53969
Stateville

cc:  personal file

**University of Illinois Medical Center at Chicago**

SURGICENTER RECORD

**NURSING CARE NOTES/ADMISSION ASSESSMENT**

80350449-0389
THOMAS, ROBERT
DOB 04-02-50          M   O
09/28/2008
PLACE PATIENT LABEL HERE

DATE 2/25     DATE OF SURGERY 2/25/08

PROPOSED OPERATION / PROCEDURE

**PREOPERATIVE CHECKLIST**

| | YES | N/A | OTHER | | YES | N/A | OTHER |
|---|---|---|---|---|---|---|---|
| OPERATIVE CONSENT | | | | UA / CS | CONSULTATIONS: | | | |
| BLOOD CONSENT | | | | PT/PTT | ANESTHESIA | | | |
| TUBAL STERILIZATION CONSENT | | | | | PEDIATRIC | | | |
| ANESTHESIA CONSENT | | | | SICKLE CELL SCREEN | MEDICINE | | | |
| | YES | N/A | OTHER | ELECTROPHORESIS | CARDIOLOGY | | | |
| H & P | | | | HEPAT TIS ANTIGEN | SIGNATURE | | | |
| CHEST X-RAY | | | | SMOS / URINE | | | | |
| EKG | | | | PULMONARY FUNCT / ABG | | | | |
| CLINICAL CHEMISTRY | | | | OTHER | | | | |
| CBC | | | | | | | | |

**ADMISSION ASSESSMENT**

| DATE 1/25 | TIME 1125 | SENSORIUM | LANGUAGE | VIA: AMBULATORY  W/C  CART  WITH CANE / CRUTCHES  CARRIED  WALKER |
|---|---|---|---|---|

ALLERGIES   LATEX ALLERGY   NO KNOWN ALLERGY          ACCOMPANIED BY: Correctional officers

PAST MEDICAL HISTORY / SURGICAL HISTORY            CALL FOR RIDE   YES   NO

PHONE / NAME

OPERATIVE SITE MARKED   YES   NO

Surgical Site Verification   Yes   No

**ADMITTING VITALS**

| B/P 148/95 | PULSE | RESP | TEMP | SATURATION 98% | HT (INCHES) 6'4 | WT (LBS) 281 |
|---|---|---|---|---|---|---|

**MEDICATIONS (*MEDS TAKEN)**          **BELONGINGS  Signature**

LOCKER #    WITH FAMILY

WITH PATIENT

DENTURES REMOVED

GLASSES OFF / CONTACTS REMOVED

PROSTHESIS REMOVED / INFORMED

UNDERGARMENTS REMOVED/PAMPER

JEWELRY  BODY PIERCING  REMOVED / GIVEN TO PT

NPO SINCE                MEDICATIONS RECONCILED

PERSONAL HABITS: ETOH   HANDICAP / SPECIAL PRECAUTIONS / DISABILITY
SMOKING   ILLICIT DRUGS

ID BANDS  R / L  WRIST  /  R / L  ANKLE

| | VIA: W/C  CART  CRIB  WAGON |
| WITH  O2  SANDBAG |
| ACCOMPANIED BY |
| ANES  SERVICE |
| TRANSPORTER  NURSE |

VERBALIZES UNDERSTANDING  DEMONSTRATES

BARRIERS NOTED   PATIENT / PARENT / FAMILY

SIGNIFICANT OTHER

PAIN SCALE   NO PAIN  0 1 2 3 4 5 6 7 8 9 10   WORST PAIN

WONG-BAKER SCALE

LOCATION                Quality of Pain

DISTRACTION   POSITIONING   CM-CONTACT-HEAT

RELAXATION   ICE-RIGHT

**PREPARATIONS / PREOPERATIVE MEDS**

IV SOLUTION / AMOUNT LR 1000 cc  # 20 g    IV STARTED BY

SITE LH   CATH SIZE # 20

| PRE-OP ACCU-CHECK | | UNG G | POSITIVE | NEGATIVE | |
|---|---|---|---|---|---|

| TIME | MEDICATION | DOSE | ROUTE | GIVEN BY | TIME | MEDICATION | DOSE | ROUTE | GIVEN BY |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

NURSE'S NOTES

REPORT OFF SIGNATURE

SIGN OUT RN SIGNATURE

UI - 1100 Rev. 09/06

38

ILLINOIS DEPARTMENT OF CORRECTIONS

## OFFENDER'S GRIEVANCE

| Date: SEPT. 26, 2006 | Offender: *(Please Print)* ROBERT THOMAS | ID#: N53969 |
|---|---|---|

| Present Facility: STATEVILLE | Facility where grievance issue occurred: STATEVILLE |
|---|---|

NATURE OF GRIEVANCE

Received
Grievance Office
OCT 3 2 2006
STA.# 1354

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Disciplinary Report. _____ / _____ / _____
        Date of Report
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☒ Medical Treatment
- ☐ HIPAA
- ☐ Disability
- ☐ Other *(specify)* _____
        Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: On Tuesday, August 15, 2006, while closing my celldoor
I injured my right ring finger. My finger became swollen and my
my fingernail had bruised blood in it. I experienced a huge amount
of pain. I soaked my finger in cold water for a substantial amount of
time. I was waiting to catch a Med Tech on the gallery, but never
did. Thereafter, the prison was on lockdown. During this period, I
continued soaking my hand and taking aspirin that were previously
prescribed to me to relieve the pain. The swelling disappeared,
clearly showing a disformity in my finger. On August 25, 2006, a
Med Tech delivered precription medication to my cellmate and I [continue]

Relief Requested: TO HAVE MY FINGER X-RAYED AS SOON AS POSSIBLE TO DETERMINE
THE DAMAGE AND OBTAIN THE PROPER MEDICAL ATTENTION IN A
TIMELY FASHION.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| *Robert Thomas* | N53969 | 9 / 26 / 06 |
|---|---|---|
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

---

### Counselor's Response (if applicable)

Date Received: _____ / _____ / _____

☐ Send directly to Grievance Officer　　☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 52794-9277.

Response: _____

RECEIVED
SEP 27 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

| Print Counselor's Name | Counselor's Signature | Date Response Sent |
|---|---|---|

---

### EMERGENCY REVIEW

Date Received: _____ / _____ / _____

Is this determined to be of an emergency nature?

- ☐ Yes; expedite emergency grievance
- ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date |
|---|---|

# Orthopedic Note

THOMAS, ROGER - 80350449

* Final Report *

DD: 01/15/2008
DT: 01/16/2008
OB/cym
JOB:680417

1

**Completed Action List:**
* Perform by Barmada PA, Owen on January 15, 2008 4:06 PM
* Transcribe by on January 16, 2008 5:27 AM
* Sign by Barmada PA, Owen on January 16, 2008 10:36 AM  January 16, 2008 10:36 AM
* VERIFY by Barmada PA, Owen on January 16, 2008 10:36 AM

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: SEPT. 26, 2006 | Offender: (Please Print) ROBERT THOMAS | ID#: N53969 |
|---|---|---|

| Present Facility: STATEVILLE | Facility where grievance issue occurred: STATEVILLE |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ Disability
☐ Staff Conduct    ☐ Dietary    ☒ Medical Treatment    ☐ HIPAA
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☐ Other (specify) _____

☐ Disciplinary Report: ___/___/___
       Date of Report            Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
     Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     Chief Administrative Officer, only if EMERGENCY grievance.
     Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
     administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
     Administrative Officer.

Brief Summary of Grievance: On Tuesday, August 15, 2006, while closing my celldoor
I injured my right ring finger. My finger became swollen and my
my fingernail had bruised blood in it. I experienced a huge amount
of pain. I soaked my finger in cold water for a substantial amount of
time. I was waiting to catch a Med Tech on the gallery, but never
did. Thereafter, the prison was on lockdown. During this period, I
continued soaking my hand and taking aspirin that were previously
prescribed to me to relieve the pain. The swelling disappeared,
clearly showing a disformity in my finger. On August 25, 2006, a
Med Tech delivered precription medication to my cellmate and I [continue]

Relief Requested: TO HAVE MY FINGER X-RAYED AS SOON AS POSSIBLE TO DETERMINE
THE DAMAGE AND OBTAIN THE PROPER MEDICAL ATTENTION IN A
TIMELY FASHION.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Robert Thomas        N53969        9 / 26 / 06
Offender's Signature            ID#            Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 9 / 26 / 06    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: Dr Ghosh states: person has been issued to bring the
offender to HCU for evaluation.

CANNON                           10 / 19 / 06
Print Counselor's Name            Counselor's Signature            Date of Response

---

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature?    ☐ Yes: expedite emergency grievance
                                     ☐ No: an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____        ___/___/___
Chief Administrative Officer's Signature        Date

ILLINOIS DEPARTMENT OF CORRECTIONS
OFFENDER'S GRIEVANCE (Continued)

showed her my deformed finger. She told me that I would be
called to the Health Care Unit the following day. On August 26,
2005, I went to the H.C.U. Emergency Room and the doctor had a
splint placed on my finger, gave me some ibuprohens and scheduled
me to be taken to NRC to have an xray taken because there is no
available xray technician at Stateville Correctional Center, nor
does the xray machine works properly. I WAS NOT taken to NRC to
obtain an xray. As a matter of fact, I have been writted TWICE
to the U. of I. Hospital for liver testing since this incident
occurred, on September 18th and 25th, 2006. I asked transportation
officers could they return to the Health Care Unit and ask if I
could be taken to the Emergency Room at U. of I. Hospital while
we were there. I was told that if they did not have "paperwork"
for me go to the Emergency Room, they cannot take me there. At
this hour, I still have not had an xray to determine WHY my right
ring finger is deformed as it is.

According to Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285,
50 L.Ed.2d 251 (1976), my Eighth Amendment rights are being
violated. The U.S. Supreme Court In Estelle stated:

"[D]eliberate indifference to serious medical needs of
prisoners constitutes the "unnecessary and wanton inflic-
tion of pain" proscribed by the Eighth Amendment. This
is true whether the indifference is manifested by
prison doctors in their response to the prisoner's need
or by prison guards in intentionally denying or delaying
access to medical care or intentionally interfering with
the treatment once prescribed. Regardless of how
evidenced, deliberate indifference to a prisoner's
serious illness or injury states a cause of action
under §1983."

I intend to file civil actions in this matter.

RECEIVED
SEP 27 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

*R.J.*

STATEVILLE CORRECTIONAL CENTER
Notification Of Appointment to HCU                    Page#_____

Name __Thomas_____  Number __N53969__  Date __10/9/06__

Cell# __C4-7__  Time to Report __8:30__  Assignment _____

| | | | |
|---|---|---|---|
| X Lab | __ X-Ray | __ Dietician | __ Seizure Clinic | __ Other |
| __ E.R. | __ OPHTH | __ Infirm Adm | __ Diabetic Clinic | |
| __ P.T. | __ ORTHO | __ M.D. in E.R. | __ Hypertensive Clinic | |
| __ OPT | __ Dental | __ Asthma Clinic | __ Infec. Control Nurse | |
| __ POD | __ Physicals | __ Surgery Clinic | __ Mental Health | _____ |

Special Instructions:

__ NPO -(Nothing By Mouth After 12:00 Midnight)

_____

__ I Accept This Pass_____
                              Inmate Signature

__ I Refuse This Assignment _____
                              Inmate Signature
If you are on a psychotropic medication, This will be discontinued or
Tapered off.  If you do not come to your next scheduled appointment.

__ Reason for Refusal_____

Witness _____
                              CMT Signature

** If You fail to keep this appointment (NO SHOW) you will have to  **
        Re-schedule your own appointment thru the CMT.

__ No Show

_____

Attempts to deliver this pass made at the following times:

P.N.'S_____ Reason not delivered_____

Midnights_____ Reason Not delivered _____

__ R.N. Notified of inability to deliver Pass
Signature of CMT_____ P.M._____ M.N._____ A.M.
Signature of R.N._____ P.M._____ M.N._____ A.M.

_____

Time inmate departed Assignment_____ Officer_____
TIME Inmate arrived at HCU _____ Officer_____
Time Inmate departed HCU _____ Officer_____
Time Inmate Arrived Assignment_____ Officer_____

IL 426- DCA 2234  Revised 04/93                 White-- Inmate
                                                Yellow--Provider

DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date SEPT. 26, 2006 | Offender (Please Print) ROBERT THOMAS | | ID# N53969 |
|---|---|---|---|

| Present Facility STATEVILLE | Facility where grievance issue occurred: STATEVILLE |
|---|---|

Received Grievance Office

OCT 1 7 2006

STA # 1354

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Disciplinary Report ___/___/___
  Date of Report
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☒ Medical Treatment
- ☐ Restoration of Good Time
- ☐ Disability
- ☐ HIPAA
- ☐ Other (specify) ___

Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
Administrative Officer.

Brief Summary of Grievance: On Tuesday, August 15, 2006, while closing my celldoor
I injured my right ring finger. My finger became swollen and my
my fingernail had bruised blood in it. I experienced a huge amount
of pain. I soaked my finger in cold water for a substantial amount of
time. I was waiting to catch a Med Tech on the gallery, but never
did. Thereafter, the prison was on lockdown. During this period, I
continued soaking my hand and taking aspirin that were previously
prescribed to me to relieve the pain. The swelling disappeared,
clearly showing a disformity in my finger. On August 25, 2006, a
Med Tech delivered precription medication to my cellmate and I [continue]

Relief Requested: TO HAVE MY FINGER X-RAYED AS SOON AS POSSIBLE TO DETERMINE
THE DAMAGE AND OBTAIN THE PROPER MEDICAL ATTENTION IN A
TIMELY FASHION.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self

| Robert Thomas | N53969 | 9 , 26 , 06 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received ___/___/___

☐ Send directly to Grievance Officer
☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: ___

RECEIVED

SEP 27 2006

STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

Print Counselor's Name ___          Counselor's Signature ___          Date ___

---

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature?

☐ Yes, expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature ___          Date ___

Distribution: Master File; Offender          Page 1          DOC 0046 (Rev 3/2005)

showed her my deformed finger. She told me that I would be
called to the Health Care Unit the following day. On August 26,
2005, I went to the H.C.U. Emergency Room and the doctor had a
splint placed on my finger, gave me some Ibupobens and scheduled
me to be taken to NRC to have an xray taken because there is no
available xray technician at Stateville Correctional Center, nor
does the xray machine works properly.  I WAS NOT taken to NRC to
obtain an xray.  As a matter of fact, I have been writted TWICE
to the U. of I. Hospital for liver testing since this incident
occurred, on Septmeber 18th and 25th, 2006.  I asked transportation
officers could they return to the Health Care Unit and ask if I
could be taken to the Emergency Room at U. of I. Hospital while
we were there.  I was told that if they did not have "paperwork"
for me go to the Emergency Room, they cannot take me there. At
this hour, I still have not had an xray to determine WHY my right
ring finger is deformed as it is.

According to Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285,
50 L.Ed.2d 251 (1976), my Eighth Amendment rights are being
violated.  The U.S. Supreme Court In Estelle stated:

"[D]eliberate indifference to serious medical needs of
prisoners constitutes the "unnecessary and wanton inflic-
tion of pain" proscribed by the Eighth Amendment. This
is true whether the indifference is manifested by
prison doctors in their response to the prisoner's need
or by prison guards in intentionally denying or delaying
access to medical care or intentionally interfering with
the treatment once prescribed. Regardless of how
evidenced, deliberate indifference to a prisoner's
serious illness or injury states a cause of action
under §1983."

I intend to file civil actions in this matter.

RECEIVED
SEP 27 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE**

| Date: SEPT. 26, 2006 | Offender: ROBERT THOMAS (Please Print) | ID#: N53969 |
|---|---|---|

| Present Facility: STATEVILLE | Facility where grievance issue occurred: STATEVILLE |
|---|---|

NATURE OF GRIEVANCE:

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Disciplinary Report: _____ / _____ / _____
  Date of Report            Facility where issued

- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator

- ☐ Restoration of Good Time
- ☒ Medical Treatment
- ☐ Other (specify): _____

- ☐ Disability
- ☐ HIPAA

Note. Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
   Chief Administrative Officer, only if EMERGENCY grievance
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Brief Summary of Grievance: On Tuesday, August 15, 2006, while closing my celldoor I injured my right ring finger. My finger became swollen and my my fingernail had bruised blood in it. I experienced a huge amount of pain. I soaked my finger in cold water for a substantial amount of time. I was waiting to catch a Med Tech on the gallery, but never did. Thereafter, the prison was on lockdown. During this period, I continued soaking my hand and taking aspirin that were previously prescribed to me to relieve the pain. The swelling disappeared, clearly showing a disformity in my finger. On August 25, 2006, a Med Tech delivered precription medication to my cellmate and I [continue]

Relief Requested: TO HAVE MY FINGER X-RAYED AS SOON AS POSSIBLE TO DETERMINE THE DAMAGE AND OBTAIN THE PROPER MEDICAL ATTENTION IN A TIMELY FASHION.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Robert Thomas | N53969 | 9 / 26 / 06 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 9 / 26 / 06     ☐ Send directly to Grievance Officer     ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: Dr. Ghosh Stated:
_A pass has been issued to bring the
offender to HCU for evaluation._

RECEIVED
SEP 27 2006
STATEVILLE CORRECTIONAL CENTER
HEALTH CARE UNIT ADMIN. OFFICE

| _____ | _____ | _____ |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: _____ / _____ / _____

Is this determined to be of an emergency nature?

☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated Offender should submit this grievance in the normal manner.

| _____ | _____ |
|---|---|
| Chief Administrative Officer's Signature | Date |

* Final Report *

Dr. Boonmee is present for the visit.

DD: 11/20/2007
DT: 11/20/2007
JM/crym
JOB:605478

**Addendum by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM**
I was present with resident during the history and exam. I discussed the case with the resident and agree
with the findings and plan as documented in the resident's note.

Boonmee Chunprapaph, M.D.

**Completed Action List:**
* Perform by McFadden MD, James on November 20, 2007 4:59 PM
* Transcribe by  on November 20, 2007 10:07 PM
* Sign by McFadden MD, James on November 21, 2007 6:57 AM  November 21, 2007 6:57 AM
* VERIFY by McFadden MD, James on November 21, 2007 6:57 AM
* Review by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM  Requested by McFadden MD, James
on November 21, 2007 11:53 AM
* Modify by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM
* Sign by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM

Orthopedic Note

* Preliminary Report *

| | |
|---|---|
| Result Type: | Orthopedic Note |
| Result Date: | April 15, 2008 12:00 AM |
| Result Status: | Transcribed |
| Result Title: | Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D. |
| Performed By: | Thormeyer MD, Jeffrey Robert on April 15, 2008 5:21 PM |
| Encounter info: | 80350449-0386, UICMC, OUTPATIENT, - 4/15/2008 |

## * Preliminary Report *

**Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.**
 University of Illinois Medical Center at Chicago

CLINIC NOTE          Patient: THOMAS, ROBERT

DICT: JEFFREY THORMEYER, M.D. MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 04/15/2008

DATE OF BIRTH: 04/02/1950

CHIEF COMPLAINT: Status post status post Hunter rod procedure.

HPI: This is a 55-year-old African American male, state jail inmate, who
is status post Hunter rod procedure of FDP and tendon transfer of the FDP,
a tendon in the right ring finger. This procedure was performed on
February 25, 2008, approximately 7 weeks ago. Today, the patient comes in
to the clinic after having tried to remove his Calmdigger splint over the
weekend, because of, what the patient described as a putrid smell. The
patient denies any complaints outside of mild pain at the distal right ring
finger. He denies any fevers, chills, nausea, vomiting, or night sweats.

PHYSICAL EXAMINATION: The patient is a well-developed, well-nourished
African American male, who is in no apparent distress. He is alert and
oriented x3. The patient's upper extremity is in a damaged Clamdigger
splint. The patient's sensation is intact distally. He is able to flex
all digits at the PIP joint, however, flexion at the DIP of that right ring
finger is minimal and very sluggish. The button attaching the suture over
the nail is hanging very loosely.

ASSESSMENT AND PLAN: This is a 58-year-old male who originally sustained a
laceration to his flexor digitorum profundus of his right ring finger
status post Hunter 2 procedure. The patient attempted to remove cast and
may have internally damaged the repair of the flexor digitorum profundus
tendon given the state of the button suture and the inability to fully flex
at the distal interphalangeal joint of the right ring finger. We have
removed the suture and button given its current state. We will remove the

* Preliminary Report *

cast at this time and buddy-tape the long and ring fingers in 2 places in a
position of comfort and flexion of the distal interphalangeal and proximal
interphalangeal joints. We will have the patient return to clinic in
approximately 3 weeks. We will reevaluate the status of the repair.

The patient was seen and examined by the attending Dr. Boonmee who agrees
with the above plan.

DD: 04/15/2008
DT: 04/15/2008
JT/cym
JOB:547047

**Completed Action List:**
* Perform by Thormeyer MD, Jeffrey Robert on April 15, 2008 5:21 PM
* Transcribe by  on April 15, 2008 6:23 PM

\* Final Report \*

| | |
|---|---|
| Result Type: | Orthopedic Note |
| Result Date: | March 04, 2008 12:00 AM |
| Result Status: | Modified |
| Result Title: | Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D. |
| Performed By: | Dubin MD, Jonathan on March 05, 2008 3:03 PM |
| Verified By: | Dubin MD, Jonathan on March 10, 2008 7:18 AM |
| Encounter Info: | 80350449-0384, UICMC, OUTPATIENT, - 3/4/2008 |

# \* Final Report \*
# Document Contains Addenda

## Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.
### University of Illinois Medical Center at Chicago

CLINIC NOTE                    Patient: THOMAS, ROBERT

DICT: Jonathan Dubin, MD    MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 03/04/2008

DATE OF BIRTH: 04/02/1950

HISTORY OF PRESENT ILLNESS: This is a 57-year-old inmate at Statesville. He is status post Hunter rod procedure of FDP and tendon transfer of the FDP tendon of the right ring finger. This procedure was performed on February 25, 2008. Today, the patient comes in the clinic for routine followup. Patient denies any complaints. His pain is well-controlled. Denies any fevers, chills, nausea, vomiting and night sweats.

PHYSICAL EXAMINATION: Reveals a well-developed, well-nourished African American male in no apparent distress. Alert and oriented x3. Patient's extremity is in a dorsal blocking splint which has sustained some damage in between the first web space. However, patient's sensation appears to be intact. He is able to flex all of his fingers.

ASSESSMENT AND PLAN: This is a 57-year-old male who sustained a laceration to his flexor digitorum profundus tendon to his right ring finger, status post Hunter tube procedure to flexor digitorum profundus tendon. Patient appears to be improving well postoperatively. At this time, we would like to extend the dorsal blocking splint for another one as the splint has sustained some damage. I would like to see the patient return to clinic in 4 weeks for a repeat evaluation.

The above assessment and plan were discussed with the patient. He agreed to his understanding.

Patient was seen and evaluated with Dr. Boonmee Chunprapaph.

| | | | |
|---|---|---|---|
| Printed by: | Johnson , Christal | Page 1 of 2 | |
| Printed on: | 4/30/2008 3:37 PM | (Continued) | |

44

\* Final Report \*

DD: 03/05/2008
DT: 03/05/2008
JD/cym
JOB:754218

**Addendum by Chunprapaph MD, Boonmee on March 11, 2008 12:54 PM**
I was present with resident during the history and exam. I discussed the case with the resident and agree
with the findings and plan as documented in the resident's note.

Boonmee Chunprapaph, M.D.

**Completed Action List:**
\* Perform by Dubin MD, Jonathan on March 05, 2008 3:03 PM
\* Transcribe by  on March 05, 2008 3:49 PM
\* Sign by Dubin MD, Jonathan on March 10, 2008 7:18 AM  March 10, 2008 7:18 AM
\* VERIFY by Dubin MD, Jonathan on March 10, 2008 7:18 AM
\* Review by Chunprapaph MD, Boonmee on March 11, 2008 12:54 PM  Requested by Dubin MD, Jonathan on
March 11, 2008 12:54 PM
\* Modify by Chunprapaph MD, Boonmee on March 11, 2008 12:54 PM
\* Sign by Chunprapaph MD, Boonmee on March 11, 2008 12:54 PM

* Final Report *

| | |
|---|---|
| Result Type: | Anesthesia Services Consult |
| Result Date: | February 25, 2008 1:54 PM |
| Result Status: | Auth (Verified) |
| Result Title: | nerve block note |
| Performed By: | Oswald MD, Sarah on February 25, 2008 1:58 PM |
| Verified By: | Oswald MD, Sarah on February 25, 2008 1:58 PM |
| Encounter info: | 80350449-0385, UICMC. SURGI-CENTER, - 2/25/2008 |

## * Final Report *

### University of Illinois at Chicago Medical Center
### Anesthesiology Procedure Note - PERIPHERAL NERVE BLOCKADE

**Peripheral Nerve Block(s) performed**: supraclavicular brachial plexus block

**Approach(es: supraclavicular    Side confirmed**: [_x] Right    [_] Left

**Diagnosis/pain location**: right ring finger

**Surgical Procedure**: right ring finger tendon repair

**Indication**: The block(s) was placed for: [_] Perioperative Analgesia  [_x] Surgical anesthesia
[_] The procedure was specifically for management of postoperative pain by Dr. _____.

**Physical Assessment of site to be blocked**:          [_x] Motor _5/5          [_] Reflexes ___
           **Presence of Neuropathy**:          [_] None   [_] Yes, _____

**Consent**: History and physical examination were performed. Risks, benefits and alternatives to this regional anesthetic were discussed with the patient. Risks discussed included: [_] bleeding  [_] infection  [_] nerve injury [_] headache  [_] pneumothorax  [_] other: _____. All patient questions were answered. Consent was given by patient. A "time-out" with 2 active identifiers of the patient, the procedure, and the site was performed.

**Date**: 2/25/2008    **Start time** (12:27)   **End time** (13:07)

**Monitors**: [_x] NIBP  [_x] ECG  [x_] SaO2  [_x] O2

**Initial Vitals**: **BP**: 117/77  **HR**: 69  **SaO2**: 95%

**Preparation**: [_] povidone-iodine  [_x] chlorhexidine  [_] iodophor/isopropyl  [_] alcohol  [_] drape

**Position**: [x_] supine  [_] prone  [_] LLD  [_] RLD  [_] sitting

**Needle(s)**: [_x] short-bevel  [x_] Touhy  [_] long-bevel  [_] pencil-tipped  [_] Quincke  [_] introducer
           **Manufacturer, length, gauge(s)**: Polymedic; 70mm; 22g

**Technique**: [x_] injection through needle
           [_x] nerve stimulation   [_] infiltration  [x_] ultrasound

| Motor | | m | m | Depth | Techniqu | Sedation | Dose |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

\* Final Report \*

| Response | A | S | (cm) | e | given | |
|---|---|---|---|---|---|---|
| wrist extension | 0.5 | | | [x_] needle | Midazolam | 5mg. divided doses |
| | | | | [_] catheter | Fentanyl | 150,mcg |
| | | | | | | |

**Injectate**:  [_] bupivacaine  [x_] ropivacaine  [x_] mepivacaine  [_] lidocaine  [_] 2-CP

| Concentration (%) | Volume (mL) | Adjunct | Epinephrine |
|---|---|---|---|
| 1.5% mepivcaine | 20cc | | [_] 1/200,000 [x] not used |
| 0.5% ropivacaine | 20cc | | |

**Narrative**: Injection was made incrementally with constant monitoring and aspiration every 5 ml's.

**Events**:  [_x] none: easy and well tolerated; no blood aspirated; negative intravenous test using epinephrine; no pain on injection noted; normal resistance on injection. _____
[_] difficult (# of attempts____): _____; action taken: _____

**Complication(s)**: [x] none [_] dyspnea [_] parasthesia (distribution:____) [_] bleeding [_] other:__

**Success**:  [x] complete  [_] partial  [_] failed  [_] aborted  [_] full evaluation pending

**Post Vitals**: **BP**: 127/81  **HR**: 73  **SaO2**: 99%

The procedure was performed by S. Oswald/ P. Espalson.  The Attending Anesthesiologist who medically directed and was present for entire procedure is  Dr. Babb.

**Completed Action List:**
\* Perform by Oswald MD, Sarah on February 25, 2008 1:58 PM
\* Sign by Oswald MD, Sarah on February 25, 2008 1:58 PM
\* VERIFY by Oswald MD, Sarah on February 25, 2008 1:58 PM

| Response | A | S | (cm) | e | given | |
|---|---|---|---|---|---|---|
| wrist extension | 0.5 | | | [x_] needle | Midazolam | 5mg divided doses |
| | | | | [_] catheter | Fentanyl | 150,mcg |
| | | | | | | |

**Injectate:** [_] bupivacaine  [x_] ropivacaine  [x_] mepivacaine  [_] lidocaine  [_] 2-CP

| Concentration (%) | Volume (mL) | Adjunct | Epinephrine |
|---|---|---|---|
| 1.5% mepivcaine | 20cc | | [_] 1/200,000 [x] not used |
| 0.5% ropivacaine | 20cc | | |

**Narrative:** Injection was made incrementally with constant monitoring and aspiration every 5 ml's.

**Events:** [_x] none: easy and well tolerated; no blood aspirated; negative intravenous test using epinephrine; no pain on injection noted; normal resistance on injection.
[_] difficult (# of attempts___): _____; action taken: _____

**Complication(s):** [x_] none [_] dyspnea [_] parasthesia (distribution:____) [_] bleeding [_] other:___

**Success:** [_x] complete [_] partial [_] failed [_] aborted [_] full evaluation pending

**Post Vitals: BP:** 127/81  **HR:** 73  **SaO2:** 99%

The procedure was performed by S. Oswald/ P. Espalson.  The Attending Anesthesiologist who medically directed and was present for entire procedure is  Dr. Babb.

**Completed Action List:**
* Perform by Oswald MD, Sarah on February 25, 2008 1:58 PM
* Sign by Oswald MD, Sarah on February 25, 2008 1:58 PM
* VERIFY by Oswald MD, Sarah on February 25, 2008 1:58 PM



**Illinois**
**Department of**
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

Stateville Correctional Center / P.O. Box 112 / Joliet, IL  60434 / Telephone: (815) 727-3607
TDD: (800) 526-0844

# MEMORANDUM

Date:       October 9, 2006

To:         Cannon,
            Counselor

From:       Partha Ghosh, MD        $P6u$
            Medical Director

Subject:    Medical Grievance for Thomas, Robert N53969 C457

A pass has been issue to bring the offender to HCU for evaluation.


PG:jrw


Cc:    Assistant Warden Programs
       Grievance Office
       Medical Records
       File

16



**University** of
**Illinois**
**Medical Center**
at Chicago

80350449-0385
THOMAS, ROBERT
008 04-02-SC    N  O
02/28/2008

# SURGICAL / PROCEDURAL
# DISCHARGE INSTRUCTIONS

Patient _____   Procedure _FDP Reinsertion_  Physician _Bennen_  M.D.

**DIET**
☒ Resume normal diet – No Restriction          ☐ Liquids, soft, or light diet today, normal diet tomorrow
☐ _____

**BATHING**
☐ No restrictions    ☐ Shower only until _____    ☐ Sponge bath only until _____
☒ _Keep cast dry @ all times_

**MEDICATION INSTRUCTIONS (Check all that apply)**
☐ Medication list provided to patient (Required for all prescription and non-prescription meds such as aspirin and vitamins.)
☒ Prescriptions given    ☐ Medications from home returned to patient
☐ No medications, prescription on non-prescription for home required

**WOUND CARE**
☒ Do not remove bandage    ☐ Remove bandage in ____ day(s) and clean wound with _____

**ACTIVITY**
☐ No restriction    ☐ Rest today, increase activity tomorrow as tolerated
☐ Rest for _____ day(s), then increase activity as tolerated
☒ _No lifting LUE_
☐ Return to work/school in _____ days

**CLINIC APPOINTMENT**
☒ Return to _Ortho_ clinic on _3/4/08_ at _4pm_
☐ Call _____ ____ clinic 312-996- _1360_ for appointment
☐ _____

**SPECIAL INSTRUCTIONS/COMMENTS**

| GENERAL INSTRUCTION | IN CASE OF: |
|---|---|
| **DO NOT** work with any electrical or mechanical devices for 24 hours<br>**DO NOT** drive for 24 hours after surgery<br>**DO NOT** drink alcoholic beverages for 24 hours after surgery<br>**NO NOT** make important decisions or sign important documents for 24 hours after surgery (until your full mental alertness returns) | 1. Continuous or heavy bleeding<br>2. Difficulty breathing<br>3. Fever / chills<br>4. Continuous nausea and vomiting<br>5. Drainage from surgical area<br><br>Call Dr. _____ at 312-996-6780 or call the emergency department at 312-996-7297 or go to the emergency department |

I have received a copy of and understand the above instructions

_____ and _____
Patient                          Responsible adult with patient

_____          _____  _____
Physician / Nurse              Relationship          Date

                              _____
                              Date

41                                    UI-1017E (10/07)

* Final Report *

DISPOSITION:  To PACU in stable condition.

OPERATIVE INDICATIONS:  Mr. Thomas is a 57-year-old inmate who suffered a
disruption to his FDP to his ring finger that became chronic in nature.  Due
to the loss of function of his FDP to his ring finger, discussion was had to
do a reconstruction.  The first stage of this reconstruction was performed on
November 7, 2007 by Dr. Boonmee.  At that time, it was noted that the patient
had disruption distal to the PIP joint.  A Hunter rod was therefore placed in
the ring finger from the PIP distally.  He returns today for the second stage
of that procedure.  The risks and benefits of the procedure were discussed
with the patient.  He again agreed to going forward with the procedure.  The
appropriate extremity was identified and marked in the preoperative holding
area.

OPERATIVE TECHNIQUE:  The patient received preoperative regional anesthesia in
the holding area.  The patient was brought into the operating room and placed
in the supine position on the operating table.  The right upper extremity had
a nonsterile tourniquet applied.  IV antibiotics prophylactically were
administered.  The patient had the right upper extremity prepped and draped in
the sterile fashion.

The right upper extremity was exsanguinated using an Esmarch bandage.  The
tourniquet was inflated to 250 mmHg.  The right hand was used to retract the
digits in an external position.  An incision was made following the patient's
old Brunner incision scar from the distal phalanx proximally into the distal
aspect of the palm.  The skin flaps were elevated using sharp dissection.
Care was taken to remain superficial to the neurovascular bundle.  Blunt
dissection was carried out down to the level of the new tendon sheath.  The
Hunter rod was medially identified on the distal phalanx.  The figure-of-8
sutures that were placed at the last procedure were excised.  The Hunter rod
was freely moved within its newly formed sheath.  The dissection was again
further carried out down to the level of the FDP tendon over the proximal
phalanx.  FDS was noted to be intact.  FDP was present at this level and was
scarred into the level of the PIP joint.  Taking care to avoid damaging
neurovascular structures, this dissection was carried proximally into the
palm.

After exposing the digit, our attention was turned towards harvesting of the
graft.  A curvilinear incision was made over the distal aspect of the volar
forearm at the level of the wrist creases.  Palmaris longus was immediately
identified.  A tendon stripper was passed approximately 20 cm proximally.  The
tendon stripper would not completely harvest the graft.  We therefore made a
second incision approximately 1 cm in length over the volar forearm at the
level of the midforearm.  The tendon passer and the palmaris longus tendon
were both immediately identified.  The palmaris longus tendon was then
retracted out of the proximal incision and excised.  Again, we noted that we
had approximately 15 cm of tendon graft.  We then returned to the ring finger
for placement of the tendon graft, although the FDP was intact to the level of
the PIP joint and we felt it would be more beneficial to perform our

49

* Final Report *

* Sign by Chunprapaph MD. Boonmee on February 28, 2008 6:32 AM  February 28, 2008 6:32 AM
* Modify by Chunprapaph MD, Boonmee on February 28, 2008 6:32 AM
* VERIFY by Chunprapaph MD, Boonmee on February 28, 2008 6:32 AM

September 26, 2006

TO:    Dr. Ghosh, Medical Director
       Health Care Unit

FROM:  Robert Thomas N53969
       Unit C-457

RE:    Injured Right-Ring Finger


On August 15, 2006, I injured my finger in the cell door.
After the swelling went-down, I realized that my finger was
broken or worse?  On Friday, August 25, 2006, I finally was able
to have a Med Tech examine my finger.  Upon viewing the deformity,
the Med Tech concluded that my finger was broken and told me that
I will be placed on Sick Call to see a doctor.

On Saturday, August 26, 2006, I was taken to the HCU and a
doctor examined my finger and prescribed an x-ray, had my finger
placed in a splint and I was given some motrin.  I was told that
I would be taken to NRC that following Monday 8-28-06 to have an
x-ray taken because a mental patient was already scheduled to be
transported to NRC.

Approximately one (1) month has passed and I still have not
had my finger x-rayed.  What's troublesome to me is... I've been
on a writ to the hospital in Chicago twice, and on each occassion
there was no order to have my finger x-rayed or examined.

I would like to have my finger x-rayed to determine the
extent of damage that has occurred.  Had I received an x-ray in a
timely fashion, I doubt seriously that my finger would be deformed
as it presently is.

All that is promptly rendered in regard to this matter
would be appreciated greatly.

Robert Thomas
Robert Thomas N53969
Unit C-457


cc:  personal file

17.

* Final Report *


Dr. Boonmee is present for the visit.

DD: 11/20/2007
DT: 11/20/2007
JM/cym
JOB:605478

**Addendum by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM**
I was present with resident during the history and exam. I discussed the case with the resident and agree
with the findings and plan as documented in the resident's note.

Boonmee Chunprapaph, M.D.


**Completed Action List:**
* Perform by McFadden MD, James on November 20, 2007 4:59 PM
* Transcribe by  on November 20, 2007 10:07 PM
* Sign by McFadden MD, James on November 21, 2007 6:57 AM  November 21, 2007 6:57 AM
* VERIFY by McFadden MD, James on November 21, 2007 6:57 AM
* Review by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM  Requested by McFadden MD, James
on November 21. 2007 11:53 AM
* Modify by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM
* Sign by Chunprapaph MD, Boonmee on November 21, 2007 11:53 AM

* Final Report *

Result Type:        Orthopedic Note
Result Date:        January 15, 2008 5:19 PM
Result Status:      Modified
Result Title:       Surgery Plan
Performed By:       Howard RN, Vanessa on January 15, 2008 5:22 PM
Verified By:        Howard RN, Vanessa on January 15, 2008 5:22 PM
Encounter info:     80350449-0383, UICMC. OUTPATIENT, - 1/15/2008

## * Final Report *
## Document Contains Addenda

Surgery Plan
Pt to be scheduled for surgery: DOS: 02/25/08 w/Dr.Boonmee
Dx. s/p (R) hand/RF Hunter I  Procedure: (R) hand/RF Hunter II. Pre-op tests: cbc, coags, LFT(s), Ecg.
Pt is an inmate at Stateville IL DOC. No dates or times given to pt or guards.
Surgery plan faxed to Stateville IL DOC, medical & UIC inmate coordinator, B.Harvey.
VHRN.

**Addendum by Howard RN, Vanessa on January 15, 2008 6:38 PM**
IL DOC facility notified to stop asa 1 wk pta/surg.
VHRN.

**Completed Action List:**
* Perform by Howard RN, Vanessa on January 15, 2008 5:22 PM
* Sign by Howard RN, Vanessa on January 15, 2008 5:22 PM
* VERIFY by Howard RN, Vanessa on January 15, 2008 5:22 PM
* Sign by Howard RN, Vanessa on January 15, 2008 6:38 PM
* Modify by Howard RN, Vanessa on January 15, 2008 6:38 PM

* Final Report *

Result Type:          Orthopedic Note
Result Date:          November 20, 2007 12:00 AM
Result Status:        Modified
Result Title:         Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.
Performed By:         McFadden MD, James on November 20, 2007 4:59 PM
Verified By:          McFadden MD, James on November 21, 2007 6:57 AM
Encounter info:       80350449-0382, UICMC. OUTPATIENT, - 11/20/2007

## * Final Report *
## Document Contains Addenda

### Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.
University of Illinois Medical Center at Chicago

CLINIC NOTE                     Patient: THOMAS, ROBERT

DICT:  JAMES MCFADDEN, MD      MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 11/20/2007

DATE OF BIRTH:  04/02/1950

CHIEF COMPLAINT:  The patient comes in today 1 week status post right ring finger flexor digitorum profundus Hunter 1 tendon reconstruction with synthetic rod.

HISTORY OF PRESENT ILLNESS:  The patient states that he has been doing well. He does not really have any pain.  He has tolerated everything well.  He has kept his splint applied.  He changed his dressing once when it got a little bit dirty, but otherwise he had no complaints.

PHYSICAL EXAM:  On exam, with all the dressings removed, there does not appear to be any swelling of the finger.  The wound has healed well.  The Vicryl stitch appears to be intact.  The patient has full range of motion about the MCPJ.  He does not have any active flexion of the PIPJ or DIPJ, but he does have passive flexion at this digit.  He is neurovascularly intact.  The medial, ulnar, and radial nerves, capillary refill was excellent.

ASSESSMENT:  This is a 57-year-old man now 1 week status post Hunter 1 tendon reconstruction of the right ring finger flexor digitorum profundus.  The patient is stable and doing well.

PLAN:  The patient will return to see us in clinic in approximately 3 to 4 weeks' time, we are going to put him back in to a plaster clam-digger splint and we will have him use passive and active range of motion to allow the IP joint to flex from their extended posture.  Patient agrees with and understands the treatment plan.

Printed by:   Johnson , Christal                              Page 1 of 2
Printed on:   4/30/2008 3:37 PM                               (Continued)

Orthopedic Note

* Final Report *

Result Type:        Orthopedic Note
Result Date:        January 15, 2008 12:00 AM
Result Status:      Auth (Verified)
Result Title:       Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.
Performed By:       Barmada PA, Owen on January 15, 2008 4:06 PM
Verified By:        Barmada PA, Owen on January 16, 2008 10:36 AM
Encounter info:     80350449-0383, UICMC. OUTPATIENT, - 1/15/2008

## * Final Report *

**Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.**
       University of Illinois Medical Center at Chicago

CLINIC NOTE          Patient: THOMAS, ROBERT

DICT: OWEN BARMADA, P.A.    MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 01/15/2008

DATE OF BIRTH: 04/02/1950


This patient is a 57-year-old inmate at Stateville. He is status post Hunter
I procedure of the FDP tendon in the right ring finger. This was performed on
November 5, 2007. He is here to schedule the second procedure. Patient
reports to me doing well. He has been in the clamdigger splint and has been
working on range of motion.

Today on examination, the patient is alert and oriented. He does not appear
to be in any acute distress. He rates his pain as 0 out of 10. Surgical
scars are clean, dry, and intact without any signs of any infection. He is
neurovascularly intact distally. He has got good range of motion in the PIP
joint but limited in the DIP joint. At this time, we want him to remove the
clamdigger and start working on passive range of motion at the DIP joint. We
took some pictures under fluoroscopy to see where the rod is. It is still in
place and intact. We have tentatively placed him on a schedule for a Hunter
II procedure of the FDP tendon in the right ring finger. This is scheduled
for February 25, 2008. Surgical packet was completed today. History and
physical was performed and consent was signed. Of note, the patient does
suffer from hypertension as well as hepatitis C.

The patient did voice an understanding of the current treatment plan, and this
patient was seen with Dr. Boonmee Chunprapaph who agrees with the above
assessment and plan.


Printed by:    Johnson , Christal
Printed on:    4/30/2008 3:37 PM



**University of Illinois Medical Center**
at Chicago

## SURGICENTER PREPARATORY INSTRUCTION
## AND FOLLOW-UP REPORT

Thomas, Robert
Statesville Co.

**Preparatory Instruction**

Date: 2/22          Time: 3P

Person spoken to: Christine

☐ Verify Procedure _____

☐ Time to arrive in Surgicenter ___ 10am

☐ Directions and location _____

☐ Parking instructions _____

☐ Dietary Restrictions ___ NPO PMN

☐ Medications _____

   Instructions _____

☐ Personal preparation and attire:
   makeup, nail polish, jewelry, bath/shower,
   hair washing

☐ Responsible adult to accompany - no children

☐ Symptoms, i.e.: cold; flu

☐ Valuables/Misc.

Comments: _____
_____
_____

_____  Rose Traweder  (R.N.)

**Follow Up Report**

Date: 2/26/06          Time: 0900

Person spoken to: statesville doctor

☐ General condition ___ good

☐ Diet ___ Good

☐ Nausea/Vomiting ___ none

☐ Pain ___ controlled

☐ Wound/Dressing ___ OU

☐ Activity ___ open

☐ Follow Up Appointment _____

☐ Problems/Questions _____

Comments: _____
_____
_____

_____  (R.N.)

Romeo
2/26

1020 Rev 10/02

40

**University of Illinois Medical Center at Chicago**

SURGICENTER POSTOPERATIVE RECORD
**NURSING CARE NOTES**

TIME 1640    RECEIVED FROM

VIA _____ AMB _____ W/C _____ CART _____ C310 _____ CARRIED
PROCEDURE

ACCOMPANIED BY

| TYPE OF ANESTHESIA | GENERAL | SPINAL | EPIDURAL | BLOCK | | MONITORED ANESTH CARE | IV SED | LOCAL | TOPICAL |

TIME / INITIAL

PAIN SCALE    NO PAIN _____ WORST PAIN
0 1 2 3 4 5 6 7 8 9 10

WONG-BAKER SCALE

Quality of Pain
- Aching
- Burning
- Cramping
- Dull
- Pressure
- Numbing
- Sharp
- Throbbing
- Other

PT. EDUCATION
TOP C ___ post op
V-VERBALIZES UNDERSTANDING D-DEMONSTRATES
B-BARRIERS NOTED PT-PATIENT P-PARENT/FAMILY
S-SIGNIFICANT OTHER

ADEQUATE COMFORT
LOCATION ___ Decra prn
D-DISTRACTION P-POSITIONING C/H-COLD/HEAT
R-RELAXATION TECHNIQUE

## PATIENT ASSESSMENT

| TIME / INIT | BP | P | R | T | O2 | LEVEL OF CONSCIOUSNESS | ACTIVITY | DRESSING / DRAIN / PAD | PAIN |
|---|---|---|---|---|---|---|---|---|---|
| 1640 | 117/71 | 60 | 20 | 97.7 | 97% RA | awake | on bed | | 0 |
| 1715 | 118/62 | 105 | 20 | 97.5 | 96% | A O x 4 | up in car | | 6 |

| TIME / INIT | MEDICATIONS | DOSE | RTE | SITE | IVPB TOTAL | INDICATION | TIME / INIT | FREQ | RESPONSE | TIME / INIT | PO cc | cc | VOID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | IV | BLOOD | U/O | OTHER | | TIME/AMT | IV FLUID OR BLOOD | SITE | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| OR | 900 | | | EBL 500 | EMESIS | PO | 1640 | 42 C 100U | L H P IV | | 52 |
| RR | | | | | | | | 10 | D/Lac O | | |
| SC | 52 | | | | | | | | 17.50 | |

NURSE'S NOTES    POST-OP ACCUCHECK ___

1640 Received ___ awake O2 ___
97% ___ @ ___ all ___ @ ___ fingers ___ good
___ will ___ Decra prn ___ Discharge instructions discussed
___ pt to Officer ___ verbal ___ instructions ___ on
instruction ___ Block gun. D/C ___ home ___ Crutches ___

- BELONGINGS RETURNED
- DISCHARGE INSTRUCTIONS PROVIDED
- PRESCRIPTION PROVIDED
- NOTE FOR WORK/SCHOOL PROVIDED
- CRUTCH TRAINING
- DRAIN CARE

## DISCHARGE ASSESSMENT

- TOLERATES PO FLUIDS ___
- MINIMAL NAUSEA / VOMITING ___
- VITAL SIGNS +/- 20% PRE-OP
- RESP DISTRESS ABSENT
- ALERT
- PAIN CONTROLLED
- VOIDED  NA ___
- AMBULATED  NA ___
- GAG REFLEX PRESENT  NA ___

PATIENT ADMITTED
- 23 HOUR OBSERVATION
- INPATIENT

REASON ___
REPORT TO ___ AT ___ BY ___
TIME ___
ROOM NO ___

TIME 1810    ACCOMPANIED BY ___ Officer

MODE OF DISCHARGE
- AMBULATORY
- WHEELCHAIR
- STRETCHER
- CARRIED

DISCHARGED BY ___

INITIAL / SIGNATURE ___

REPORT TO: ___

UI - 1100 Rev. 09/05

39

STATE OF ILLINOIS  )
                   ) SS:
COUNTY OF WILL     )

A F F I D A V I T

I, <u>Charles McLaurin, #N94252</u>, being competent to make this declaration and having personal knowledge of the matter(s) stated therein, declares pursuant to 28 U.S.C.§ 1746:

1.    I am presently incarcerated at the Stateville Correctional Center situated in Joliet, Illinois.

2.    On August 15,2006, I was housed in Unit C, assigned to cell #457.  My cell partner, Robert Thomas, was closing the cell door on this date and accidently slammed his right ring finger between the door and door jam.   He experienced a tremendous amount of pain and began soaking his finger (Thomas) in cold water in the sink.

3.    The following days, he (Thomas) constantly complained about the pain, but deeply felt that once the swelling goes down, he would be okay.   His finger remained swollen for over a week and his fingernail was filled with bruised blood.   On a couple occassions, I saw him stop a Correctional Officer and show them his finger. They would tell him that they'll call the Health Care Unit.

4.    When the swelling went down, inmate Thomas right middle finger was very deformed-looking, the tip of his finger was pointing upward(s) as if it was broken.

5.    On August 25,2006, Mrs.Friar, Medical Technician, (I believe) brought my prescribed medication to the cell and inmate Thomas showed her his finger and she said "its broken,  I've got to get you to the Health Care Center tomorrow morning."

Pursuant to 28 U.S.C.§ 1746, I declare under the penalty of perjury that the foregoing is true and correct.   Executed on August 3,2008.

Charles McLaurin, #N94252
affiant

4



**Rod R. Blagojevich**
Governor

## Illinois
Department of
## Corrections

**Roger E. Walker Jr.**
Director

Stateville Correctional Center / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727-3607
TDD: (800) 526-0844

# MEMORANDUM

Date:       October 9, 2006

To:         Cannon,
            Counselor

From:       Partha Ghosh, MD     *PGU*
            Medical Director

Subject:    Medical Grievance for Thomas, Robert N53969 C457

A pass has been issue to bring the offender to HCU for evaluation.

PG:jrw

Cc:    Assistant Warden Programs
       Grievance Office
       Medical Records
       File

# STATEVILLE CORRECTIONAL CENTER
## Notification of Appointment to HCU

Name **THOMAS, ROBERT**  Number **N53969**  Date:_____

Cell **C 0448**  Time to Report **10:00 AM**  Assignment_____

| | | | | |
|---|---|---|---|---|
| __LAB | __X-RAY | __DIETITIAN | __SEIZURE CLINIC | __OTHER |
| __E.R. | __OPHTH | __INF.ADMIT | __DIABETIC CLINIC | |
| __P.T. | __ORTHO | __MD In E.R. | __HYPERTENSIVE CLINIC | |
| __OPT | __DENTAL | __ASTHMA CLINIC | __INFEC. CONTROL | |
| __POD | __PHYSICALS | __SURGERY CLINIC | __MENTAL HEALTH ----- | |

**X    PPD XRAY/GATE 5**

Special Instructions:  **CAN NOT REFUSE**

_____I accept this pass_____
<div align="center">Inmate Signature</div>

_____I Refuse this Assignment_____
<div align="center">Inmate Signature</div>

If you are on a psychotropic medication, this will be discontinued or tapered off if you do not come to your next scheduled appointment.

_____Reason for refusal_____

_____

_____Witness_____
<div align="center">CMT Signature</div>

**If you fail to keep this appointment (NO SHOW) you will have to reschedule your own appointment through the CMT.

_____NO SHOW

Attempts to deliver this pass made at the following times:

PMs_____  Reason not delivered_____
Midnights_____  Reason not delivered_____

_____R.N. Notified of inability to deliver pass
Signature of CMT_____ P.M._____ M.N._____ A.M.
Signature of R.N. _____ P.M._____ M.N._____ A.M.

| | | |
|---|---|---|
| Time inmate departed Assignment_____ | Officer_____ | |
| Time inmate arrived at HCU _____ | Officer_____ | |
| Time inmate departed HCU _____ | Officer_____ | |
| Time inmate arrived Assignment_____ | Officer_____ | |

IL426
DCA2234 (Rev 4/93)



**Rod R. Blagojevich**
Governor

**Illinois**
**Department of**
**Corrections**

**Roger E. Walker Jr.**
Director

Stateville Correctional Center / P.O. Box 112 / Joliet, IL  60434 / Telephone: (815) 727-3607
TDD: (800) 526-0844

# MEMORANDUM

Date:       October 9, 2006

To:         Cannon,
            Counselor

From:       Partha Ghosh, MD    *P6U*
            Medical Director

Subject:    Medical Grievance for Thomas, Robert N53969 C457

A pass has been issue to bring the offender to HCU for evaluation.


PG:jrw


Cc:    Assistant Warden Programs
       Grievance Office
       Medical Records
       File



27



27

ILLINOIS DEPARTMENT OF CORRECTIONS
RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report |
|---|

Date Received: October 17, 2006          Date of Review:   October 17, 2006          Grievance #  1354

Committed Person: Robert Thomas                                                    ID#: N53969

Nature of Grievance: Medical Tx

Facts Reviewed:  Grievant alleges he was unable to get a X-Ray on his finger.

Relief Requested:  to have my finger x-rayed as soon as possible to determine the damage and obtain the proper medical attention in a timely fashion.

Per Dr. Ghosh, Medical Director:  A pass has been issued to bring the offender to the HCU for evaluation.

It appears that this grievance issue has been resolved.

This Grievance Officer has no medical expertise or authority to contradict the doctor's recommendation/diagnosis.

Recommendation:  No further action necessary at this time.

_Tammy Garcia_ _____                                    _____
              Print Grievance Officer's Name                          Grievance Officer's Signature
              (Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

Date Received:  _10-17-06_          ☒ I concur          ☐ I do not concur          ☐ Remand

Comments:

_W. McCann_ _____                                    _10-17-06_
Chief Administrative Officer's Signature                                          Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director.  I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_Robert Thomas_ _____          _N53969_          _10-30-06_
          Committed Person's Signature                    ID#                  Date

December 5, 2006

TO:  Dr. Partha Golsh, M.D.
     Health Care Unit [Stateville]

FROM:  Robert Thomas N53969
       Unit C-457

RE:  Xray of injured right ring finger

On November 27, 2006, during my appointment with you at your
liver clinic... I showed you my injured finger and explained that
I had previously filed a grievance because my finger was injured
in August and I never obtained the prescribed xray to determine
the amount of damage.  You prescribed an xray for me and I was
taken to NRC On November 29th for an xray.

At this hour, I would like to know the diagnosis of the xray and
what amount of damage occurred??  As you noticed, my finger is
deformed.  If it was fractured, will it have to be re-broken and
set or some other procedure to correct the deformness of my right
ring finger??

I would like to have this deformity corrcted to enable me to use
my right hand as I did before this accident occurred.

All that is promptly renderedin regard to this matter would be
appreciated greatly.  Thank You.

**Illinois**
**Department of**
**Corrections**

od R. Blagojevich
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

January 25, 2007

Robert Thomas
Register No. N53969
Stateville Correctional Center

Dear Mr. Thomas:

This is in response to your grievance received on October 25, 2006, regarding medical treatment (requests an x-ray for his finger), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report, 1354, and subsequent recommendation dated October 17, 2006 and approval by the Chief Administrative Officer on October 17, 2006 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Melody J. Ford
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc: Warden Terry McCann, Stateville Correctional Center
Robert Thomas, Register No. N53969
Chron. File

DATE; March 16, 2007

   TO; Dr. Ghosh, M.D.
       Health Care Unit

FROM; Robert Thomas N53969
      Unit C-457

   RE; DEFORMED RIGHT FINGER
       AND LIVER MEDICATION

On August 15, 2006, my right ring finger was injured. On August 25, 2006, I showed a Med-Tech my injury and was taken to the Health Care Unit the following day. I was told that I would be taken to NRC for an x-ray. After waiting a substantial amount of time for an x-ray, I filed a grievance in this regard which is presently pending before the Administrative Review Board.

On November 27, 2006, I showed you my injured finger. You advised me that an x-ray would be ordered, notwithstanding the fact that an x-ray was previously ordered. In addition, you advised me that surgery was needed to correct the deformity. On November 29, 2006, I was taken to NRC and x-rays were finally taken of my finger. On December 5, 2006, I wrote a letter to you inquiring into the results of my x-rays and whether the deformity in my right ring finger will be corrected. You did not respond to this letter.

Furthermore, I was taken to the U. of I. Hospital on numerous occassions after discovering that my liver enzymes were high. I submitted to a MRI and biopsy which disclosed serious damage to my liver. On November 27, 2006, I received a pass to see you. I was assured that medication would be prescribed for my liver condition. At this hour, I have not received any form of medication for this particular ailment.

On March 7, 2007, during my appearance at the Hypertension Clinic, I explained the above mishap with Dr. Williams. She assured me, after observing my medical charts; that she was going to take my medical chart to you to resolve this matter. At the writing of this letter, once again, I have not received any form of response from you regarding this inquiry.

In closing, I merely request that I be informed regarding the liver medication and that my finger be corrected, these are procedures that you assured me would take place. All that is promptly rendered in regard to this matter would be appreciated greatly. Thank You and Have A Nice Day.

Sincerely,

Robert Thomas

cc; personal file
    Dr. Elyea, M.D.
    Administrative Review Board

51

Kevin C. Halloran, CEO
Waxford Health Sources, Inc.
381 Mansfield Avenue, Suite 205
Pittsburg, Pennsylvania  15220-2751

> Re: Inmate Robert Thomas N53969
> Stateville Correctional Center
> Denial of proper medical care

Dear Chief Executive Officer,

I'm presently and has been for some time, incarcerated at the Stateville Correctional Center situated in Joliet, Illinois. Wexford's Contract #9906022, which extended from 12/17/05 up until 12/16/07 provides medical services to Stateville Correctional Center.

My letter is written to you to bring to your immediate attention a certain irregularity that's preventing me from obtaining proper medical treatment as proscribed by your contract and 730 ILCS 5/3-7-2(a) of the Illinois Compiled Statutes.

On August 15, 2006, I accidently injured my right-ring finger closing my cell door. After the swelling subsided, it was apparent that my finger was damaged... the tip of my finger was pointing in upward direction. On August 26, 2006, I was escorted to the Health Care Unit's Emergency Room where I was evaluated by Dr. Williams.  Everyone I come in contact with immediately states after observing my injury "your finger is broken." Dr. Williams told me that I would be transported to CRC on Monday, August 28, 2006. After waiting a substantial time, I filed a grievance (complaint) stating that **I have not had an X-ray to determine the damage of my finger.**  On October 9, 2006, Dr. Ghosh, Medical Director, prepared a Memorandum regarding my complaint stating the following:

> **A pass has been issued to bring the offender to HCU for evaluation.**

At this hour, I **have not** been evaluated or sent a pass in this regard.  As a matter of fact, the Grievance Officer and Warden McCann concurred with Dr.Ghosh's erroneous response to my complaint.

I humbly request your assistance in this matter. It is obvious just from looking at my right ring finger that it's damaged and this prolonged delay in obtaining medical care is crucial towards the repair of any fractures.

All that is promptly rendered in regard to this matter would be appreciated greatly. Thank you for your time. I await your reply.

Sincerely,

*Robert Thomas*

Robert Thomas   N53969
Stateville Correctional Center
Post Office Box 112
Joliet, IL   60434

cc: personal file

24

**University** of
**Illinois**
**Medical Center**
at Chicago

Physicians & Medical
Students begin here

P015-4-12-1305
THOMAS, ROBERT
DOB 01-02-80        N    O
02/25/2008

**HISTORY - PHYSICAL PROGRESS NOTES**

| DATE | ANESTHESIOLOGY POSTOPERATIVE EVALUATION |

Procedure: (R) finger flexor digitorum reconstruction    Date of Procedure: 2/25/08

Type of Anesthesia: MAC c̄ brachial plexus block

Anesthesia Attending: Babb

Anesthesia Resident: Bartis

Postoperative Analgesia Plan: per primary service

Postanesthesia Course:    eventful _____    uneventful _____

Comments:

Signature: Cristina Bartis

```
                    U OF I HOSPITAL (HPROD03)
  02/28/08                                            PAGE:  1
========================

FINAL DX & PROC FORM                MEDICAL RECORD #:   080350449

=====================================================================

FINAL    NAME: THOMAS ROBERT                ACCT #: 0803504490385

        AGE:  57   SEX: M   RACE: O   DISCH: 02/25/08   SERV: ORO
                                            ADM: 02/25/08
        DR: CHUNPRAPAPH, BOONMEE B          TIME: 09:42 AM
====================================================================
                    BIRTHDATE: 04/02/50
  MAIDEN/OTHER NAME:                    SOC SEC #: 080350449   F/C: H
  PATIENT ADDRESS: STATEVILLE CORRECTIONAL C JOLIET       IL 604340000
          PHONE: 8157273607                  P.A.T.:
  INSURANCE COVERAGE 1:   STATE, CORRECTIONS
  INSURANCE COVERAGE 2:
  INSURANCE COVERAGE 3:
  INSURANCE COVERAGE 4:
=====================PHYSICIAN S REPORT=============================
  DISCHARGE DATE: 02/25/08   TIME: 05:00 PM           CODER: WB

ADMITTING DIAGNOSIS
              ADMITTING DIAGNOSIS NOT DEFINED        ICD9=N/A

PRINCIPAL DIAGNOSIS
        1.   REMOVAL INT FIXATION DEV               ICD9=V54.01

SECONDARY DIAGNOSES                     DIAGNOSIS TYPE
        2.   RUPT FLEXOR TENDON HAND        8        ICD9=727.64


PROCEDURES                              PROCEDURE TYPE
  02/25/08 1.   REPAIR/GRAFT HAND TENDON        P    ICD9=26392
  02/25/08 2.   RMVL IMPL DEV SITE NEC          S    ICD9=78.69
====================================================================
  DISCHARGE STATUS: 1

                    CHARGES:      00.00
====================================================================
  THOMAS ROBERT           0803504490385    FINAL DX & PROC FORM
```

33



**University** of
**Illinois**
**Medical Center**
at Chicago

80350449-0385
THOMAS, ROBERT
DOB 04-09-50
02/25/2008          M    O

**POST-PROCEDURE NOTE**

## ALL FIELDS MUST BE COMPLETED
### Use "Not Applicable" as appropriate

**Pre-Procedure Diagnosis / Indication:** (R) FDP PF rupture

**Post-Procedure Diagnosis:** Same

**Procedure Performed:** (R) ROPE Palmaris longus transfer

**Practitioner Performing Procedure:** Bommer

**Findings (include specimens removed):**

**Estimated Blood Loss:** < 10 cc

**Medication / Fluids / Blood and Blood Components Administered:**
*(DO NOT REPEAT IF DOCUMENTED ELSEWHERE)*
Ø

**Unanticipated Events / Complications:** Ø

**CDC Surgical Wound Classification / Wound Status:**
☑ (1) Clean   ☐ (2) Clean-Contam   ☐ (3) Contaminated   ☐ (4) Infected   ☐ NONE

**Patient's Status Post Procedure (include vital signs and level of consciousness):**
*(DO NOT REPEAT IF DOCUMENTED ELSEWHERE)*
Stable

**Patient Disposition:** Same Day Surgery

**Physician Signature:** _____ 2/25/08

UI-3071 Rev. 04/07

3 0 7 1



**University of Illinois Medical Center**
at Chicago

# POST ANESTHESIA ORDER AND
# DISCHARGE SHEET

SIGNATURE AND TITLE REQUIRED WITH EACH ORDER

```
80350449-0385
THOMAS, ROBERT
DOB 04-02-30          M   O
09/25/2008
```

Date: _____    Allergies: _____

**Admit Post Anesthesia Care Unit (PACU): Vital signs Q 15 minutes or as indicated**

IV FLUIDS: _____

**Medicate for pain as follows:**

Morphine _____ _____mg IVP Q _____ min. with max. dose _____ mg. PRN

Fentanyl _25_ mcg. IVP Q _10_ min. PRN

Toradol _____ mg _IVP / IM_ Q _____ hours PRN

Vicodin _I - II_ tablet po Q _4_ hours PRN

Tylenol #3 _____ _____ tablet / elixir po Q _____ hours PRN

Motrin _____ mg. po. Q _____ hours PRN

Tylenol _____ mg _tablet / elixir / suppository_ Q _____ hours PRN

Others: _____ _____

May initiate surgical pain management orders in PACU_____

PCA orders: _____

Epidural orders: _____

**Medicate for nausea as follows:**

Droperidol _____ mg IVP x _____ doses

Compazine _____ mg _IV / IM_ PRN

Reglan _10_ mg IVP PRN

Zofran _4_ _____ mg. IVP PRN

**Medicate for shivering as follows:**

_____ Demerol 12.5 mg IVP x _____ doses

**Oxygen Therapy:**

Keep O2 saturation of _> 93_% with:    _1 - 6_ Liters nasal Cannula _____ % Blowby

_____ %Face mask / tent    _____ % Trach / t-piece

Respiratory Treatment: _____

ABG: _____

Chest X-ray: _____

Ventilator Setting:    CMV / IMV / CPAP Rate _____    FIO2 _____ %    TV _____

PEEP _____    PS _____

Wean off Ventilator _____    Maintain on Vent _____

Extubate by anesthesia

**Additional Orders:** _____

_____

_____

_____

_____

_____

_____

_____

_Cristina Bartis_____ M.D.

_____ NURSE

0456

35

# POST ANESTHESIA CARE UNIT DISCHARGE NOTE

**Date:**

**Time:**

## POST ANESTHESIA CARE UNIT SCORE AT DISCHARGE

| SIGNS | SCORE SYSTEM | SCORE |
|---|---|---|
| Activity | 4 extremities voluntarily or on command | =2 _____ |
| | 2 extremities voluntarily or on command | =1 _____ |
| | 0 extremities voluntarily or on command | =0 _____ |
| Respiration | Able to deep breathe and cough freely | =2 _____ |
| | Dyspnea or limited breathing | =1 _____ |
| | Apneic | =0 _____ |
| Circulation | BP + 20% of preanesthetic level | =2 _____ |
| | BP + 20-50% of preanesthetic level | =1 _____ |
| | BP + 50% of preanesthetic level | =0 _____ |
| Consciousness | Fully awake | =2 _____ |
| | Arousable on calling | =1 _____ |
| | Not responding | =0 _____ |
| Color | Pink | =2 _____ |
| | Pale, dusky, blotchy, jaundiced, other | =1 _____ |
| | Cyanotic | =0 _____ |
| | **Total** | = _____ |

Recovery from regional block: yes____ no____

Intake(type / amount) _____   Oral: _____

Comments: _____

_____

_____

_____

Discharge from PACU to _____

Discharge with oxygen therapy of _____

_____ MD          _____ Nurse

Tuesday, October 3, 2006

TO: CHRIS CANNON
    Unit C Counselor

FROM: ROBERT THOMAS N53969
      Unit C-457

RE: GRIEVANCE - MEDICAL

Mr. Cannon, I'm writing to once again remind you that I would like to have a copy of my complaint. Last Tuesday (9-26-06) I gave you my medical complaint regarding my now deformed finger, enabling you to sign-off on it, prior to my sending it to the Grievance Officer.

Being that you had previously contacted the Health Care Unit regarding this matter, you had available information to submit to your response to my complaint.

When I gave you my complaint (9-26-06) I asked could I obtain a copy of my grievance because I was unable to have the complaint copied before giving it to you, you told me that you would send me a copy.

As you were making your rounds today (10-03-06), I brought this to your attention and you advised me that you would send a copy of the complaint to me again.

At this hour, my concern is directed towards the handling of my Grievance in the most appropriate and promptly fashion as possible. Today, you <u>did</u> <u>not</u> mention whether you had signed-off on my grievance and if you did, was my grievance forwarded to the Grievance Officer??

I would appreciate it if you were to advise me of the above. All that is promptly rendered in regard to this matter would be appreciated greatly. Thank You.

*Robert Thomas*
Robert Thomas N53969
Unit C-457

cc:  personal file

I, <u>ROBERT THOMAS</u>, affiant, do hereby declare and affirm pursuant to 735 ILCS 5/109, under the penalty of perjury, that the contents contained herein are true and correct to the best of my knowledge and belief. Furthermore, this missive was placed in my cell bars, picked-up by an correctional officer on October 3, 2006 at 10:00 p.m., to be taken to the institutional mailroom for delivery.

*Robert Thomas*
Robert Thomas, affiant

18

Ms. Canon,

After completeing your response. Send a copy back to me and return original grievance to me so that I can obtain a copy before its went to Grievance officer.

Thomas N55969

19

Received through Institutional

Robert —

I sign off on it after I get a response from Dr Ghosh. (I sent him a copy right away.)

If he does not respond in about 30 days, I will note that, send a copy to you, and forward the original to the Grievance Office

— CANNON

( Case 1:08-cv-01464 Document 4-2 Filed 09/10/2008 Page 1 of 12 )
( Received this most and submitted 10-9-05 and Nelroy opt 22 - cancelled )
R.J.

STATEVILLE CORRECTIONAL CENTER     Page#_____
Notification Of Appointment to HCU

Name __Thomas__    Number __N53969__    Date __10/9/06__

Cell# __C45__ Time to Report __8:30__ Assignment_____

| | | | | |
|---|---|---|---|---|
| X̶ Lab | __ X-Ray | __ Dietician | __ Seizure Clinic | __ Other |
| __ E.R. | __ OPHTH | __ Infirm Adm | __ Diabetic Clinic | |
| __ P.T. | __ ORTHO | __ M.D. in E.R. | __ Hypertensive Clinic | |
| __ OPT | __ Dental | __ Asthma Clinic | __ Infec. Control Nurse | |
| __ POD | __ Physicals | __ Surgery Clinic | __ Mental Health | _____ |

Special Instructions:

__ NPO -(Nothing By Mouth After 12:00 Midnight) .

__ I Accept This Pass _____
                 Inmate Signature

__ I Refuse This Assignment _____
                 Inmate Signature
If you are on a psychotropic medication, This will be discontinued or
Tapered off. If you do not come to your next scheduled appointment.

__ Reason for Refusal _____

Witness_____
                 CMT Signature

** If You fail to keep this appointment (NO SHOW) you will have to **
       Re-schedule your own appointment thru the CMT.

__ No Show

Attempts to deliver this pass made at the following times:

P.N.'S_____ Reason not delivered_____

Midnights_____ Reason Not delivered _____

__ R.N. Notified of inability to deliver Pass
Signature of CMT_____ P.M._____ M.N._____ A.M.
Signature of R.N._____ P.M._____ M.N._____ A.M.

Time inmate departed Assignment_____ Officer_____
TIME Inmate arrived at HCU _____ Officer_____
Time Inmate departed HCU _____ Officer_____
Time Inmate Arrived Assignment_____ Officer_____

IL 426- DCA 2234 Revised 04/93      White-- Inmate
                            Yellow--Provider

STATEVILLE CORRECTIONAL CENTER                    Page#_____
Notification Of Appointment to HCU

Name _____ Number _____ Date _____
Cell# _____ Time to Report _____ Assignment _____

| __ Lab | __ X-Ray | __ Dietician | __ Seizure Clinic | __ Other |
|---|---|---|---|---|
| __ E.R. | __ OPHTH | __ Infirm Adm | __ Diabetic Clinic | |
| __ P.T. | __ ORTHO | __ M.D. in E.R. | __ Hypertensive Clinic | |
| __ OPT | __ Dental | __ Asthma Clinic | __ Infec. Control Nurse | |
| __ POD | __ Physicals | __ Surgery Clinic | __ Mental Health _____ | |

Special Instructions:

__ NPO -(Nothing By Mouth After 12:00 Midnight)

__ I Accept This Pass _____
                              Inmate Signature

__ I Refuse This Assignment _____
                              Inmate Signature
If you are on a psychotropic medication, This will be discontinued or
Tapered off.  If you do not come to your next scheduled appointment.

__ Reason for Refusal _____

Witness _____
                              CMT Signature

** If You fail to keep this appointment (NO SHOW) you will have to **
          Re-schedule your own appointment thru the CMT.

__ No Show

Attempts to deliver this pass made at the following times:

P.N.'S _____ Reason not delivered _____

Midnights _____ Reason Not delivered _____

__ R.N. Notified of inability to deliver Pass
Signature of CMT _____ P.M. _____ M.N. _____ A.M.
Signature of R.N. _____ P.M. _____ M.N. _____ A.M.

Time inmate departed Assignment _____ Officer _____
TIME Inmate arrived at HCU _____ Officer _____
Time Inmate departed HCU _____ Officer _____
Time Inmate Arrived Assignment _____ Officer _____

IL 426- DCA 2234  Revised 04/93                    White-- Inmate
                                                   Yellow--Provider

22

* Final Report *

| | |
|---|---|
| Result Type: | Orthopedic Note |
| Result Date: | November 20, 2007 12:00 AM |
| Result Status: | Modified |
| Result Title: | Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D. |
| Performed By: | McFadden MD, James on November 20, 2007 4:59 PM |
| Verified By: | McFadden MD, James on November 21, 2007 6:57 AM |
| Encounter info: | 80350449-0382, UICMC. OUTPATIENT, - 11/20/2007 |

## * Final Report *
## Document Contains Addenda

### Orthopedic Note- ATTENDING:.Boonmee Chunprapaph, M.D.
University of Illinois Medical Center at Chicago

CLINIC NOTE                     Patient: THOMAS, ROBERT

DICT: JAMES MCFADDEN. MD      MRN: 080350449
ATTNG: BOONMEE CHUNPRAPAPH, MD DATE OF SERVICE: 11/20/2007

DATE OF BIRTH: 04/02/1950

CHIEF COMPLAINT: The patient comes in today 1 week status post right ring finger flexor digitorum profundus Hunter 1 tendon reconstruction with synthetic rod.

HISTORY OF PRESENT ILLNESS: The patient states that he has been doing well. He does not really have any pain. He has tolerated everything well. He has kept his splint applied. He changed his dressing once when it got a little bit dirty, but otherwise he had no complaints.

PHYSICAL EXAM: On exam, with all the dressings removed, there does not appear to be any swelling of the finger. The wound has healed well. The Vicryl stitch appears to be intact. The patient has full range of motion about the MCPJ. He does not have any active flexion of the PIPJ or DIPJ, but he does have passive flexion at this digit. He is neurovascularly intact. The medial, ulnar, and radial nerves, capillary refill was excellent.

ASSESSMENT: This is a 57-year-old man now 1 week status post Hunter 1 tendon reconstruction of the right ring finger flexor digitorum profundus. The patient is stable and doing well.

PLAN: The patient will return to see us in clinic in approximately 3 to 4 weeks' time, we are going to put him back in to a plaster clam-digger splint and we will have him use passive and active range of motion to allow the IP joint to flex from their extended posture. Patient agrees with and understands the treatment plan.

| | |
|---|---|
| Printed by: | Johnson , Christal |
| Printed on: | 4/30/2008 3:37 PM |

Page 1 of 2
(Continued)

Anesthesia Services Consult

* Final Report *

| | |
|---|---|
| Result Type: | Anesthesia Services Consult |
| Result Date: | February 25, 2008 1:54 PM |
| Result Status: | Auth (Verified) |
| Result Title: | nerve block note |
| Performed By: | Oswald MD, Sarah on February 25, 2008 1:58 PM |
| Verified By: | Oswald MD, Sarah on February 25, 2008 1:58 PM |
| Encounter info: | 80350449-0385, UICMC. SURGI-CENTER, - 2/25/2008 |

## * Final Report *

### University of Illinois at Chicago Medical Center
### Anesthesiology Procedure Note - PERIPHERAL NERVE BLOCKADE

**Peripheral Nerve Block(s) performed**: supraclavicular brachial plexus block

**Approach(es: supraclavicular    Side confirmed:** [_x] Right    [_] Left

**Diagnosis/pain location**: right ring finger

**Surgical Procedure**: right ring finger tendon repair

**Indication**: The block(s) was placed for: [_] Perioperative Analgesia  [_x] Surgical anesthesia
[_] The procedure was specifically for management of postoperative pain by Dr. _____.

**Physical Assessment of site to be blocked**:       [_x] Motor _5/5       [_] Reflexes ____
        **Presence of Neuropathy**:       [_] None   [_] Yes, _____

**Consent**: History and physical examination were performed. Risks, benefits and alternatives to this regional anesthetic were discussed with the patient. Risks discussed included: [_] bleeding  [_] infection  [_] nerve injury
[_] headache  [_] pneumothorax  [_] other: _____. All patient questions were answered. Consent was given by patient. A "time-out" with 2 active identifiers of the patient, the procedure, and the site was performed.

**Date**: 2/25/2008    **Start time** (12:27)    **End time** (13:07)

**Monitors**: [_x] NIBP  [_x] ECG  [x_] SaO2  [_x] O2

**Initial Vitals**: **BP**: 117/77  **HR**: 69  **SaO2**: 95%

**Preparation**: [_] povidone-iodine [_x] chlorhexidine  [_] iodophor/isopropyl  [_] alcohol  [_] drape

**Position**: [x_] supine  [_] prone  [_] LLD  [_] RLD  [_] sitting

**Needle(s)**: [_x] short-bevel  [x_] Touhy  [_] long-bevel  [_] pencil-tipped  [_] Quincke  [_] introducer
        **Manufacturer, length, gauge(s)**: Polymedic; 70mm; 22g

**Technique**: [x_] injection through needle
        [_x] nerve stimulation  [_] infiltration  [x_] ultrasound

| Motor | m | m | Depth | Techniqu | Sedation | Dose |
|---|---|---|---|---|---|---|
| | | | | | | |

| | |
|---|---|
| Printed by: | Johnson , Christal |
| Printed on: | 4/30/2008 3:37 PM |

25

**STATEVILLE CORRECTIONAL CENTER**
**Notification Of Appointment to HCU**

Page# ____

Name ________ Number ________ Date ________

Cell# ________ Time to Report ________ Assignment ________

__ Lab __ X-Ray __ Dietician __ Seizure Clinic __ Other

__ E.R. __ OPHTH __ Infirm Adm __ Diabetic Clinic

__ P.T. __ ORTHO __ M.D. in E.R. __ Hypertensive Clinic

__ OPT __ Dental __ Asthma Clinic __ Infec. Control Nurse

__ POD __ Physicals __ Surgery Clinic __ Mental Health ________

Special Instructions:

__ NPO -(Nothing By Mouth After 12:00 Midnight)

__ I Accept This Pass ________
Inmate Signature

__ I Refuse This Assignment ________
Inmate Signature

If you are on a psychotropic medication, This will be discontinued or Tapered off. If you do not come to your next scheduled appointment.

__ Reason for Refusal ________

Witness ________
CMT Signature

** If You fail to keep this appointment (NO SHOW) you will have to ** Re-schedule your own appointment thru the CMT.

__ No Show

Attempts to deliver this pass made at the following times:

P.N.'S ________ Reason not delivered ________

Midnights ________ Reason Not delivered ________

__ R.N. Notified of inability to deliver Pass

Signature of CMT ________ P.M. ________ M.N. ________ A.M.

Signature of R.N. ________ P.M. ________ M.N. ________ A.M.

Time inmate departed Assignment ________ Officer ________

TIME Inmate Arrived at HCU ________ Officer ________

Time Inmate departed HCU ________ Officer ________

Time Inmate Arrived Assignment ________ Officer ________

IL 426- DCA 2234 Revised 04/93

White-- Inmate
Yellow--Provider

* Final Report *

| | |
|---|---|
| Result Type: | Surgicenter Documents |
| Result Date: | February 25, 2008 5:00 PM |
| Result Status: | Auth (Verified) |
| Encounter info: | 80350449-0385, UICMC, SURGI-CENTER, - 2/25/2008 |

## * Final Report *

54

Wednesday, October 18, 2006

Rodger E. Walker Jr., Director
Administrative Review Board [ARB]
Illinois Department of Corrections
P.O.Box 19277
Springfield, Illinois 62794-9277

Re:   Inmate Robert Thomas N53969
      Appeal of Grievance #1354
      Denial of Medical Treatment
      [Stateville]

Dear Director,

My letter is written regarding my complaint initiated on
September 26, 2006, regarding my broken right ring finger and the
inability of Stateville staff to xray the fracture. This blatant
denial has caused my finger to heal deformed. I exhausted institut-
ional remedies and appeal the adverse decision to the ARB for relief.
Briefly, on August 15, 2006, while closing the celldoor, I
accidently closed it on my finger which caused a substabtial amount
of pain, swelling and my fingernail darkened. I soaked my finger
continuously and took Motrin that were previously prescribed for the
severe arthritis in my left leg, to avoid the pain. The prison went
on lockdown status, I wasn't able to show a Med Tech my finger. On
August 25, 2006, a Med Tech delivered prescription medication to my
cellmate and I explained to the Med Tech how I injured my finger and
she examined it and told me that she would place me on sick call to
see a doctor. The following day, a doctor evaluated my injured
finger, placed a splint on it, gave me Motrin and scheduled me to be
taken to NRC on Monday, August 28, 2006 (At this hour, I have not
received an xray on my finger)

I've been waiting as patiently as possible to have my injured
finger x-rayed to determine why it healed deformed. Dr. Ghosh, Medical
Director here at Stateville erroneously declared that " a pass was
being sent for me to be evaluated and the matter resolved. When in fact,
I was evaluated by Dr. Williams on August 26, 2006 and was scheduled
to be taken to CRC for x-rays of my injured finger. At this hour, my
finger remains the same and Dr. Ghosh's respond to my grievance have
left me bewildered and confused, being that he based his professional
judgement **without** personally observing the injury. I merely request
a proper review of my appeal.
All that is promptly rendered in regard to this matter would
be greatly appreciated.  I await your reply.

Sincerely,

*Robert Thomas*

Robert Thomas N53969
Stateville Correctional Ctr.
Post Office Box 112
Joliet, Ill. 60434-0112

cc: personal file

80350449-0385
Print Dt/Tm: 02/21/2008 04:39 pm

# UNIVERSITY OF ILLINOIS AT CHICAGO

**>>>>>>>> PATIENT INFORMATION <<<<<<<<**

THOMAS, ROBERT
STATEVILLE CORRECTIONAL CENTER
PO BOX 112
Joliet, IL 60434

Birthdate: 04/02/1950 Age: 57 Years Sex: MALE Race: OTHER
SSN: 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 Religion: MS: SINGLE
Home Phone: (815) 727-3607
Cell Phone:

Employer Name: NOT EMPLOYED
Employer Address:
Employer Phone:
City/State/Zip:
Work Phone:

**>>>>> EMERGENCY CONTACT INFORMATION <<<<<**

Name: STATE, CORRECTIONAL CENTE
Relationship to Patient: CORRECTION
Work Phone
Home Phone: (815) 584 2806

**>>>>>>>> NEAREST RELATIVE <<<<<<<<<**

Name:
Address:
Home Phone:
Relationship:
Emp Status:
Employer:
Work Ph:

**>>>>>>>> GUARANTOR INFORMATION <<<<<<<<**

Name: CENTER, CORRECTIONAL Sex: MALE
Relationship to Patient: CORRECTION
Guar. Address: 809 S MARSHFIELD STREET

Date of Birth: 01/01/1900 Age: 108 Years MS: SINGLE
Social Security Number: 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
City/State/Zip: Chicago, IL 60612
County: Cook
Work Phone:
City/State/Zip:
Hire:
Home Phone: (312) 996-1000
Employment Status: NOT EMPLOYED

Employer Name: NOT EMPLOYED
Employer Address:

**>>>>>>>> PRIMARY INSURED/INSURANCE INFORMATION <<<<<<<<**

Name: CENTER, CORRECTIONAL Sex: MALE Date of Birth: 01/01/1900 Age: 108 Years MS: SINGLE
Relationship to Patient: CORRECTION
Insurance Name: STATE, CORRECTIONS
Claim's Address: STATEVILLE CORRECTIO
PO BOX 112
City/State/Zip: JOLIET, IL 60432
Medical Group ID:

ID/Member Nbr: 804477629
Group Number: 000
Cert Number: NOTVALID
PCP:

Contact Phone Nbr:
Ref Number: NA
Cert Status: NO
Case Names:
Case Id:

**>>>>>>>> SECONDARY INSURED/INSURANCE INFORMATION <<<<<<<<**

Name: Sex: Date of Birth: Age: 0 Days MS:
Relationship to Patient:
Insurance Name:
Claim's Address:
City/State/Zip:
Medical Group ID:

ID/Member Nbr:
Group Number:
Cert Number:
PCP:

Contact Phone Nbr:
Ref Number:
Cert Status:
Case Name:
Case Id:

**>>>>>>>> PREVIOUS ENCOUNTER INFORMATION <<<<<<<<**

| Visit Date(s) | Visit Type | Physician |
|---|---|---|
| 01/15/2008 14:37 | OUTPATIENT | Chumprapaph MD, Boonmee |
| 11/20/2007 14:08 | OUTPATIENT | Chumprapaph MD, Boonmee |
| 11/06/2007 15:00 | SURGI CENTER | Chumprapaph MD, Boonmee |

**>>>>>>>> ACCIDENT INFORMATION <<<<<<<<**

Accident: N
Accident Type:
Accident Date/Time:

**>>>>>>>> VISIT INFORMATION <<<<<<<<**

Location: UIH SURGICENTER Room/Bed: -
Medical Service: ORTHOPEDICS ORANGE
Scheduled Dt/Tm: 02/25/2008 06:00
Admit Date/Time: Visit Type: SURGI-CENTER
Admit Type: ELECTIVE Admit Source: CLINICAL
Admit Diagnosis: humer right ring fl Pre Admit Clerk: Montgomery, Jer
Admit Mode: Admit Clerk:
Admitting Physician Name: Chumprapaph MD, Boonmee
Attending Physician Name: Chumprapaph MD, Boonmee
Referring Physician Name: SELF, REFERRED
VIP Indicator: PRISONER
Language: ENGLISH Interpreter: NO
Advance Directive:

THOMAS, ROBERT MALE / 57 YEARS
80350449 80350449-0385

Rod R. Blagojevich
Governor

**Illinois**
Department of
**Corrections**

**From The Desk Of**
Mr. Cannon, Correctional Counselor

DATE: SEP 2 7 2006

TO: Dr. Ghosh

SUBJECT

*Please Review and Respond.*



Notice: I received this document from my counselor thru institutional
mail on 10-20-06. This is my Original grievance (See My Signature)
and the Counselor's Response is completed. See Grievance with
Grievance Officer's Report and Chief Administrator's Response
there is no counselor response.

R. Thomas N53969

5

September 26, 2006

TO:   Dr. Ghosh, Medical Director
      Health Care Unit

FROM: Robert Thomas N53969
      Unit C-457

RE:   Injured Right-Ring Finger

On August 15, 2006, I injured my finger in the cell door.
After the swelling went-down, I realized that my finger was
broken or worse? On Friday, August 25, 2006, I finally was able
to have a Med Tech examine my finger. Upon viewing the deformity,
the Med Tech concluded that my finger was broken and told me that
I will be placed on Sick Call to see a doctor.

On Saturday, August 26, 2006, I was taken to the HCU and a
doctor examined my finger and prescribed an x-ray, had my finger
placed in a splint and I was given some motrin. I was told that
I would be taken to NRC that following Monday 8-28-06 to have an
x-ray taken because a mental patient was already scheduled to be
transported to NRC.

Approximately one (1) month has passed and I still have not
had my finger x-rayed. What's troublesome to me is ... I've been
on a writ to the hospital in Chicago twice, and on each occassion
there was no order to have my finger x-rayed or examined.

I would like to have my finger x-rayed to determine the
extent of damage that has occurred. Had I received an x-ray in a
timely fashion, I doubt seriously that my finger would be deformed
as it presently is.

All that is promptly rendered in regard to this matter
would be appreciated greatly.

*Robert W. Thomas*

Robert Thomas N53969
Unit C-457

cc: personal file

Friday, October 20, 2006

Chairperson
Administrative Review Board [ARB]
Office of Inmate Issues
Illinois Department of Corrections
1301 Concordia Ct., P.O. Box 19277
Springfield, Illinois 62794-9277

RE:     Inmate ROBERT THOMAS N53969
        Appeal of Grievance #1354
        Denial of Medical Treatment
        [Stateville]

Dear Chairperson,

Enclosed with my letter is the requisite grievance form and
attached documents to initiate the appeal process in this matter
regarding the blatant denial of MEDICAL TREATMENT.. failure to
obtain treatment of my right ring finger.

The crux of my complaint derives from the staff's inadequate
manner in handling my particular situation and the unnecessary
delay stemming from this mishap.  Records would conclusive show
that an equal protection violation has manifested itself, in that
I'm being treated differently than others similarly situated and
the apparent deliberate indifference to my injury.

OCCURRANCE:

On August 15, 2006, while closing my cell door, my right-
ring finger was injured.  This incident caused a substantial
amount of pain.. swelling and my fingernail darken.. clearly
showing bruised blood lodged within it.  Not realizing the seriousness
of my injury, I immedately begin soaking my finger in cold water
and consuming "motrins" and "aspirins" (previously prescribed for
unrelated reasons) to alleviate the pain.  The deformity of my
finger did not become noticable until after the swelling subsided.
During this period, the prison was placed on LEVEL ONE lockdown
status and sitting in a cell waiting for a Med Tech to walk the
galleries, proves to be an futile act.  On two (2) separate
occassions, the cellhouse Sargeant walked by my cell, when I
called for assistance; my call was completely ignored.  By chance,
on August 25, 2006, a Med Tech delivered prescribed medication to
my cellmate.  I explained to the Med Tech how I obtained the
injury.  Upon noticing my finger, I was told that "my finger was
broken" and that I will be placed on Sick Call list to see the
doctor at the Health Care Unit.  The following day, August 26,
2006, I was escorted to the H.C.U.  I was EXAMINED and EVALUATED
by a doctor, an x-ray was prescribed and scheduled me to be
transported to NRC Monday, August 28, 2006 to have my finger X-
rayed, being that Stateville facility is unequipped to do x-rays.
A splint was placed on my finger and I was given some motrin for
the pain. [See Attached Grievance Form].

Page 1 of 3

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT THOMAS,                  )
                                )
            Plaintiff,          )
                                )
vs.                             )        Civil Action No. _____
                                )
PARTHA GHOSH, M.D., et. al      )
                                )
            Defendants,         )

### NOTICE OF FILING

TO:  Clerk
     U.S. District Court
     219 S. Dearborn Street
     Chicago, Illinois 60604

     PLEASE TAKE NOTICE that on August 8 th , 2008, I have caused
to be filed the requisite number of copies and original of my pro
se Complaint, filed pursuant to Title 42, Section 1983 under the
Civil Rights Act, with the Clerk, at the above-mentioned address.
A copy of which is hereby being served upon you.

                          Respectfully submitted,

                          Robert Thomas, plaintiff
                          Register No. N-53969
                          Stateville Correctional Center
                          Post Office Box 112
                          Joliet, Illinois 60434-0112

### CERTIFICATE OF SERVICE

     I, ROBERT THOMAS, do hereby certify that I have caused to be
served on the party listed-above copies of the aforementioned
document by placing same in the U.S. Mail through the mailroom
situated at the Stateville Correctional Center on August 8 th ,
2008, awaiting postage and delivery by State.

                          Robert Thomas, affiant

### AFFIRMATION

     I, ROBERT THOMAS, do hereby affirm under the penalties of
perjury that the foregoing is true and correct in the best of my
knowledge and belief.

                          Robert Thomas, affiant