UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT THOMAS (#N-53969) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 4644 |
| | ) | |
| PARTHA GHOSH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials and health care providers, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that he was denied needed care for an injured finger, resulting in permanent damage and deformity. This matter is before the court for ruling on pending motions.

The defendants directly employed by the Illinois Department of Corrections have filed a motion to dismiss the amended complaint for failure to state a claim. The health care provider defendants, who are employed by Wexford Health Services, have filed a motion to dismiss the amended complaint for failure to exhaust administrative remedies prior to filing suit or, in the alternative, to strike "redundant, immaterial and irrelevant" portions. For the reasons stated in this order, the IDOC defendants' motion to dismiss is granted and the health care providers' motion to dismiss is denied.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Fact pleading is not necessary to state a claim for relief. *Thompson v.*

*Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, (1957)). To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), the plaintiff need only state his legal claim and provide "some indication . . . of time and place." *Thompson*, 362 F.3d at 971. While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 127 S.Ct. at 1964 -65 (citations omitted).

In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.,* 127 S.Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1, (2002). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Norfleet v. Vale*, No. 05 C 0926, 2005 WL 3299375, at *1 (N.D. Ill. Dec. 5, 2005) (Zagel, J.). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 127 S.Ct. at 1965. Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*, 127 S.Ct. at 1973-74 & n.14. Furthermore, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the

complaint. *See, e.g., Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996) (citations omitted).

## FACTS

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this lawsuit. Defendant Terry McCann is the facility's warden. Defendant Partha Ghosh is a staff physician at Stateville. Defendant Tanya Williams is a physician's assistant. Defendant Tammy Garcia is a prison grievance officer. Defendant Kevin Halloran is the Chief Executor Officer of Wexford Health Sources, Inc., which provides health care services at Stateville. Defendant Roger Walker is the Director of the Illinois Department of Corrections. Defendant Melody Ford is the chairperson of the IDOC's Administrative Review Board.

The plaintiff alleges the following facts, which must be accepted as true for purposes of the motions to dismiss: On August 15, 2006, the plaintiff's ring finger accidentally caught in his cell door as it closed. The finger became swollen and throbbed with pain.

When the swelling subsided, the plaintiff noticed that his finger was "deformed." The tip of his finger bent upward, and the fingernail had turned black. The plaintiff asked a Sergeant Jones (not a defendant) to see a medical technician. Although Jones assured the plaintiff that an appointment would be made for him in the prison's health care unit, Jones evidently failed to follow through on his promise.

On August 25, 2006, the plaintiff showed his injured finger to a medical technician (Friar, not a defendant) who was passing out medication. Friar pronounced that the finger was broken and arranged for the plaintiff to be seen in the health care unit the next day.

On August 26, 2006 (a Saturday), the plaintiff was seen in the prison's emergency room. Defendant Williams examined the plaintiff's finger and noted that it appeared to be broken. Williams told the plaintiff that an x-ray would be taken the following Monday. Another medical technician (Gondalia, not a defendant) placed a splint on the finger. The plaintiff evidently was not called back to the health care unit that Monday.

On September 4, 2006, the plaintiff was sent to the University of Illinois Hospital in Chicago in connection with an unrelated health concern. The plaintiff asked a correctional officer (Hughes, not a defendant) for permission to have his broken finger x-rayed while he was at the hospital. Hughes refused, saying that the paperwork did not encompass treatment of the plaintiff's finger.

On September 25, 2006, the plaintiff returned to the University of Illinois Hospital for assessment of a liver ailment. Everyone to whom the plaintiff showed his finger agreed that it was broken, but no one would provide medical treatment for the finger without the proper documentation authorizing that the plaintiff receive medical care for the injured finger.

On September 26, 2006, the plaintiff filed a grievance and also wrote a letter to defendant Ghosh concerning the denial of medical attention for his finger.

On October 9, 2006, Ghosh (presumably in response to the grievance) wrote a memorandum to the plaintiff's counselor advising him that a pass had been issued for the plaintiff to go to the health care unit for evaluation of his finger. The plaintiff received a lab pass for the Hypertension Clinic the next day, but none for treatment of his finger.

On October 17, 2006, defendant Garcia denied the plaintiff's grievance without conducting any investigation. Garcia simply relied on Ghosh's memo, stating, "Per Dr. Ghosh, Medical Director: A pass has been issued to bring the offender to the HCU for evaluation. It appears that his grievance has been resolved."

On October 17, 2006, defendant McCann signed off on the denial of the plaintiff's grievance, duplicating Garcia's erroneous assessment that the matter had been resolved. The plaintiff appealed the denial of his grievance to the Administrative Review Board.

On October 26, 2006, the plaintiff returned to the health care unit for lab work preparatory for a scheduled transjugular liver biopsy. The plaintiff complained to Ghosh that he had written to him and filed a grievance regarding the denial of medical care for his finger. Ghosh responded in a dismissive manner.

The plaintiff voiced the same concerns to Ghosh, to no avail, at another health care visit on November 27, 2006.

On November 29, 2006, the plaintiff was finally transported to Stateville's Classification and Reception Center for an x-ray of his finger. However, the plaintiff received neither the results of the x-ray nor any follow-up treatment. A letter to Ghosh dated December 5, 2006, went unanswered.

On March 16, 2007, the plaintiff wrote to Ghosh again in an attempt to learn about the x-ray results and to develop a treatment plan to correct the deformity of the plaintiff's finger. Again, the plaintiff received no response.

On April 27, 2007, the plaintiff received notice that the Administrative Review Board had denied his grievance, as it was considered resolved. Neither Ford nor Walker conducted any investigation in adopting the prison staff's disposition of the grievance.

On November 5, 2007, and again on February 25, 2008, the plaintiff underwent unsuccessful surgeries at the University of Illinois Hospital to reconstruct his finger. At the time the plaintiff drafted his amended complaint, his finger was in a cast and orthopedic physicians were considering whether to attempt a third surgical procedure to correct the deformity.

**DISCUSSION**

Even accepting the plaintiff's factual allegations as true, the court finds that the amended complaint fails to state an actionable claim against administrative officials. However, with respect to his claims against the health care provider defendants, the plaintiff has satisfied the administrative exhaustion requirement and has articulated a prima facie case of deliberate indifference to a serious medical need.

**I. Exhaustion**

The plaintiff properly exhausted grievance procedures prior to filing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

An inmate must take all the steps required by the prison's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). The purpose of the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before the filing of a federal lawsuit. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). Failure to exhaust administrative remedies is an affirmative defense; correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

The Wexford defendants misstate the law in arguing that the plaintiff was required to continue filing a series of grievances to obtain the medical attention he sought. There is no dispute that the plaintiff pursued a complete round of administrative remedies regarding his request for treatment of his broken finger. The law does not support the defendants' apparent contention that the plaintiff had to either file multiple grievances or name every individual involved in each stage of the alleged, ongoing denial of needed medical care.

"[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004), quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Furthermore, the plaintiff did not have to continue filing grievances each time he perceived his need for medical care for his finger met a new obstacle. *See, e.g., Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002) ("[r]equiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic"). In the case at bar, the plaintiff's grievance "served its function of alerting the state and inviting corrective action," *see Riccardo*, 375 F.3d at 524; therefore, the plaintiff is entitled to a decision on the merits of his constitutional claim. *Id.* The Wexford defendants' motion to dismiss on grounds of non-exhaustion is accordingly denied.

## II. Personal Involvement of IDOC Administrative Officials

However, the second amended complaint is dismissed as to supervisory and grievance officials. Under the circumstances of this case, the administrative/correctional staff cannot be held liable for any deficiencies on the part of the medical staff.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated

in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 does not create collective or vicarious responsibility. *Id.* "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations omitted). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003).

Because the plaintiff was being seen by health care professionals during the time period in question, he has no cause of action against supervisory or grievance officials. A warden is shielded from liability when a plaintiff is receiving ongoing care from health care professionals. *See , e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability); *contrast Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir. 1999) (warden was required to act where officials allegedly denied an inmate life-sustaining medication and food).

A prison official can be liable under 42 U.S.C. § 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his or her attention via the grievance process. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Verser v. Elyea*, 113 F.Supp.2d 1211, 1215 (N.D. Ill. 2000) (Bucklo, J.). This, however, is a consequence of the official's duty under federal law to prevent and remedy

constitutional violations, not a duty to respond to grievances. There is no constitutional right to an institutional grievance procedure. Illinois statutes and regulations establishing the Department of Corrections' grievance procedures neither create a liberty interest under the Fourteenth Amendment's due process clause, *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996), nor, as discussed above, do they create a right to sue under state law.

In denying the plaintiff's grievances, prison administrators reasonably relied on representations from the health care unit that the plaintiff's health concerns were being addressed. In *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009), a prisoner sued a grievance counselor, among others, for denying him needed medical care. The U.S. Court of Appeals for the Seventh Circuit upheld the district court's dismissal of the grievance officer "because she carried out her job exactly as she was supposed to." 555 F.3d at 595. "The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. . . . That is equally true for an inmate complaint examiner. *See Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006)." *Burks*, 555 F.3d at 595. The plaintiff cannot blame any inaction on correctional officials whose only role was to forward grievances to the health care unit for resolution. Consequently, the second amended complaint is dismissed as to IDOC Director Roger Walker, ARB chairperson Melody Ford, Warden Terry McCann, and grievance officer Tammy Garcia.

The record will require further development concerning the personal involvement of Wexford executive Kevin Halloran. The defendants maintain in their brief that Halloran does not have formal medical training, is not involved in daily health care decisions, and does not supervise prison physicians. However, as those contentions must be supported by an affidavit, they must be presented in a motion for summary judgment. The plaintiff has articulated both the objective and subjective elements of a deliberate claim against Halloran: he contends that

he had an objectively serious medical condition (an obviously broken finger) and that Halloran, who was in a position to intervene, was subjectively aware of and consciously disregarded that medical need (ignoring the plaintiff's letters pleading for assistance). *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). The motion to dismiss Halloran for lack of direct, personal involvement is therefore denied, without prejudice to filing a motion for summary judgment.

### III. Prolixity of the Complaint

The health care defendants' objections to the 14-page complaint and 59 pages of exhibits are overruled. Rule 8 of the Federal Rules of Civil Procedure requires that a pleading present "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2). Although the court generally regards Rule 8 as a shield for pleaders rather than a sword for those pleaded against, it is true that in unusual cases an excessively lengthy complaint may be so confusing and disjointed as to warrant dismissal for failure to comply with Rule 8. *See, e.g., United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 376-78 (7th Cir. 2003) (a complaint with 400 paragraphs covering 155 pages followed by ninety-nine attachments, replete with undefined acronyms and mysterious cross-references, was so confused that neither the court nor the adverse parties should be required to "try to fish a gold coin from a bucket of mud"); *Richee v. Velasco*, No. 02 C 7761, 2002 WL 31455982, *1-2 (N.D. Ill. Nov. 1, 2002) (Shadur, J.) (dismissing with leave to amend an 85-page, handwritten, *pro se* complaint consisting of 329 paragraphs); *Fernandez v. Supreme Ct. of Ill.*, No. 02 C 3402, 2002 WL 1008468, *1 (N.D. Ill. May 17, 2002) (Moran, J.) (dismissing for failure to state a claim for relief an 81-page complaint that was "unnecessarily lengthy, redundant, and confusing, making

it difficult to determine which alleged wrongdoings, if any, constitute the claimed violations of federal and state law").

This is not one of the rare cases in which purported violations of Rule 8 warrant dismissal. The plaintiff's claims, recited in the court's synopsis above, set forth a reasonably clear and orderly narrative of the sequence of events giving rise to this lawsuit. Furthermore, any extraneous exhibits may be simply disregarded, as no one need comb through them to make out a claim. Of course, a party moving for or opposing summary judgment must cite specific portions of the record to support any assertions of fact he makes. *See* Local Rule 56.1 (N.D. Ill.). But this court has forgiven pleading sins far more egregious than any in this case. *See, e.g., Manuel v. Lucenti*, No. 04 C 2531, 2004 WL 2608355, *2 (N.D. Ill. Nov. 16, 2004) (Gottschall, J.) (denying a motion to strike 25 of the pro se plaintiff's 244 paragraphs even though the 25 paragraphs largely contained background material).

In sum, the amended complaint easily survives scrutiny under Fed. R. Civ. P. 8. Notwithstanding any verbosity, the plaintiff's allegations are adequate to notify the defendants of the nature of the claims, and sufficiently formulated as to permit the defendants to frame an answer. *See, e.g., Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) ("Surplusage [in a complaint] can and should be ignored. . . . A district court is not authorized to dismiss a complaint merely because it contains . . . irrelevant matter"); *see also Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998) ("Fat in a complaint can be ignored. . . . It takes a lot worse than using 12 pages to set out a claim that could have been stated in 6 pages to justify a dismissal."). The defendants' motion to strike and the plaintiff's cross-motion to strike are accordingly denied.

**IV. Plaintiff's Motion for Appointment of Counsel**

Finally, the plaintiff's renewed motion for appointment of counsel is denied. By Minute Order of October 27, 2008, the court denied the plaintiff's first motion for appointment of

counsel, relying on the standards discussed in *Gil v. Reed*, 381 F.3d 649, 656 (7th Cir. 2004), and *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *inter alia*. The plaintiff's present motion does not provide any additional information which persuades the court that its previous decision should be reconsidered at this time. This case is not complex; furthermore, the court grants *pro se* litigants wide latitude in the drafting of their pleadings. The plaintiff appears quite capable of presenting his claims. Consequently, for the reasons set forth in the court's previous order denying counsel, the plaintiff's motion for reconsideration is denied. Nevertheless, this case is referred to Magistrate Judge Sidney Schenkier for the purpose of exploring whether this case may be a candidate for the court's Settlement Assistance Program for Pro Se Litigants.

## **CONCLUSION**

For the foregoing reasons, the IDOC defendants' motion to dismiss [#35] is granted. Defendants McCann, Garcia, Walker, and Ford are dismissed as defendants pursuant to Fed. R. Civ. P. 12(b)(6). The health care defendants' motion to dismiss or, in the alternative, to strike certain portions of the amended complaint [#46] is denied. The plaintiff's motion to strike [#56] is denied as moot. Defendants Ghosh, Williams, and Halloran are directed to answer or otherwise plead within twenty-one days of the date of this order. The plaintiff's renewed motion for appointment of counsel [#58] is denied. This case is referred to Magistrate Judge Sidney Schenkier for the purpose of conducting settlement proceedings.

Enter:_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

Date: March 31, 2009